IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03967-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

    Defendant.

---

**UNOPPOSED MOTION OF COLORADO ALLIANCE FOR RETIRED AMERICANS AND BRITTON DEFORD TO INTERVENE AS INTERVENOR-DEFENDANTS**

---

    The Colorado Alliance for Retired Americans and Britton DeFord ("Proposed Intervenors"), move to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. In compliance with Rule 24(c), Proposed Intervenors attach a proposed pleading. *See* App'x at 1 (Proposed Answer). Proposed Intervenors reserve the right to file a Rule 12 motion ahead of any deadline set by the Court or the Federal Rules.

## INTRODUCTION

    The Department of Justice ("DOJ") has undertaken an unprecedented campaign to amass a wide array of highly sensitive personal information on voters. As part of this effort, DOJ sued Secretary of State Jena Griswold on December 11, 2025, seeking to compel production of Colorado's unredacted voter registration list, which contains sensitive and private information about every Colorado voter. This assault intrudes not only on Colorado's constitutional prerogative to maintain and protect its voter registration

list—and the explicit guarantees it has made to voters that their private information will not be shared—but also on the privacy rights of individual voters who have good reason to fear their personal information being handed over to the federal government. This includes Britton DeFord and the approximately 41,000 members of the Colorado Alliance for Retired Americans (together with DeFord, "Proposed Intervenors"). As a result, Proposed Intervenors seek to intervene to prevent the disclosure of that sensitive personal information, as well as to protect the Alliance's unique organizational interests.

Proposed Intervenors are entitled to intervene as a matter of right because DeFord and the Alliance's members have significant interests that are at serious risk of impairment by this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, Proposed Intervenors have an interest in ensuring that their sensitive personal information is not improperly disclosed to DOJ. Colorado law promises that the Secretary "shall not sell, disclose, or otherwise release a social security number, a driver's license or a state-issued identification number," as well as other sensitive voter information. Colo. Rev. Stat. § 1-2-302(8). While the Secretary has thus far resisted disclosure, she does not adequately represent Proposed Intervenors: as a governmental defendant, she must consider "broader public-policy implications" of the issues presented in this suit, while Proposed Intervenors are solely concerned with protecting their privacy and voting rights "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195-96 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538-39 (1972)). Other federal courts have granted intervention as of right to similarly situated intervenors—including to individual voters and the Michigan

Alliance for Retired Americans. *See* App'x at 10, Ex. B (Op., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Dec. 9, 2025), Dkt. 45); 24, Ex. C (Op. & Order, *United States v. Oregon*, No. 25-cv-01666 (D. Or. Dec. 5, 2025), Dkt. 52).

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b) to ensure that Colorado voters themselves have a voice in this case, the core subject of which is the disclosure of *their* personal information. Proposed Intervenors' presence will help ensure vigorous presentation of arguments that the existing Defendant may be limited in presenting. Those considerations weigh strongly in favor of intervention. *See* App'x at 30, Ex. D (Mins. of Mot. Hr'g, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 24, 2025), Dkt. 70) (granting permissive intervention).

## BACKGROUND

**I.  Federal law has long made voter list maintenance a state responsibility.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. The Constitution assigns states responsibility for determining voter eligibility and maintaining voter lists. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. Congress in 1993 enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip*

*Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)-(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how states maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). Indeed, HAVA's legislative history stressed that "[h]istorically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved." H.R. Rep. No. 107-329, pt. 1, at 31-32 (2001). Accordingly, neither the NVRA nor HAVA tasks the federal government with compiling a national voter list. Congress has "left it up to the States to maintain accurate lists of those eligible to vote in federal elections." *Husted*, 584 U.S. at 761.

