# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03967-PAB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

     Defendant.

---

### [PROPOSED] ANSWER

---

Colorado Alliance for Retired Americans and Britton DeFord ("Proposed Intervenors") answer Plaintiff's Complaint (Dkt. 1), as follows:

### INTRODUCTION[1]

1.    Paragraph 1 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited opinion and cited statute contain the quoted text. Proposed Intervenors otherwise deny the allegations.

2.    Paragraph 2 contains legal contentions, characterizations, conclusions, and

---

[1] These headings are included because they appear in the Plaintiff's complaint and are duplicated to aid and assist in ease of comparison between the Plaintiff's complaint and the Proposed Intervenors' answer. They are not factual assertions in and of themselves and accordingly do not require a response. Their reproduction in this answer should not be understood otherwise, nor should they be understood to make any admission on behalf of the Proposed Intervenors.

opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited statute contains the quoted text. Proposed Intervenors otherwise deny the allegations.

3.       Paragraph 3 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited opinion contains the quoted text. Proposed Intervenors otherwise deny the allegations.

4.       Paragraph 4 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited opinion and cited statute contain the quoted text. Proposed Intervenors otherwise deny the allegations.

## JURISDICTION AND VENUE

5.       Paragraph 5 contains legal contentions, characterizations, conclusions, and opinions to which no response is required.

6.       Paragraph 6 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that Defendant is located in Colorado.

## PARTIES

7.       Paragraph 7 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that this case is brought by the United States but otherwise deny the allegations in Paragraph 7.

3

8.      Paragraph 8 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that Defendant Jena Griswold is the Colorado Secretary of State and that she is sued in her official capacity only, but otherwise deny that Secretary Griswold has any obligations to produce the records at issue in this case.

## BACKGROUND

9.      Proposed Intervenors deny the allegations in Paragraph 9.

10.     Paragraph 10 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. Proposed Intervenors admit that the NVRA and HAVA impose certain obligations on states with respect to voter registration lists and that the NVRA requires states to preserve certain records. Proposed Intervenors otherwise deny the allegations.

### The National Voter Registration Act

11.     Paragraph 11 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited statute contains the quoted text and that Defendant Griswold is the chief election official of the State of Colorado. The statute otherwise speaks for itself.

12.     Paragraph 12 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited statute contains the quoted text. The statute otherwise speaks for itself.

4

13.     Paragraph 13 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited statute contains the quoted text. The statute otherwise speaks for itself.

## The Help America Vote Act

14.     Paragraph 14 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited statute contains the quoted text. The statute otherwise speaks for itself.

15.     Paragraph 15 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited statute contains the quoted text. The statute otherwise speaks for itself.

## The Civil Rights Act

16.     Paragraph 16 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the CRA provides the Attorney General with authority to request certain records under certain circumstances, but deny that Secretary Griswold has any obligations to produce the records at issue in this case.

17.     Paragraph 17 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. Proposed Intervenors admit that the CRA imposes certain obligations on state and local offices with respect to records related to

5

voter registration and voting. Proposed Intervenors otherwise deny the allegations.

18.    Paragraph 18 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that the cited statute contains the quoted text. The statute otherwise speaks for itself.

## FACTUAL ALLEGATIONS

19.    Proposed Intervenors lack sufficient knowledge to form a belief as to the truth or falsity of the allegations in Paragraph 19 and therefore deny them.

20.    Proposed Intervenors admit that the Assistant Attorney General for Civil Rights sent a letter to Secretary Griswold on May 12, 2025 (the "May 12 Letter"). The contents of the letter otherwise speak for themselves.

21.    Paragraph 21 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. The contents of the letter otherwise speak for themselves.

22.    Proposed Intervenors admit the allegations in Paragraph 22.

23.    Proposed Intervenors lack sufficient knowledge to form a belief as to the truth or falsity of the allegations in Paragraph 23 and therefore deny them.

24.    Proposed Intervenors admit that attorney Eric Neff sent an email on December 1, 2025 (the "December 1 Email") and that the email contains the quoted text. The email otherwise speaks for itself.

25.    Proposed Intervenors admit that an email was sent that contains the quoted text, but deny that it was sent on December 3 or that it was sent by Secretary Griswold.

The contents of the email otherwise speak for themselves.

## COUNT ONE
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1960, 52 U.S.C. § 20703

26.    Paragraph 26 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that a document purporting to be a demand for election records was sent to Secretary Griswold on May 12, 2025. Proposed Intervenors deny that the cited statute authorizes Plaintiff's demand.

27.    Paragraph 27 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors deny the allegations in Paragraph 27.

28.    Paragraph 28 contains legal contentions, characterizations, conclusions, and opinions to which no response is required. To the extent a response is required, Proposed Intervenors admit that Secretary Griswold has not provided all of the records requested, including all of the sensitive, private voter information demanded, but Proposed Intervenors deny that such refusal violates any federal or state law. Proposed Intervenors otherwise deny the allegations in Paragraph 28.

Immediately following Paragraph 28, the Complaint contains a request for relief in paragraphs (A)-(C) demanding equitable and declaratory relief. Proposed Intervenors deny that Plaintiff is entitled to any relief in this action.

## <u>GENERAL DENIAL</u>

Proposed Intervenors deny every allegation in Plaintiff's Complaint that is not expressly admitted herein. They further deny that Plaintiff is entitled to any of the relief

7

that it prays for.

