IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03967-PAB-TPO

THE UNITED STATES OF AMERICA,
    Plaintiff,

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,
    Defendant.

**THE COLORADO SECRETARY OF STATE'S RESPONSE TO MOTION TO COMPEL**

Facts still matter. According to the United States Department of Justice ("DOJ"), this action is necessary because last May DOJ requested certain information from Colorado and "Secretary Griswold did not respond." Decl. of Eric Neff (Docket No. 5-2) ¶ 5. As a result, DOJ now asks this Court to order the Secretary to turn over Colorado's voter roll, including each voter's "name, date of birth, address," and either their driver's license number, last four digits of their social security number, or unique Help America Vote Act ("HAVA") identifier. Mot. for Order to Compel Records ("Mot. to Compel") (Docket No. 2) at 2-3.

But DOJ's declarant, who is also an attorney entered in this matter,[1] is wrong. Secretary Griswold not only responded to the May 2025 letter but also produced voluminous records including a copy of Colorado's voter registration list that included each voter's name, birth year, address, and unique HAVA identifier. *See* Ex. B to Ex. A ("Borochoff-Porte Decl."). That same day, DOJ acknowledged receipt of the Secretary's response. Ex. C to Borochoff-Porte Decl. Two

---

[1] In filing this Response the Secretary reserves all rights relating to Mr. Neff's role in this matter including the right to seek his disqualification as counsel based on his role as a fact witness.

weeks later DOJ downloaded the files shared by the Secretary. Ex. E to Borochoff-Porte Decl. This action is built on a faulty premise. DOJ has received the materials it asked for.

But even if that were not the case, DOJ's motion is procedurally premature and legally insufficient. First, relying on a single, outdated, out-of-circuit opinion, DOJ mistakenly asserts that it is entitled to a summary proceeding not governed by the Federal Rules of Civil Procedure. Second, DOJ's request fails under the plain text of the Civil Rights Act of 1960 ("CRA") and violates both state and federal privacy laws. Third, even if DOJ were entitled to additional records under the CRA—which it is not—the Secretary need not provide those records electronically under the act's plain language.

The audacity of DOJ's unconstitutional effort to insert the executive branch into State voter registration list maintenance is alarming; especially considering recent comments that the President is seeking to "nationalize" or "take over the voting" in State or local jurisdictions.[2] Regardless, for all the reasons above, DOJ's request to compel production of the sensitive personal information of Colorado voters merits dismissal on both procedural and legal grounds.

## BACKGROUND

### I. Colorado maintains a statewide voter registration list.

In Colorado, the electronic, statewide voter registration database required by HAVA, 52 U.S.C. § 21083(a)(1)(A), is known as "SCORE." Ex. B ("Rudy Decl.") ¶ 2. SCORE is a real-time database that is updated in real-time. *Id.* ¶ 3. Each time State election officials receive relevant information from or about a voter, SCORE is updated. *Id.* Among other things, these

---

[2] Reid J. Epstein and Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, The New York Times, (Feb. 2, 2026), https://tinyurl.com/mpsze8zj.

updates happen based on correspondence with voters, information supplied from the federal government, and National Change of Address checks. *Id.* ¶¶ 4-8. And because Colorado is an automatic voter registration state, much of the information in SCORE comes directly from the State division of motor vehicles. *See* Rudy Decl. ¶ 13; *see also* § 1-2-213.3, C.R.S.

SCORE includes fields for a voter's name, address, date of birth, driver's license number, and the last four digits of the voter's social security number. *Id.* ¶ 9. However, the Secretary makes a public version of the database generally available. *Id.* ¶ 11. That public version includes the unique HAVA identifier for each voter, as well as the voter's name, address, and birth year, but does not include license numbers, social security numbers, or birth dates. *Id.* The public version also does not include a small number of voters who have been granted confidential status because they are first responders or who have reason to fear criminal harassment or bodily harm from the release of their name and address. *Id.* ¶ 12; *see also* § 24-72-204(3.5), C.R.S.