II. **The Department of Justice has embarked on an unprecedented nationwide campaign to amass personal voter registration data held by the states.**

This spring, DOJ launched a campaign to demand states turn over their voter files, including personal information about each registered voter. DOJ sent demands to more

4

than forty states, with plans to make similar demands on all fifty.[1] It seeks to create a national voter database that will, in turn, be used to try to substantiate President Trump's unfounded accusations that millions of non-citizens voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* n.1. The vast majority of states that have received such demands have declined to turn over sensitive information protected by state law.[2]

On May 12, 2025, DOJ sent the Secretary a vague letter demanding "[a]ll records, as outlined in 52 U.S.C. § 20701" and claiming—without any detail—that the demand was prompted by "a complaint alleging noncompliance by [the Secretary's] office with the duties outlined in 52 U.S.C. § 20507" (the NVRA). Dkt. 5-1 at 2. The next communication referenced by DOJ occurred when DOJ sent the Secretary an email on December 1. *Id.* at 5. In that email, DOJ "request[ed] . . . Colorado's voter registration list" (although the list had not been specifically requested in the May 12 letter), and made clear that it sought Colorado's "nonpublic, unredacted voter registration list," including "private data and identifying information," *id.*, which would include sensitive information such as driver's license numbers and partial social security numbers. DOJ gave the Secretary *one business day* to answer. *Id.* The Secretary's office responded the next day stating that it would not provide the unredacted voter file. *Id.* at 7.

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 5, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] *See* Martizen-Ochoa, O'Connor, & Berry, *supra* n.1 (so far, it appears that only two states—Indiana and Wyoming—have given DOJ everything it sought).

**III.    The Department of Justice sues Colorado to obtain its voter registration list.**

On December 11, nine days after the Secretary declined to provide the full unredacted voter file, DOJ filed this lawsuit, seeking to compel the Secretary to do so. Dkt. 1. DOJ frames its suit chiefly as seeking to ensure that Colorado is complying with its obligations under the NVRA and HAVA, *id.* ¶¶ 16-23, but its Complaint does not assert any claims under either of those laws. Instead, its sole claim is brought under Section 303, which permits DOJ to review certain voting records and papers, 52 U.S.C. §§ 20701-20703, for the purpose of enabling investigations "concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).

Congress enacted Section 303 to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Yet DOJ *admits* that it is *not* seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Instead, DOJ claims to be evaluating Colorado's list maintenance efforts under the NVRA and HAVA. *See* Dkt. 5 at 4. Section 303 of the Civil Rights Act thus has no application here. And, even if it did apply, it does not prohibit states from redacting sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as states may under the NVRA. *See Voter Reference*

6

*Found., LLC v. Torrez*, --- F.4th ---, No. 24-2133, 2025 WL 3280300, at *9 n.14 (10th Cir. Nov. 25, 2025); *PILF v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

It is also notable that, while DOJ *did* assert NVRA and HAVA claims in otherwise nearly identical complaints it brought against other states that similarly have refused to turn over unredacted copies of their voter lists, it has abandoned those claims in its newest wave of these lawsuits, including this one against Colorado.[3] DOJ's change of tactic is an implicit admission that it does not believe it has a basis to pursue these actions under HAVA or the NVRA, and in that regard at least, DOJ is correct.

**IV.    Proposed Intervenors' sensitive personal information is placed in jeopardy by DOJ's demands.**

Proposed Intervenors are the Colorado Alliance for Retired Americans, a statewide organization, and Britton DeFord, a registered voter. This lawsuit will decide whether the

---

[3] The United States filed eight cases in September, alleging claims under the NVRA, HAVA, and Section 303. *See* Compl., *United States v. Bellows*, No. 25-cv-468 (D. Me. Sep. 16, 2025), Dkt. 1; Compl., *United States v. Oregon*, No. 25-cv-1666 (D. Or. Sep. 16, 2025), Dkt. 1; Compl., *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Sep. 25, 2025), Dkt. 1; Compl., *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338 (N.D.N.Y. Sep. 25, 2025), Dkt. 1; Compl., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Sep. 25, 2025), Dkt. 1; Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025), Dkt. 1; Compl., *United States v. Scanlan*, No. 25-cv-371 (D.N.H. Sep. 25, 2025), Dkt. 1; Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025), Dkt. 1. Additional cases filed in early December allege only a claim under the Civil Rights Act of 1960. *See* Compl., *United States v. Albence*, No. 25-cv-01453 (D. Del. Dec. 2, 2025), Dkt. 1; Compl., *United States v. DeMarinis*, No. 25-cv-03934 (D. Md. Dec. 1, 2025), Dkt. 1; Compl., *United States v. Amore*, No. 25-cv-00629 (D.R.I. Dec. 2, 2025), Dkt. 1; Compl., *United States v. Hanzas*, No. 25-cv-903 (D. Vt. Dec. 2, 2025), Dkt. 1; Compl., *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Dec. 2, 2025), Dkt. 1; Compl., *United States v. Toulouse Oliver*, No. 25-cv-1193 (D.N.M. Dec. 2, 2025), Dkt. 1. Three subsequent cases, filed on December 11, also allege only that one claim. *See* Compl., *United States v. Nago,* 25-cv-00522 (D. Haw.), Dkt. 1; Comp., *United States v. Galvin*, 25-cv-13816 (D. Mass.), Dkt. 1; Compl., *United States. v. Aguilar*, 3:25-cv-00728 (D. Nev.), Dkt. 1.