## **AFFIRMATIVE DEFENSES**

1.    Plaintiff has failed to state a claim upon which relief can be granted.

2.    Plaintiff's claims are barred in whole or in part by equity, including on the basis of laches and unclean hands.

3.    Plaintiff has failed to establish entitlement to injunctive relief.

4.    The relief sought by Plaintiff is inconsistent with the U.S. Constitution and federal law.

5.    Plaintiff lacks authority to bring a cause of action.

6.    Colorado law, *see, e.g.*, Colo. Rev. Stat. § 1-2-302(8), grants Proposed Intervenors the right to keep their highly sensitive personal information confidential, and preservation of those state rights does not conflict with or otherwise violate federal law.

## **PROPOSED INTERVENORS' PRAYER FOR RELIEF**

WHEREFORE, having fully answered Plaintiff's Complaint, Proposed Intervenors pray for judgment as follows:

A. That the Court dismiss the Complaint;

B. That judgment be entered in favor of Proposed Intervenors and against Plaintiff on Plaintiff's Complaint and that Plaintiff takes nothing thereby;

C. That Proposed Intervenors be awarded reasonable attorneys' fees and costs under any applicable statute or equitable doctrine; and

D. For such other and further relief as the Court deems appropriate.

Dated: December 17, 2025

Respectfully submitted,

/s/ Elisabeth C. Frost
**_Elisabeth C. Frost_**
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
E-mail: efrost@elias.law
Attorney for Proposed Intervenors

# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                  Case No. 1:25-cv-1148

v.

                                    Hon. Hala Y. Jarbou

JOCELYN BENSON, et al.,

     Defendants.

_____/

## OPINION

     The United States brings this lawsuit against the State of Michigan and its Secretary of State, seeking the disclosure of voting records under Title II of the Civil Rights Act of 1960 (the "CRA"), 52 U.S.C. § 20703, the National Voter Registration Act (NVRA), 52 U.S.C. § 20507(i), and the Help America Vote Act (HAVA), 52 U.S.C. § 21083.  Before the Court are two motions to intervene as defendants: one filed by the Michigan Alliance for Retired Americans ("MARA"), Donald Duquette, and Keely Crimando (ECF No. 5), and the other filed by the League of Women Voters of Michigan (the "LWVM") (ECF No. 17).  The United States opposes both motions; Michigan takes no position on the motions.

     As explained below, the Court finds that MARA, Duquette, and Crimando are entitled to intervention as of right, and will grant their motion.  However, because MARA will adequately represent the interests of the LWVM, the Court will deny the LWVM's motion.

### I. BACKGROUND

     This case arises out of the United States' July 21, 2025, request for voter records from the State of Michigan.  (Compl. ¶ 35, ECF No. 1.)  The United States sought, among other things, "a list of the election officials who are responsible for implementing Michigan's general program of

11

voter registration list maintenance," "a description of the steps that Michigan has taken in furtherance of [voter registration list maintenance]," and "a current electronic copy of [Michigan's] computerized [statewide voter registration list]." (*Id.*) The United States indicated that this information was necessary to determine whether Michigan was complying with its obligations under the NVRA and HAVA. (*Id.* ¶ 43.) As to the voter registration list, the United States specifically requested the following information about voters: their "full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number." (*See id.* ¶ 66.) On September 9, 2025, Michigan informed the United States that it would only provide the public statewide voter registration list, which does not include full dates of birth, driver's license numbers, or social security numbers. (*Id.* ¶ 46.) Michigan claimed that this personal information was exempt from disclosure under Michigan law, *see* Mich. Comp. Laws §§ 15.243, 168.509gg, as well as under the federal Privacy Act, 5 U.S.C. § 552a, and the federal Driver Privacy Protection Act, 18 U.S.C. § 2721 *et seq*. (Compl. ¶ 48; 9/9/2025 Letter, ECF No. 39-6.) In response, the United States brought this lawsuit seeking a declaratory judgment and an injunction requiring Michigan to disclose the unredacted voter registration list.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide two bases for intervention. *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). Under Rule 24(a), a movant may intervene as of right if it

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). "[T]o intervene as of right under Rule 24(a)(2), a proposed intervenor must establish the following four elements: (1) the motion to intervene is timely; (2) the proposed

intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest." *Michigan*, 424 F.3d at 443.

Alternatively, Rule 24(b) allows for permissive intervention when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). If a motion for permissive intervention is timely and there is a common question of law or fact, "the district court must . . . balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Michigan*, 424 F.3d at 445.

### III. ANALYSIS

### 1. Michigan Alliance of Retired Americans

#### (a) Interest in the Litigation

MARA, Duquette, and Crimando filed a timely motion to intervene under Rule 24(a) or, in the alternative, Rule 24(b). MARA argues that it has an interest in this litigation because its members are registered voters whose personal information will be disclosed to the Department of Justice (DOJ) if the United States succeeds in this case. MARA also contends that the possibility of disclosure will hinder its voter registration activities by deterring people from registering to vote. Duquette and Crimando argue that the DOJ's access to their personal information could chill their speech due to fear of government retaliation.