II.   **The Secretary voluntarily responded DOJ's request for records.**

On May 12, 2025, the Secretary received a letter from Harmeet Dhillon, the senior official at DOJ in charge of enforcing the CRA. Ex. A to Borochoff-Porte Decl. According to DOJ, the letter arose out of "a complaint alleging noncompliance by [the Department of State] with the [NVRA]." *Id.* "To assist [its] efforts in evaluating the complaint," DOJ requested: (1) "All records, as outlined in 52 U.S.C. § 20701," and (2) "All statutes, regulations, written guidance, internal policies, or database user manuals that set out the procedures Colorado has put in place relating to implement the requirements of 52 U.S.C. § 20701." *Id.*[3]

---

[3] The letter inaccurately referred to "the Commonwealth of Colorado" and referenced records relating to the "2000" election, instead of the 2020 election. Ex. A to Borochoff-Porte Decl.

3

The Secretary responded on May 27, 2025. Ex. B to Borochoff-Porte Decl. As part of the response, the Secretary voluntarily produced over one hundred reports generated from the SCORE database, including a copy of the public statewide voter registration list, and copies of statutes and rules responsive to DOJ's request. Rudy Decl. ¶ 14. The registration list included each voter's name, address, and birth year, as well as the unique identifier assigned to each voter under HAVA. *Id.* DOJ acknowledged receipt of that data the same day, Ex. C to Borochoff-Porte Decl., and downloaded that data on June 12, 2025, Ex. E to Borochoff-Porte Decl.

After months of noncommunication, and after public reports that DOJ was seeking to build a nationwide voter registration database,[4] on December 1, 2025, Eric Neff, the Acting Chief of the Voting Rights Section at DOJ, sent "follow up" correspondence to the May communications requesting a copy of Colorado's "nonpublic, unredacted voter registration list." Ex. F to Borochoff-Porte Decl. Neff also asked the Secretary to sign a Memorandum of Understanding. *Id.* That MOU would have allowed DOJ to dictate the state's voter list maintenance activities. Ex. G to Borochoff-Porte Decl at 5-7. The Secretary did not sign the MOU. Compl. (Docket No. 1) ¶ 25.

Less than two weeks later, DOJ initiated this action. *Id.* In its Complaint, DOJ invokes the CRA, inaccurately alleging that its May 2025 letter requested records and included a "statement of the basis and the purpose therefor." *Id.* ¶¶ 26-27 (quoting 52 U.S.C. § 20703). The Complaint also inaccurately alleges that the Secretary did not respond to the May 2025 letter from DOJ. Compl. ¶ 23. *But see* Ex. B to Borochoff-Porte Decl. As a remedy, DOJ asks for an

---

[4] *See* Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, The New York Times, (Sep. 9, 2025), https://tinyurl.com/c9tujz9f.

4

order compelling production of "the current electronic copy of Colorado's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, the last four digits of their Social Security number, or HAVA unique identifier[.]" *Id.* at 6-7. Alongside its Complaint, DOJ filed a Motion to Compel, requesting an order compelling the production of the same information. Mot. to Compel at 2-3.

Although DOJ claims its request for Colorado's nonpublic voter registration list stems from a complaint, DOJ has made similar requests of nearly every State.[5] And on January 24, 2026, Attorney General Pamela Bondi attempted to coerce the state of Minnesota to provide DOJ unredacted voter rolls or face a continued surge of immigration enforcement in the state.[6]

Finally, last month, Deputy Assistant Attorney General Ronald J. Lampard referenced DOJ's May 2025 request to Colorado in a letter to California Senator Alex Padilla, stating that "[u]nder the NVRA, states are *required* to disclose their voter rolls" under certain circumstances, and that "[a]ccordingly" DOJ requested that information from Colorado. Ex. H to Borochoff-Porte Decl. at 2. According to Lampard, Colorado disclosed its list in response to that request, and DOJ is analyzing it "for duplicates, and for individuals who are deceased, have moved to another state, registered elsewhere, or are otherwise ineligible to vote." *Id.*

---

[5] *See* Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (updated Feb. 6, 2026), https://tinyurl.com/dye26wk9.