personal information of the Alliance's members and DeFord will be disclosed to DOJ.

**The Alliance.** The Alliance is a 501(c)(4) nonprofit, social welfare organization and the Colorado affiliate of the national Alliance for Retired Americans. App'x at 34, ¶ 4 ("Augden Decl."). It represents 41,000 members across Colorado, comprising primarily retirees from unions, who are politically active and engaged. *Id.* ¶ 5. The Alliance is dedicated to ensuring social and economic justice and full civil rights for all retirees in Colorado. *Id.* ¶ 7. Encouraging political participation is central to its mission. *Id.* ¶¶ 7-8.

Disclosure of the statewide voter registration list will undermine the Alliance's mission and harm the privacy interests of its members. *Id.* ¶¶ 9-13. Many members of the Alliance, for example, are concerned about the risks of social security fraud, identity theft, and other types of fraud frequently targeted at older Americans. *Id.* ¶ 10. Disclosing members' sensitive information to DOJ increases the risk that they will become targets of fraud, a well-founded concern given that the current presidential administration has repeatedly disregarded privacy protections over sensitive personal data.[4] *Id.* ¶ 11. Alliance members are also concerned that the current presidential administration will

---

[4] For example, public reports have indicated that the Department of Government Efficiency (DOGE) placed the security of millions of Social Security numbers at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us/politics/doge-social-security-data.html. Election officials from multiple states (including Colorado) have publicly questioned whether the Trump Administration misled them regarding the purpose for its requests for voter information, citing reports that DOJ had shared voter information with the Department of Homeland Security. *See* Quentin Young, *State election officials in letter ask if they were "misled" by Trump Administration*, Colo. Newsline (Nov. 18, 2025), https://coloradonewsline.com/2025/11/18/state-election-officials-misled-trump/.

weaponize the data in the statewide voter file against its perceived political enemies, including potentially members of the Alliance. *Id.* Consequently, disclosure of Colorado's voter registration list to the DOJ will deter the Alliance's members from engaging in the electoral process and discourage them from registering to vote out of fear that their personal information will be mishandled or weaponized. *Id.* ¶ 12.

**Britton DeFord.** DeFord is a teacher and registered Colorado voter. App'x at 39, ¶¶ 2-3 ("DeFord Decl."). She attends protests, writes letters to the editor, and organizes her neighbors to support likeminded local businesses. *Id.* ¶¶ 4-5. DeFord opposes the disclosure of her personal information for multiple reasons. *Id.* ¶ 7. For one, she has had her information compromised in previous data breaches and does not trust the federal government to keep her information safe. *Id.* ¶ 8. For another, DeFord is well aware that the federal government has sought retribution against perceived political opponents, and she is concerned DOJ may use her sensitive information for similar purposes. *Id.* ¶ 9.

## LEGAL STANDARD

A movant "seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cnty., Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019) (citing Rule 24(a)(2) and *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)). Courts in the Tenth Circuit follow a "liberal line in allowing intervention" under Rule 24(a). *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (quoting *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001)). Courts also have discretion

9

to grant permissive intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," if doing so will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

## ARGUMENT

### I. Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).

#### A. This Motion is timely.

Proposed Intervenors' motion—filed a mere six days after DOJ brought suit and before any case schedule has been set—is timely. *See Kane County*, 928 F.3d at 890-91 (motion timely where intervenors moved "three months" after learning of potential impact on interests). This case is at its earliest stage and there is no risk of prejudice to the existing parties. *Id.* at 891.