The Court agrees that these proposed intervenors have a sufficiently substantial interest in this case. The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to

invoke intervention of right." *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (quoting *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). The Sixth Circuit has "cited with approval decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" *Miller*, 103 F.3d at 1245 (alteration in original) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991)); *see also Hatton v. Cnty. Bd. of Ed.*, 422 F.2d 457, 461 (6th Cir. 1970) ("Although the interest claimed is of a general and indefinite character, it would seem to the Court to be sufficient to permit intervention [as of right].").  Here, the proposed intervenors have a privacy interest in preventing the disclosure of their personal information to the federal government.  This suffices for purposes of Rule 24(a). *Cf. Kalbers v. DOJ*, 22 F.4th 816, 827 (9th Cir. 2021) (proposed intervenor had "interest in the non-disclosure of its documents" that were potentially protected by FOIA exemption, "[a]nd there is a direct, antagonistic relationship between [the proposed intervenor]'s interest in confidentiality and [plaintiffs'] interest in obtaining the documents at issue"); *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001) (proposed intervenors had interest in non-disclosure of their information); *Tarazi v. Oshry*, No. 2:10-CV-793, 2011 WL 1326271, at *4 (S.D. Ohio Apr. 4, 2011) (same).

The United States makes several arguments as to why the intervenors lack an interest in the case, but none are persuasive.  First, it argues that intervention is inappropriate because HAVA and the CRA do not create a private right of action.[1]  But the absence of a right of action is irrelevant given that the movants are seeking to intervene as defendants rather than plaintiffs.  The United States does not explain why an intervenor-defendant would need a right of action, and the Court sees no reason why that would be the case.  *See Johnson & Johnson Health Care Sys. Inc.*

---

[1] Although not relevant here, HAVA does create a private right that can be enforced under 42 U.S.C. § 1983.  *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 572–73 (6th Cir. 2004).

*v. Kennedy*, No. CV 24-3188 (RC), 2025 WL 1411076, at *3 (D.D.C. May 15, 2025) ("[T]he standards for whether a party has a cause of action as a plaintiff and whether a party can intervene, here as a defendant, are different: as Rule 24's plain text indicates, intervenors of right need only an 'interest' in the litigation—not a cause of action or permission to sue." (cleaned up)). The only authority the United States cites for its position is *United States v. Alabama*, No. 2:06-CV-392-WKW, 2006 WL 2290726 (M.D. Ala. Aug. 8, 2006). But contrary to the United States' characterization, the court in *Alabama* did not hold that the absence of a private right of action under HAVA precludes proposed intervenor-defendants from having an interest in the case. Rather, the court concluded that the proposed intervenors lacked an interest because, among other things, they asserted only general policy concerns. *Id.* at *4. It noted the absence of a right of action, but recognized that this was a tangential point rather than a dispositive one. *See id.* at *4 n.6 ("Because the proposed intervenors move for intervention as defendants to this action, it is unlikely that they are claiming to be plaintiffs with a private right of action under HAVA. Nonetheless, in the interest of clarity, and because such possibility was raised by the United States, the Court addresses this possibility."). At most, the court implied that the *presence* of a right of action might entitle a party to intervention; it did not imply that the absence of a right of action necessarily bars intervention.

The United States also argues that HAVA and the CRA only allow suit against specific election officials in relation to the voter information provisions, and thus the movants could not be properly sued under these statutes. But this too is irrelevant. The United States cites no authority indicating that a movant can only intervene as a defendant if the plaintiff has a cause of action against it—i.e., if the movant could have been named as a defendant in the complaint. And case law suggests the opposite. For example, the Administrative Procedure Act only authorizes suit

5

15

against the federal government or its agents, *see* 5 U.S.C.A. § 702, but private parties can intervene as defendants to argue on behalf of the agency action at issue. *See, e.g.*, *Ohio v. EPA*, No. 2:15-CV-2467, 2019 WL 417297, at *2–3 (S.D. Ohio Feb. 1, 2019); *Farmer v. EPA*, 759 F. Supp. 3d 101, 111 (D.D.C. 2024). Private parties can also intervene as defendants in cases alleging constitutional violations by government actors, even though a plaintiff could not bring such a suit against a private party. *See, e.g.*, *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999); *Coal. to Def. Affirmative Action v. Granholm*, 240 F.R.D. 368, 375–77 (E.D. Mich. 2006). Thus, the fact that HAVA and the CRA do not authorize suit against the movants does not affect their ability to intervene.

Next, the United States contends that the movants' asserted interests are based on mere speculation that disclosure of their information to the DOJ will cause harm. It asserts that the DOJ will protect voter information from unauthorized disclosure. But this argument also misses the mark. The movants have an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm. The law generally recognizes a privacy interest implicated by unauthorized disclosure of personal information, even absent any downstream effects of that disclosure. *See, e.g.*, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019) ("Under the common law, an intrusion into privacy rights by itself makes a defendant subject to liability."); *United States v. Miami Univ.*, 294 F.3d 797, 818 (6th Cir. 2002) (recognizing "the inherent privacy interest" protected by the Family Educational Rights and Privacy Act); *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 410 (6th Cir. 2019) (alleged testing of blood samples constituted injury to privacy interest for standing purposes); *DOJ v. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 763 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his

6

16

or her person."); *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) ("[T]he disclosure of [personal] information is a cognizable injury in fact for purposes of Article III standing."); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) ("[T]he common law has long recognized a right to personal privacy[.]" (cleaned up)).  Movants thus have a stake in this case because their inherent privacy interest is implicated by the disclosures at issue here.