[6] *See* Letter from Pamela Bondi to Tim Walz (Jan. 24, 2026), https://tinyurl.com/52hsebkv.

## ARGUMENT

### I. DOJ's dispositive motion is premature.

The Motion to Compel is a dispositive motion that would grant DOJ all the relief it seeks. Given that the Secretary has not even answered the Complaint, such a motion is premature.

Under the Federal Rules, there "is one form of action—the civil action." Fed. R. Civ. P. 2. And the Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts," with a single exception not relevant here. Fed. R. Civ. P. 1. Nonetheless, DOJ claims that the CRA "displaces the Federal Rules of Civil Procedure by creating a special statutory proceeding." Mem. in support of Mot. to Compel (Docket No. 5) at 8. DOJ is mistaken for several reasons.

First, the "Federal Rules are the default rules in civil litigation." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023). Although Congress may exempt a statutory proceeding, courts "do not lightly infer that Congress has done so; and silence on the subject is seldom enough." *Id. See also United States v. Oregon*, -- F. Supp. 3d --, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026) (holding that text of CRA does not displace civil rules).

Where a statute grants courts jurisdiction "by appropriate process," the Federal Rules apply. *United States v. Powell*, 379 U.S. 48, 52 & n.10 (1964). In *Powell*, the Court considered a statute authorizing the government to bring an action "by appropriate process" to compel records. *Id.* (citing 26 U.S.C. § 7604(a)). Because that statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction," the Supreme Court held that "the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18.

So too here. The CRA contains almost identical language, granting district courts "jurisdiction by appropriate process to compel the production" of records. 52 U.S.C. § 20705.

6

Like the statute in *Powell*, Section 20705 does not specify what procedures should be followed. In such cases, *Powell* dictates that the Rules of Civil Procedure apply. *See also Becker v. United States*, 451 U.S. 1306, 1307-08 (1981); *cf.* Fed. R. Civ. P. 81(a)(5) (stating that the Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute[.]").

DOJ's motion for extraordinary and preliminary relief does not address *Powell* or its progeny. Instead, its sole authority for displacing the Federal Rules is an out-of-circuit case decided over eighty years ago. Mem. in support of Mot. to Compel at 2 (citing *Kennedy v. Lynd*, 306 F.3d 222, 225 (5th Cir. 1962)). But *Kennedy* is not binding on this Court, *United States v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986), and its holding is inconsistent with the later holdings in *Powell* and *Polansky*.

Under the Federal Rules, DOJ's Motion is improper. The parties have not conferred under Rule 26 and there has been no scheduling order issued under Rule 16. A dispositive motion at this stage, when the Secretary has not responded to the Complaint, let alone sought discovery, would violate due process. *See generally Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000) ("The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees."). The Motion to Compel should be denied.

**II.   DOJ is not entitled to a production of records beyond what the Secretary has already voluntarily produced.**

Even if DOJ's Motion were procedurally proper, it should still be denied on its merits. First, the Secretary has already produced what DOJ asks this Court to compel. Second, Colorado's Voter Registration List is not a record subject to review under the CRA. Third, DOJ

has not satisfied the elements of a claim under the CRA. And finally, compelling production of an unredacted voter registration list would violate state and federal privacy laws.

### A. The Secretary has already sufficiently responded to DOJ's request.

Under the CRA, the Attorney General may request to review "[a]ny record or paper required by [52 U.S.C. § 20701] to be retained or preserved." 52 U.S.C. § 20703. If a custodian refuses, DOJ can initiate a civil action to compel production. 52 U.S.C. § 20705.

In this Motion, DOJ asks for an Order compelling the Secretary to produce "an electronic copy of the Colorado statewide Voter Registration List." Mot. to Compel at 2. Specifically, DOJ asks for that list to include for each registrant: (1) name; (2) date of birth; (3) address; and (4) "the last four digits of the registrant's social security number, driver's license/state identification number *or* the unique HAVA identifier." Mot. to Compel at 2-3 (emphasis added).