#### B. As other courts have recognized in parallel litigation, Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ.

Proposed Intervenors also satisfy Rule 24(a)(2)'s interest requirements because each has interests that may be "impair[ed] as a practical matter." *Utah Ass'n of Cntys.*, 255 F.3d at 1253. To meet this standard, Proposed Intervenors must show only that the impairment is "possible" and the "burden is minimal." *Id.* Here, the Alliance represents thousands of Colorado voters who oppose the disclosure of their sensitive personal information to DOJ, and DeFord is also such a voter. *See supra* Background Part IV. The risk of disclosure, and of accompanying adverse consequences, in this case is enough to satisfy Rule 24(a). *See WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1197-98 (10th Cir. 2010) (noting intervenor-organization asserted its members' interests in

10

determining that it had a protectable interest). And multiple federal courts have held as much in the DOJ's parallel cases, granting intervention as of right in Michigan—notably, to the Michigan Alliance for Retired Americans—and in Oregon. *See* App'x at 13-20 (*Benson*); 26-27 (*Oregon*).

Importantly, the voter registration data of the Alliance's members and DeFord is protected from disclosure under Colorado law. *See* Colo. Rev. Stat. § 1-2-302(8); *id.* § 1-2-204(4)(c). And Proposed Intervenors are credibly concerned about the consequences of the disclosure of this sensitive information to DOJ, both because of the risk of data breaches that would expose them to identity theft scams, and because of the potential for retaliation by the federal government against voters who engage in political activities disfavored by the current administration. App'x at 35-36, ¶¶ 9-12 (Augden Decl.); App'x at 40-41, ¶¶ 7-9 (DeFord Decl.). If the Alliance's members know their sensitive identifying information will be disclosed to a federal government that they do not trust to handle it with care, many may opt out of voter registration and political engagement altogether, thus undermining the Alliance's core mission. App'x at 36-37, ¶ 12 (Augden Decl.).

Ultimately, however, the Alliance, its members, and DeFord "have an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm." App'x at 16 (*Benson*). Because once that information is disclosed, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001) (citation omitted) (finding impairment when intervenor's confidential information was at risk of disclosure); *see also Kalbers v. DOJ*, 22 F.4th 816, 828 (9th Cir. 2021) (holding intervenor's "interest in keeping its documents confidential would obviously be

11

impaired by an order to disclose" those documents); *Forest Guardians v. U.S. Dep't of Interior*, No. CIV-02-1003, 2004 WL 3426413, at *7-8 (D.N.M. Jan. 12, 2004). Thus, the Alliance and DeFord "easily satisf[y] the minimal burden of showing the potential for impairment of [their] interests." *Barnes*, 945 F.3d at 1124; *see also* App'x at 14 (*Benson*); 26-27 (*Oregon*).

### C. As other courts have recognized in parallel litigation, the existing parties do not adequately represent Proposed Intervenors.

Lastly, Proposed Intervenors readily meet the burden of establishing inadequate representation—which is a "minimal one" requiring a demonstration that "representation *may* be inadequate." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) (citation modified); *accord Trbovich*, 404 U.S. at 538 n.10. "[W]here the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, 'this presumption [can be] rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest.'" *Kane County*, 928 F.3d at 892 (quoting *Utah Ass'n of Cntys.*, 255 F.3d at 1255). The Tenth Circuit has found inadequate representation where "the government has multiple objectives and could well decide to embrace some" goals over others during litigation. *Id.* at 892-93 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009)). That is true here. And, again, multiple federal courts have held as much in granting intervention of right in the DOJ's parallel cases in Michigan and Oregon. *See* App'x at 20-22 (*Benson*); 28-29 *(Oregon)*.

DOJ plainly does not represent the Proposed Intervenors' interests—it seeks to forcibly compel production of sensitive, personal voter information against the wishes of

the Alliance's members and DeFord in violation of privacy laws. And while the Secretary has resisted that demand to date, she too does not adequately represent Proposed Intervenors' distinct private interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant "is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible." *Utah Ass'n of Cntys.*, 255 F.3d at 1255 (quotation omitted). Simply put, "the government's representation of the public interest" may not be "identical to the individual parochial interest of a particular group" just because "both entities occupy the same posture in the litigation." *WildEarth Guardians*, 573 F.3d at 996; *see also* App'x at 21 (*Benson*) (recognizing "Michigan has other countervailing incentives—for example, to maintain an election system, comply with federal law, and preserve comity with the federal government—that may ultimately induce it to stop defending the lawsuit or give up the information at issue"); 28-29 (*Oregon*) (similar).