The United States also argues that the movants' privacy interests are not implicated by disclosures of their information to the DOJ because other federal agencies already possess that information.  However, specific government entities possess private information for specific purposes, and there are regulations and statutes governing how that information may be transferred between agencies.  *See, e.g.*, 5 U.S.C.A. § 552a(b) (limiting inter-agency disclosure of personal information).  It is evident that the voter information here is not already available to the DOJ, or else they would not have requested it from Michigan or brought this lawsuit.  Even if other agencies possess the movants' personal information, the movants still have an interest in preventing further disclosure.  *Cf. Reps. Comm.*, 489 U.S. at 764 (even where information has already been disclosed in "scattered" form to the public, release of compilations of that information implicated privacy interests because it made the information more accessible).

The United States also cites the consent judgment and order in *United States v. North Carolina Board of Elections*, No. 5:25-cv-00283-M-RJ (E.D.N.C. Sep. 8, 2025) (*see* Consent J., ECF No. 26-2), contending that the court there denied similar motions to intervene in a HAVA enforcement suit because privacy arguments against disclosure "objectively proved to be unfounded." (Gov't's Mot. in Opp'n 17, ECF No. 26.)  However, that court denied the motions to intervene as moot because the United States and North Carolina reached a consent judgment.

(Consent J. 12.)  The court did not rule on whether the prospective intervenors had a privacy interest in non-disclosure.  And although the United States argues that the Court here can impose limits on the DOJ's use of voter information—as the court did in *North Carolina Board of Elections*—such limits do not ameliorate the harm when the privacy violation complained of is the disclosure *to the DOJ itself*.

The United States also contends that the potential injury to the movants is a generalized injury that affects all Michigan voters, rather than a particularized injury that can support intervention.  As an initial matter, the requirement of a particularized injury is drawn from the Article III standing context; here, because the movants seek to intervene as defendants, they are not required to demonstrate standing.  *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (defendant-intervenor need not demonstrate standing because intervening as defendant does not "entail[] invoking a court's jurisdiction"); *Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 488 (6th Cir. 2014) (intervention does not require Article III standing).  The United States does not cite any binding precedent requiring proposed intervenors to show a particularized injury. While some courts have indicated as much—*see, e.g.*, *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013)—the Sixth Circuit's broad definition of "interest" arguably encompasses injuries that do not qualify as particularized under Article III.

Regardless, even if Rule 24(a) does require the kind of particularized injury that would support Article III standing, that requirement is satisfied here because the disclosure of one's private information is a particularized injury.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (particularized injury is one that "affect[s] the [movants] in a personal and individual way").  "The fact that an injury may be suffered by a large number of people does not of itself make that

8

18

injury a nonjusticiable generalized grievance." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.7 (2016), as revised (May 24, 2016); *cf. Pub. Citizen v. DOJ*, 491 U.S. 440, 449–50 (1989) ("The fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under FACA does not lessen appellants' asserted injury, any more than the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue."); *FEC v. Akins*, 524 U.S. 11, 24 (1998) ("widely shared" injury can still establish standing, such as when "large numbers of individuals suffer the same common-law injury (say, a widespread mass tort), or where large numbers of voters suffer interference with voting rights conferred by law"); *see also id.* at 35 (Scalia, J., dissenting) (agreeing with majority that a "widely shared" injury can establish standing where "each individual suffers a particularized and differentiated harm"). Here, the movants are not "raising only a generally available grievance about government—claiming only harm to [their] and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits [them] than it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam). Rather, the movants are raising a grievance that is specific to them—the disclosure of their personal information—even if it is a grievance that many people could raise. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 n.10 (3d Cir. 2017) ("There is no doubt that the Plaintiffs complain of a particularized injury—the disclosure of their own private information.").

In sum, the movants have established that they have an interest in the non-disclosure of their personal information, and thus in the outcome of this lawsuit.

### (b) Impairment of Interest

As discussed above, the movants have an interest in preventing the DOJ from acquiring their personal information. Because this case could result in an order allowing the DOJ to acquire

that information, the outcome of this lawsuit may impair the movants' interests. The United States attempts to avoid this conclusion by noting that the movants have already provided the information at issue here to the state of Michigan for voter registration purposes, and that Michigan has disclosed the information to the Electronic Registration Information Center, an organization that helps states maintain their voter rolls. But the United States provides no authority for the principle that disclosing one's personal information to a specific entity for a specific purpose eliminates one's interest in keeping that information private from other entities that may use it for other purposes. Such a principle contradicts common sense: everyone's personal information is known by some entity or another, but that does not extinguish all privacy interests in relation to other entities (government or otherwise). For example, as noted above, Congress has recognized that people have a privacy interest in preventing certain federal agencies from acquiring information already known to other agencies. *See* 5 U.S.C.A. § 552a(b) (limiting inter-agency disclosure of personal information). Similarly, movants have a privacy interest in preventing the federal government from acquiring information already known to Michigan.

In sum, the movants have sufficiently established that the outcome of this lawsuit could impair their privacy interests.

### (c) Inadequate Representation

The United States also argues that intervention is unwarranted because the movants' interests will be adequately represented by Michigan in this lawsuit. The adequacy requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). "Nevertheless, applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit." *Michigan*, 424 F.3d at 443–44. "An applicant for intervention fails to meet

20

his burden of demonstrating inadequate representation 'when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty.'" *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). However, "Rule 24 is to be construed liberally, and doubt resolved in favor of the proposed intervenor." *Kasprzak v. Allstate Ins. Co.*, No. 12-CV-12140, 2013 WL 1632542, at *3 (E.D. Mich. Apr. 16, 2013) (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)).