The Secretary has already voluntarily produced to DOJ a copy of the statewide voter roll, and that list included each registrant's[7] name, address, and HAVA unique identifier. Rudy Decl. ¶ 14. It did not include each registrant's full date of birth. But it did include each registrant's birth year, and nothing in DOJ's Motion explains why birth date, instead of year, is relevant.

The Department of Justice's declarants and attorneys act unaware that the Secretary has already produced this information. *See* Compl. ¶ 23; Neff Decl. (Docket No. 5-2) ¶ 5 (swearing that "Secretary Griswold did not respond to the May 12 Letter."). But DOJ confirmed receipt of the Secretary's response and downloaded the responsive records. *See, e.g.,* Exs. C and E to Borochoff-Porte Decl. Moreover, DOJ's assertions in this lawsuit are flatly contradicted by its

---

[7] The list also omitted a small number of confidential voters. But DOJ again does not explain why this difference is material to its supposed purposes.

own representations to Congress. Last month, DOJ told Senators that it had received Colorado's voter registration list last May, and implied that what it received is sufficient to enable whatever (unlawful) list maintenance review it seeks conduct. Ex. H to Borochoff-Porte Decl. at 2.

Because the Secretary has substantially complied with DOJ's request, the Motion to Compel should be denied.

### B. The Voter Registration List is not a "record" subject to retention, preservation, and review under the Civil Rights Act.

The CRA was designed, in relevant part, to address the "persistent voter suppression" faced by Black Americans during Jim Crow. *United States v. Weber*, -- F. Supp. 3d --, 2026 WL 118807, at *1 (C.D. Cal. Jan. 15, 2026). In 1959, the Commission on Civil Rights concluded that many Black Americans "find it difficult, and often impossible, to vote."[8] Often, this difficulty arose from arbitrary rejection of registration applications. *See, e.g.*, *id.* at 61. The Commission also concluded that many jurisdictions failed to maintain records, and that "lack of uniform provision for the preservation and public inspection of all records pertaining to registration and voting hampers and impedes investigation of alleged denials of the right to vote." *Id.* at 137.

The result of the Commission's findings and recommendations was the CRA. *See* 52 U.S.C. §§ 20701-20705. Under the CRA, an election official "shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary [federal] election, . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C.

---

[8] Report of the United States Commission on Civil Rights at 134 (Sept. 9, 1959), https://tinyurl.com/553yzrhd.

§ 20701. Once retained, DOJ may request that these records and papers "be made available for inspection, reproduction, and copying." 52 U.S.C. § 20703.

Both the text and the historical background underscore that the CRA only requires retention of records generated by or about individual voters. The SCORE database, which is an accumulation of data and information relating to all registered voters, does not qualify.

Beginning with the text, the CRA only applies to a specific voter's "application," "registration," and "payment of poll tax," and only then when those documents "come into [the] possession" of election officials. 52 U.S.C. § 20701. Following these specific examples, the catchall phrase "other act requisite to voting" must also apply only to records about an individual voter that are provided to election officials. *See, e.g.*, *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 217 (2024) ("[A] catchall phrase . . . must be . . . read to embrace only objects similar in nature to the specific examples preceding it.") (quotations omitted). It does not apply to databases, like SCORE, that are created by election officials *based* on records concerning individual voters. *See United States v. Benson*, -- F. Supp. 3d --, 2026 WL 362789, at *9 (W.D. Mich. Feb. 10, 2026) (citing 52 U.S.C. § 20701). The CRA requires officials "to preserve records that voters submit to them—not records that states create." *Id.*

This text reflects the purpose of the CRA, which was to remedy disenfranchisement. The records retention provision ensured the federal government could effectively police local governments who were systemically denying Black Americans the right to vote. Section 20701 requires retention of records that reflect whether officials are engaging in that type of discrimination. And as the Secretary explained in her response to DOJ's initial request, Colorado

law designates county election officials as the custodians of those records. *See* Ex. B to Borochoff-Porte Decl. at 1 (citing § 1-7-802, C.R.S.).