Moreover, the risk that the Secretary may seek a settlement in this case weighs strongly in favor of granting intervention. Representation is inadequate where existing parties may seek to "negotiate[] a settlement that would [be] contrary to the interest of the prospective intervenors." *Fiandaca v. Cunningham*, 827 F.2d 825, 833 (1st Cir. 1987); *see also Kane County*, 928 F.3d at 895-96 (recognizing "administration of . . . litigation resources" and "inclin[ation] to settle" may further establish inadequate representation). There may be good reason for the Secretary to seek a settlement because she must

13

balance her personal views with her public duties, including under federal and state laws governing voter registration. *See id.* at 972; *cf. Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (recognizing competing objectives of the NVRA). That confirms the Secretary cannot adequately represent Proposed Intervenors' interests. The Supreme Court recently emphasized this point, noting that public officials must "bear in mind broader public-policy implications," whereas private litigants seek to vindicate their own rights, "full stop." *Berger*, 597 U.S. at 195-96 (citing *Trbovich*, 404 U.S. at 538-39). Because state officials do not share "identical" interests with private parties, Proposed Intervenors bear only a "minimal" burden in showing inadequate representation. *Id.* (citation omitted). And courts are "liberal in finding" this requirement satisfied, recognizing that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024).

## II.   Alternatively, the Court should grant permissive intervention.

In the alternative, the Court should grant permissive intervention. *See Forest Guardians*, 2004 WL 3426413, at *11-12. Rule 24(b) is readily satisfied here: Proposed Intervenors assert a "claim or defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b)(1)(B); *see* App'x, Ex. A (Proposed Answer). And Proposed Intervenors will abide by any schedule entered by the Court or agreed to by the existing parties. Courts regularly grant permissive intervention to ensure voters (or organizations representing them) have a say in litigation concerning their

14

rights.[5] That rationale applies with force here. The Alliance's members and DeFord indisputably have "confidentiality and/or privacy interest[s]" at stake, which alone "warrants an opportunity to permissively intervene to protect that interest." *In re Exch. Union Co.*, No. 24-MC-91645-ADB, 2025 WL 894652, at *3 (D. Mass. Mar. 24, 2025). Furthermore, the presence of Colorado voters contributes a unique "perspective" that will "add value to the litigation." *Rocky Mountain Wild v. Kornze*, No. 13-CV-1988-AP, 2014 WL 536946, at *1 (D. Colo. Feb. 11, 2014). These considerations strongly weigh in favor of permissive intervention. *See also* App'x at 31 (*Weber*) (granting permissive intervention by oral order to state affiliates of the NAACP and League of Women Voters in DOJ's parallel lawsuit in California); *United States v. Bellows,* No. 1:25-cv-00468 (D. Me. Dec. 12, 2025), Dkt. 49 (granting intervention to two registered Maine voters).

## CONCLUSION

Proposed Intervenors respectfully request that the Court grant them intervention.

| Respectfully submitted, | Dated: December 17, 2025 |
|---|---|
|  | /s/ Elisabeth C. Frost |
|  | **Elisabeth C. Frost** |
|  | ELIAS LAW GROUP LLP |
|  | 250 Massachusetts Ave NW, Suite 400 |
|  | Washington, DC 20001 |
|  | Telephone: (202) 968-4490 |
|  | E-mail: efrost@elias.law |
|  | Attorney for Proposed Intervenors |

---

[5] *See, e.g.*, *RNC v. Aguilar*, No. 2:24-CV-00518-CDS-MDC, 2024 WL 3409860, at *3 (D. Nev. July 12, 2024); *Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374, 2022 WL 4448320, at *2 (D. Ariz. Sep. 23, 2022); *PILF v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020).

15

## CERTIFICATE OF CONFERRAL

The undersigned hereby certifies, pursuant to Local Rule 7.1(a), that counsel for Proposed Intervenors sought the concurrence of Plaintiff and Defendant. Counsel for Plaintiff and Defendant separately informed counsel for Proposed Intervenors that Plaintiff and Defendant do not take a position on this Motion.

/s/ Elisabeth C. Frost
**_Elisabeth C. Frost_**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, pursuant to Local Rule 7.1(b), that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Elisabeth C. Frost*
**Elisabeth C. Frost**