The Court agrees with MARA that Michigan is not an adequate representative of its interests. It is true that Michigan appears to have the same objectives as MARA, in that the state has so far refused to provide the DOJ with the requested information. But as MARA argues, Michigan has other countervailing incentives—for example, to maintain an election system, comply with federal law, and preserve comity with the federal government—that may ultimately induce it to stop defending the lawsuit or give up the information at issue. Of course, inadequacy cannot be shown based on mere "speculation" about an existing party's future actions. *Mich. State AFL-CIO v. Callaghan*, No. 13-CV-10557, 2013 WL 12621889, at *2 (E.D. Mich. Dec. 9, 2013). But a movant can establish inadequacy with "a prediction" as to how a party may act given its "institutional interests." *Id.* For example, the Sixth Circuit has held that a township did not adequately represent a movant's interests where the township appeared to be defending the lawsuit as the movant would, but its behavior could change in the future: "when the specter of monetary damages looms large, even stout resistance might wither over time." *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*, 41 F.4th 767, 776 (6th Cir. 2022). Although monetary damages are not at issue here, *Wineries* indicates that MARA can establish inadequacy based on the possibility that Michigan's litigation position will become adverse to MARA's interests in the

future.  *See id.* ("What keeps the Township in the litigation today could change tomorrow, dampening the allure of continued legal battle along the way.").  For the moment, Michigan's interest in compliance with federal government requests is outweighed by other considerations, but the balance could shift at any time.  That possibility sufficiently establishes the inadequacy of Michigan's representation.  *Cf. Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799 (E.D. Mich. 2020) (noting that, in the permissive intervention context, "[t]he Sixth Circuit has recognized that the interests of election officials in voting roll maintenance are sufficiently distinct from those of elected officials and their constituents to warrant intervention by those who could be impacted by the results of the maintenance process.").

### (d) Conclusion

In sum, MARA and the individual proposed intervenors (Duquette and Crimando) have established their entitlement to intervene as of right.  In the alternative, the Court would grant them permissive intervention under Rule 24(b).  A common question of law exists, as the movants seek to challenge the DOJ's ability to obtain their personal information and Michigan's ability to disclose it—both of which are legal arguments that Michigan has raised too.  Moreover, the substantiality of the movants' interests and the potential divergence between their interests and Michigan's also weigh in favor of allowing intervention.  *See Coal. to Def. Affirmative Action*, 501 F.3d at 784 (court can consider substantial interest and adequacy in Rule 24(b) analysis).  Finally, there is minimal prejudice to the United States because it is still early in the case and there is no reason to think that additional defendants will unduly delay or complicate the proceedings.  Thus, the Rule 24(b) factors support permissive intervention here.

### 2. League of Women Voters of Michigan

The LWVM's asserted interests in this lawsuit are similar to MARA's: the confidentiality of its members' personal information, the potential deterrence effects on voter registration, its goal

of ensuring that election information is appropriately handled, and the potential resources it may have to expend educating voters about the DOJ's use of their information. For the reasons discussed above, the LWVM has established that it has a substantial interest that could be impaired by this lawsuit. However, because the Court will grant MARA's motion to intervene, MARA is considered an "existing party" for purposes of the adequacy analysis. In other words, to establish its right to intervene, the LWVM has to show not only that *Michigan* inadequately represents its interests but that *MARA* does as well. *See Wineries*, 41 F.4th at 777 (adequate representation analysis changes with each successive intervenor, and "it may be that the interests of existing parties will come to overlap fully with the interests of any remaining proposed intervenor" (quoting *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 199 (2022)). The LWVM's interests in the case are essentially identical to MARA's, and the LWVM provides no reason to think MARA cannot adequately represent those interests. Thus, the LWVM is not entitled to intervention as of right. For the same reason, the Court declines to allow permissive intervention. *See Coal. to Def. Affirmative Action*, 501 F.3d at 784 (adequacy is factor in Rule 24(b) analysis).[2]

## IV. CONCLUSION

For the reasons discussed above, the Court will grant MARA, Duquette, and Crimando's motion to intervene, and deny the LWVM's motion to intervene. An order will issue in accordance with this Opinion.

Dated: December 9, 2025          /s/ Hala Y. Jarbou
                                 HALA Y. JARBOU
                                 CHIEF UNITED STATES DISTRICT JUDGE

---

[2] For the same reason that the Court is granting MARA's motion and denying the LWVM's motion, it could instead grant the LWVM's motion and deny MARA's. But the Court is addressing the motions in the order they were filed.

23

# Exhibit C

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,

       Plaintiff,

v.

STATE OF OREGON; and TOBIAS READ,
*in his official capacity as the Oregon
Secretary of State*,

       Defendants.