Finally, the purpose of SCORE, compared to the specific examples of records in the CRA also confirms that it is not a record subject to retention. The CRA covers records that are static and requires those static records to be retained for 22 months. 52 U.S.C. § 20701.

SCORE, on the other hand, is a dynamic, real-time database. Each time a voter registers, moves, or dies, the list must be updated; HAVA requires as much. *See, e.g.*, 52 U.S.C. § 21083(a)(2)(A). If SCORE is a "record" under the CRA, then it must be preserved—and cannot be altered—for 22 months. 52 U.S.C. § 20701. But both federal law and election administration require otherwise. Because SCORE cannot, under federal law, be maintained in a static form for 22 months, the database is not a record subject to preservation and inspection. *Padilla-Caldera v. Gonzales*, 453 F.3d 1237, 1241 (10th Cir. 2005), *rev'd on other grounds*, 637 F.3d 1140 (10th Cir. 2011) ("[C]onflicting statutes should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to amend an earlier, more general statute.") (quotations omitted); *United States v. Bigford*, 365 F.3d 859, 871 (10th Cir. 2004) ("[W]e construe a statutory term so that it fits most logically and comfortably into the body of both previously and subsequently enacted law.") (quotations omitted).

### C. DOJ has not articulated a sufficient basis and purpose for its request.

As the Secretary explains at length in her Motion to Dismiss, filed contemporaneously with this Response, DOJ has not satisfied the elements of a claim under the CRA because it has not articulated a legal basis and purpose for the records it seeks. The Secretary incorporates those arguments here. Specifically, as both courts to have already addressed DOJ's claims have held, a

valid "purpose" under the CRA "must relate to a purpose of investigating violations of individuals' voting rights." *Oregon*, 2026 WL 318402, at *10; *Weber*, 2026 WL 118807, at *9. Here, DOJ's stated purpose of needing these records to evaluate Colorado's compliance with the NVRA, is not a valid justification for invoking the CRA.

### D. Producing the nonpublic database would violate federal and state privacy laws.

DOJ's sweeping and unprecedented demand also intrudes on the privacy of Colorado voters. Sensitive personal information like social security numbers and driver's license numbers are protected under both state and federal law, both of which prohibit disclosure of this information under the circumstances presented here.

#### 1. The Department of Justice's demand violates the Privacy Act.

First, DOJ has not proven it has complied with the Privacy Act of 1974. *Ritter v. United States*, 177 Fed. Cl. 84, 87 (2025) ("The Privacy Act exists to protect individuals from disclosure of government-collected information."). The Act contains several safeguards to prevent unjustified disclosure of private information. For example, the Act prohibits federal agencies from maintaining any record "describing how any individual exercises rights guaranteed by the First Amendment," subject to narrow exceptions. 5 U.S.C. § 552a(e)(7). The Act also requires federal agencies to first publish a System of Records Notice ("SORN") in the Federal Register before they seek to "establish[ ] or revis[e]" a "system of records." *Id*. § 552a(e)(4).

A "system of records" is a "group of any records under the control of any agency from which information is retrieved by the name of the individual" or other individual personal identifier. *Id*. § 552a(a)(5). Voter information from SCORE qualifies. But DOJ offers no indication it has published a SORN, which independently warrants denial of its Motion.

12

### 2. The Department of Justice's demand violates the E-Government Act.

DOJ's demand for the unredacted voter list also violates the E-Government Act of 2002. Pub. L. No. 107-347, § 208(b)(1) (2002) ("E-Government Act"). As relevant here, the E-Government Act requires agencies to prepare a "privacy impact assessment" prior to "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id.* § 208(b); *Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt.*, 786 F. Supp. 3d 647, 665 n.11 (S.D.N.Y. 2025). The Act's procedural requirements must be satisfied "*before* the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) (emphasis in original). The voter registration "information" contained in Colorado SCORE is subject to the Act. Pub. L. No. 107-347, § 208(b)(1)(A)(ii)(II). Yet DOJ fails to even cite the E-Government Act, let alone address the applicable requirements.