Case No. 6:25-cv-01666-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

    Plaintiff United States brings claims against Defendants State of Oregon and Oregon Secretary of State Tobias Read to enforce provisions of the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and Title III of the Civil Rights Act of 1960. Compl. ¶ 1. Our Oregon, Daniel DiIulio, Stephen Gomez, and Emma Craddock (collectively, "Proposed Intervenors") move to intervene in this action pursuant to Fed. R. Civ. P. 24. ECF No. 12. Proposed Intervenor Our Oregon is a "nonprofit social welfare organization" that, among other things, works towards encouraging Oregonians—particularly "marginalized communities and low propensity voters"—to vote. Ruffin Decl. ¶¶ 1-6, ECF No. 12-2. Individual Proposed Intervenors Daniel DiIulio, Stephen Gomez, and Emma Craddock are registered Oregon voters who are concerned about the privacy of their voter data and the effects of its disclosure to

Page 1 — OPINION AND ORDER
25

Plaintiff. *See generally* Mot. to Intervene, Exs. C-E. Plaintiff opposes the motion, while

Defendants do not. *See* Mot. to Intervene 1. For the reasons discussed below, the Motion to

Intervene is granted.

## DISCUSSION

Proposed Intervenors move for mandatory intervention pursuant to Rule 24(a)(2) or,

alternatively, for permissive intervention under Rule 24(b)(2). With respect to mandatory

intervention, Rule 24(a)(2) provides that the Court must permit anyone to intervene who "claims

an interest relating to the property or transaction that is the subject of the action, and is so

situated that disposing of the action may as a practical matter impair or impede the movant's

ability to protect its interest, unless existing parties adequately represent that interest." The Ninth

Circuit has interpreted this rule to impose four requirements:

> An applicant seeking intervention as of right must show that: (1) it has a
> significant protectable interest relating to the property or transaction that is the
> subject of the action; (2) the disposition of the action may, as a practical matter,
> impair or impede the applicant's ability to protect its interest; (3) the application is
> timely; and (4) the existing parties may not adequately represent the applicant's
> interest.

*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (internal quotations omitted). The

requirements are interpreted "broadly in favor of intervention," and their application is "guided

primarily by practical and equitable considerations." *Id.*

First, the Court finds that the Proposed Intervenors have significant protectable interests

related to this litigation, and that the disposition of this action may impair those interests. In the

Ninth Circuit, "a party has a sufficient interest for intervention purposes if it will suffer a

practical impairment of its interests as a result of the pending litigation." *Cal. ex rel. Lockyer v.

United States*, 450 F.3d 436, 440 (9th Cir. 2006). Here, the individual Proposed Intervenors

provided declarations supporting their concerns about the disclosure of the private information

contained in their voter registration history to the Federal government. *See generally* Mot. to Intervene, Exs. C-E. Proposed Intervenor Our Oregon provided a declaration from its executive director outlining its concern that "the threat of disclosure will deter qualified voters in marginalized communities from registering to vote in Oregon and engaging in the political process more broadly." Mot. to Intervene, Ex. B. There is no dispute that Plaintiff seeks through this action Oregon's full "statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number." Compl. 21. In other words, the outcome of this litigation will directly affect the protectable privacy interests Proposed Intervenors assert. Thus, Proposed Intervenors have adequately demonstrated specific interests that may be practically affected by the outcome of this litigation.

Plaintiff's argument that Proposed Intervenors cannot have a protectable interest because the statutes at issue do not authorize a cause of action or allow for Proposed Intervenors to serve as defendants is not well taken. As noted above, mandatory intervention is guided by practicable and equitable considerations, and nothing in the text of the rule limits its application in the way Plaintiff suggests. Indeed, the Ninth Circuit has explicitly held that "no part of Rule 24(a)(2)'s prescription engrafts a limitation on intervention of right to parties liable to the plaintiffs on the same grounds as the defendants, and that "a prospective intervenor's asserted interest need not be protected by the statute under which the litigation is brought to qualify as significantly protectable under Rule 24(a)(2)." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1178–79 (9th Cir. 2011) (internal quotation marks omitted). Thus, Proposed Intervenors satisfy the first and second requirements for mandatory intervention.

Second, Proposed Intervenors' motion is timely because it was filed without delay—a mere 10 days after the Complaint was filed—and does not prejudice any party. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (The relevant factors for timeliness are "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay"). Indeed, Plaintiff does not contest that this motion is timely.

Finally, Proposed Intervenors adequately demonstrate that the existing Defendants may not adequately represent their interests. This requirement for intervention "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972). While the Ninth Circuit employs a "presumption of adequacy" when the government is representing its constituency, that presumption may be overcome by "a very compelling showing" that the government's representation is inadequate to protect the intervenor's interests. *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020). In addition, the Supreme Court recently made clear that presumptions of adequacy of government representation are limited to "certain classes of cases" such as where "a movant's interests are identical to those of an existing party." *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 196 (2022).

Here, the Court finds that the Proposed Intervenors' interests are not identical to Defendants and in any event Proposed Intervenors have made a compelling showing sufficient to overcome any presumption of adequacy. As Proposed Intervenors point out, the existing Defendants have obligations under the NVRA and HAVA that Proposed Intervenors do not share and have broader public policy obligations and considerations that may incentivize them to make

compromises that Proposed Intervenors would not make. For their part, Proposed Intervenors have specific interests in protecting their privacy (in the case of the individual Proposed Intervenors) and in increasing voter participation by marginalized communities (in the case of Proposed Intervenor Our Oregon) that existing Defendants do not share. This is sufficient to establish the final element of mandatory intervention.

In sum, the Court finds that Proposed Intervenors have carried their burden to satisfy all the requirements necessary for mandatory intervention under Rule 24(a)(2). The Court also notes that, for the same reasons articulated above, the requirements for permissive intervention under Rule 24(b)(2) are also met. *See* Fed. R. Civ. P. 24(b)(2) ("the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."). Intervention is appropriate under that provision as well.