### 3. The Department of Justice's demand violates the Driver's Privacy Protection Act.

Finally, DOJ has failed to demonstrate its compliance with the Driver's Privacy Protection Act ("DPPA"). 18 U.S.C. § 2721, *et seq*. The DPPA prohibits the disclosure of "personal information" obtained in connection with a "motor vehicle record." 18 U.S.C. § 2721(a)(1). *See Reno v. Condon*, 528 U.S. 141, 143 (2000). The DPPA defines "personal information" to include, among other things, an individual's "social security number" and "driver identification number." 18 U.S.C. § 2725(3). DOJ's request for the "state driver's license number" unquestionably falls within this definition. Once again, DOJ fails to address its compliance with the DPPA.

13

### 4. The Department of Justice's demand violates Colorado law.

Colorado law bars the Secretary from disclosing social security numbers, driver's license or state-issued identification numbers, and month and date of birth. §§ 1-2-302(8); 24-72-204(8), C.R.S. These prohibitions accord with other State laws protecting personal identifying information ("PII"), *see generally* §§ 24-72-501, *et seq.*, 24-73-101, *et seq.*, 24-74-101, *et seq.*, including a law prohibiting disclosure of PII for the purpose of "investigating for, participating in, cooperating with, or assisting in federal immigration enforcement," § 24-74-103(1), C.R.S.

Neither the CRA nor the NVRA preempt these laws. First, courts have consistently held that the more specific statute—the NVRA—does not require disclosure of unredacted voter lists. *See, e.g.*, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 333 (4th Cir. 2012) (affirming order to redact social security numbers before disclosure under NVRA); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 45-49, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information").

Second, preemption is appropriate only where a state law "interferes with or is contrary to federal law." *Free v. Bland*, 369 U.S. 663, 666 (1962). Colorado's privacy protections coexist alongside the NVRA and the CRA because the former does not obstruct either of the latter. Nothing in the NVRA prevents redaction of sensitive voter information, nor does anything in the CRA require disclosure of aggregated personal information. Therefore, Colorado privacy law protects the personal information DOJ requests. *See also Oregon*, 2026 WL 318402, at *12 (concluding that the CRA does not preempt state prohibitions on producing sensitive voter data); *Weber*, 2026 WL 118807, at *13-14 (same).

14

**III.     Even if DOJ is entitled to view the records, it is not entitled to electronic production.**

Finally, the Motion asks for an Order requiring the Secretary to "submit the demanded records electronically to the Attorney General[.]" Mot. to Compel at 3. DOJ's motion should be denied because it seeks relief beyond the scope of relief afforded by the statute.

Section 20703 is explicit about what it requires. Upon request from the Attorney General, election officials must make records "available for inspection, reproduction, and copying *at the principal office*" of the custodian. 52 U.S.C. § 20703 (emphasis added). Requiring electronic production would go beyond the text.

In a similar context, the Tenth Circuit has held that local jurisdictions are not required to produce records electronically. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1086 (10th Cir. 2025); *see also Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1334 (11th Cir. 2024). *Torrez* applies here and confirms that although the Secretary may produce requested records electronically, the statute does not require her to do so.

## CONCLUSION

The Secretary respectfully requests that the Court deny the Motion to Compel.

Dated: February 10, 2026     PHILIP J. WEISER
                             Attorney General

                             /s Peter G. Baumann

                             ***Peter G. Baumann***, Senior Assistant Attorney General
                             ***Lane Towery***, Assistant Attorney General
                             1300 Broadway, Denver, CO 80203
                             Telephone: (720) 508-6000
                             Email: peter.baumann@coag.gov; lane.towery@coag.gov
                             Attorneys for Secretary Jena Griswold