## CONCLUSION

For the reasons discussed above, Our Oregon, Dan DiIulio, Stephen Gomez, and Emma Craddock's Motion to Intervene (ECF No. 12) is GRANTED.

DATED this 5th day of December 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge

# Exhibit D

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered on 11/24/2025 at 10:41 AM PST and filed on 11/19/2025

| | |
|---|---|
| **Case Name:** | United States of America v. Shirley Weber et al |
| **Case Number:** | 2:25-cv-09149-DOC-ADS |
| **Filer:** | |
| **Document Number:** | 70 |

**Docket Text:**
MINUTES OF Motion Hearing re Motion to Stay [6] and Motions to Intervene [14][24] held before Judge David O. Carter: The case is called. The Court GRANTS Motions to Intervene [14][24]. Deadlines are set for Motions to Dismiss. Motion hearing set for December 4, 2025 at 7:30 AM at Los Angels First Street Federal Courthouse. APPEARANCES: For Plaintiff(s): Eric Neff, Julie Hamill; For Defendant(s): Malcolm Brudigam, Robert William Setrakian; Intervenors: Grayce Zelphin, Christopher Dodge. Courtroom Deputy Clerk: Karlen Dubon; Court Reporter: Court Smart; Time in Court: {0:18}. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kdu) TEXT ONLY ENTRY

**2:25-cv-09149-DOC-ADS Notice has been electronically mailed to:**

Grayce S Patricia Zelphin     gzelphin@aclunc.org, aalas@aclunc.org

Omar G. Qureshi     omar@qureshi.law, 2060460420@filings.docketbird.com

Anne P Bellows     anne.bellows@doj.ca.gov

Maureen S. Riordan     maureen.riordan2@usdoj.gov

William Bellamy     william.bellamy@doj.ca.gov

Haley Jane Rosenspire     hrosenspire@kaufmanlegalgroup.com

Brittany E Bennett     brittany.bennett@usdoj.gov

Robert William Setrakian     docketinglaawt@doj.ca.gov, todd.grabarsky@doj.ca.gov, dyan.serzo@doj.ca.gov, william.setrakian@doj.ca.gov

Angelica Salceda     asalceda@aclunc.org, 3260646420@filings.docketbird.com

Jacob D. Shelly     jshelly@elias.law

Tyler L. Bishop     tbishop@elias.law

Kevin L. Quade     jacqueline.williamson@doj.ca.gov, christopher.irby@doj.ca.gov, kevin.quade@doj.ca.gov

Julia A. Gomez Hernandez     cminneci@aclusocal.org, jgomez@aclusocal.org

Malcolm Andreas Brudigam     malcolm.brudigam@doj.ca.gov

Stephen J Kaufman     skaufman@kaufmanlegalgroup.com, twaters@kaufmanlegalgroup.com

Julie Ann Hamill     julie.hamill@usdoj.gov, caseview.ecf@usdoj.gov, julie.morales@usdoj.gov, usacac.civil@usdoj.gov

Lalitha D. Madduri     mdepass@elias.law, mshostek@elias.law, lalitha-madduri-0956@ecf.pacerpro.com, lmadduri@elias.law

Michael Surren Cohen      linda.zamora@doj.ca.gov, michael.cohen@doj.ca.gov

Christopher D. Dodge      cdodge@elias.law

Walker McKusick      wmckusick@elias.law

Eric Vincent Neff      eric.neff@usdoj.gov

Lisa Catherine Ehrlich      docketingsfcls@doj.ca.gov, lisa.ehrlich@doj.ca.gov

**2:25-cv-09149-DOC-ADS Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

      Defendant.

---

### DECLARATION OF EDWARD AUGDEN

---

I, Edward Augden, declare as follows:

1.      I am a U.S. citizen, over the age of 18, and am competent to testify. I have personal knowledge of the facts and information set forth in this declaration.

2.      I am the President of the Colorado Alliance for Retired Americans (the "Alliance").

3.      I am a registered voter in the City and County of Denver, where I have been registered to vote since approximately 1968.

4.      The Alliance is a nonpartisan organization incorporated in Colorado and is a 501(c)(4) nonprofit, social welfare organization under the Internal Revenue Code. It is a chartered state affiliate of the Alliance for Retired Americans.

5.      The Alliance has 41,712 members who live throughout the state of Colorado. Most of those members are more than 60 years old. Its members include retirees, primarily from public and private sector unions. I too am a retired public school teacher

and a former member of the American Federation of Teachers.

6.      The Alliance's members are politically active and have very high rates of voter registration.

7.      The mission of the Alliance is to ensure social and economic justice and full civil rights for retirees after a lifetime of work. We achieve this mission by dedicating significant resources to grassroots advocacy, and educating and organizing our members through educational materials, presentations, and other outreach.

8.      The political participation of our members is central to the Alliance's mission. To advance this mission, we take part in various types of activities: for example, we encourage our members to register to vote, we help them do so, and we assist them in navigating the voting process. We conduct "get-out-the-vote" activities before elections to increase the turnout of our members. And we work to educate our members on issues important to retirees and older Americans. These activities are central to the Alliance's core mission—by informing and turning out our members to vote, the Alliance reinforces the political voice of its members.

9.      If the Department of Justice were successful in obtaining Colorado's complete, statewide voter registration list—and all the sensitive, personal information that it contains—that result would make the Alliance's civic engagement work more difficult. If it were known that the Department of Justice would have access to all the sensitive, personally identifying information that the State of Colorado maintains in its voter registration file, this could have a substantial effect on retirees' willingness to register to vote, as they may not wish that information to be transmitted to the Department of Justice.

10.    Particularly because the Alliance is comprised of older Americans, who are disproportionately targeted by scams relating to social security fraud and identity theft, the privacy and security of its members' personal information is important to the Alliance as an organization. Accordingly, the Alliance has held numerous educational sessions for its members regarding fraud targeted at older Americans, including multiple presentations by Colorado's Attorney General and several District Attorneys.

11.    If the Department of Justice obtains Colorado's complete and unredacted voter registration list, that itself would constitute a substantial privacy harm to the Alliance's members. It also increases the risk that sensitive, personally identifying information would find its way into the hands of others, including those who could use it to perpetuate identity-theft or other financial scams. That concern is particularly acute for many members of the Alliance who do not have confidence in the current presidential administration's ability or willingness to protect Americans' confidential data, as evidenced, for example, by Elon Musk's so-called Department of Government Efficiency's reckless treatment of social security records. In addition, members of the Alliance are concerned that the Department of Justice will attempt to weaponize this data against perceived political enemies of the current administration, including members of the Alliance who criticize the current Administration or its policies.

12.    Such a disclosure would deter individuals (including the Alliance's members and potential future members) from engaging in the electoral process, such as by discouraging people from registering to vote, out of fear that their data will be mishandled or weaponized. That result would harm the Alliance's mission and its civic engagement

3

36

work. If the Alliance's members become less likely to register to vote and to vote due to fear that their information will be misused, the Alliance will be less able to succeed in its civic engagement efforts. This will make it harder for the Alliance to turn out our members and accomplish a core part of our mission.

13.     The actions that the Department of Justice has taken do not give me or our members confidence that it will respect privacy laws or safeguard the confidentiality of our personal data. And once this information is released, the harm is done—that information cannot be returned.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: __Dec. 17, 2025___

                                                    /s/ Edward Augden
                                                    Edward Augden

4

37

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

      Defendant.

---

DECLARATION OF BRITTON DEFORD

---

I, Britton DeFord, declare as follows:

1.      I am a U.S. citizen, over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in the declaration.

2.      I am a registered voter in Garfield County, Colorado. I have lived in Garfield County since approximately 2004, and I have voted there ever since.

3.      I have been a high school teacher for approximately twenty years. I have taught Spanish and English Language Development, where I instructed students who did not learn English as their first language. This year, I am a Culturally & Linguistically Diverse Education Coach, where I provide broader educational support to teachers and students across the high school.

4.      I am civically engaged in my local community and I frequently express my political views. For example, I am involved with Mountain Action Indivisible, a local group

1

39

that organizes rallies, and I regularly attend these events and other demonstrations, protests, and marches. I also advocate for my values by identifying local businesses who are willing to stand up for democracy, and I use this information to encourage members of my community to shop locally and support these likeminded business owners.

5.      On occasion, I will write letters to the editor in local journalism outlets where I express my political views, sometimes including criticism of the current presidential administration. I hope to convince other Colorado residents to similarly use their voices and to participate in our democracy.

6.      I understand that the Department of Justice's lawsuit seeks to compel Secretary Griswold to hand over the complete, unredacted voter file of all voters in the state, including voters' driver's license numbers, partial social security numbers, and dates of birth. I believe that the Constitution entrusts the states with the responsibility to maintain free and fair elections, and I personally trust Colorado and my other state officials' longstanding commitment to the security and privacy of my voter information. I do not have the same trust in the federal government.

7.      If the Department of Justice is successful in obtaining this information, it will harm me personally as a Colorado voter who does not want her information to be disclosed to the federal government, especially because Colorado law is supposed to protect this information. If my personal data is given to the federal government, I am concerned that the federal government will not take precautions to keep that data secure, nor will it use the information solely for the limited purposes for which I disclosed it.

8.      On many occasions, I have received notice that a system including my

2

40

personal data suffered a security breach. The federal government has also demonstrated that it does not take proper precautions to protect sensitive data, including reports that the so-called Department of Government Efficiency (DOGE) put the Social Security information of millions of Americans at risk of a breach. I am worried that the Department of Justice will similarly fail to maintain appropriate procedures to protect voter data from nefarious actors, and that I will be at a greater risk of identity fraud and other scams.

9.     I am also concerned that the real reason that the federal government wants this data is for use in revenge against people they perceive to be their political opponents. For instance, I have read reporting about federal agencies improperly sharing information with other portions of the government, including with immigration officials at ICE. The current presidential administration has demonstrated through its actions that it will target political opponents with investigations, termination of employment, and even criminal prosecution. I am concerned that I may face retaliation from the government because of my political and civic engagement. Similarly, if Colorado's voter file is released, I am worried that I will have a more difficult time convincing other members of my community to engage in political expression and the electoral process.

10.     The federal government has targeted programs that are associated with diversity, equity, and inclusion (DEI) efforts. Because of my role as a Culturally and Linguistically Diverse Education Coach, I am concerned the government may target my employment.

11.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on: <u>12/16/25</u>

<u>/s/Britton DeFord</u>

Britton DeFord