IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03967-PAB-TPO

THE UNITED STATES OF AMERICA,
    Plaintiff,

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,
    Defendant.

## THE COLORADO SECRETARY OF STATE'S MOTION TO DISMISS

Without a valid legal basis, the U.S. Department of Justice asks the Court to order the Colorado Secretary of State to turn over confidential, sensitive information regarding Colorado's voters. Colorado maintains accurate, current voter registration lists, consistent with federal law, and has already provided DOJ with the publicly available version of its voter registration list. DOJ's Complaint misrepresents the Secretary's actions, inaccurately stating that Colorado failed to respond to its earlier requests. Moreover, DOJ attempts to turn the Civil Rights Act of 1960, a law designed to curb overt racial discrimination, into a wide-reaching tool that would allow the federal government to access all State-held voter information without justifiable purpose. whenever and on whatever terms it wants. But federal law does not allow such unfettered access.

The Constitution's framers recognized that power over election rules could be abused, either to destroy the national government or to prevent the people from acting as a check on their elected representatives. *See, e.g.*, The Federalist No. 59 (A. Hamilton); Federal Farmer No. 3. Accordingly, they entrusted this power to the parts of our government most responsive to the will of the people: first to the States, and then, in some instances, to Congress, but not to the

president. *See* U.S. Const. art. I, § 2, cl. 1; U.S. Const. art. I, § 4, cl. 1. *See League of United Latin Am. Citizens v. Exec. Office of the President*, -- F. Supp. 3d --, 2026 WL 252420, at *1 (D.D.C. Jan. 30, 2026). Without a basis in law or fact, DOJ seeks to subvert that balance and wrest critical election oversight and voter information out of the hands of the State.

To state a claim under the Civil Rights Act of 1960 ("CRA"), DOJ must allege it issued a written demand, setting forth a statement of the basis and the purpose of the demand, to the Secretary, for records or papers required to be preserved under the Act. 52 U.S.C. § 20703. Because the Complaint fails to allege that DOJ requested a "record" under the CRA, fails to allege the basis and purpose of the demand, and seeks a remedy outside the CRA, the Complaint does not state a plausible claim under the CRA and should be dismissed in full.

## BACKGROUND

**I.     Colorado maintains voter registration lists compliant with the NVRA and HAVA.**

Colorado maintains accurate and current voter registration rolls in compliance with the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501-511, and the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901-21145. To maintain "accurate and current voter registration rolls," 52 U.S.C. § 20501(b)(4), the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" due to death or a change in residence. *Id*. § 20507(a)(4). And HAVA requires states to implement "in a uniform and nondiscriminatory manner" a "single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." *Id*. § 21083(a)(1)(A).

2

HAVA also requires every state to verify a prospective voter's identity and eligibility, including by requiring applicants to provide their driver's license number or, if none, the last four digits of their social security number. *Id*. § 21083(a)(5)(A)(i). If an applicant has neither, each state must assign that voter a unique identification number, which, if the state's voter registration database already assigns each voter a unique identifying number, "shall be the unique identifying number assigned under the list." *Id*. § 21083(a)(5)(A)(ii).

Federal law imposes these voter list requirements within a broader legal scheme intended to promote voting rights and increase voter participation. Congress passed the NVRA in 1993, "to promote the exercise" of the right to vote, and in recognition that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation." 52 U.S.C. § 20501(a). At its core, the NVRA establishes and encourages programs to increase voter registration, including through simultaneous registration upon submission of a driver's license application. *Id.* § 20504.

In the wake of the 2000 presidential election, HAVA established certain election administration standards. *See* Help America Vote Act of 2002, PL 107–252, 116 Stat 1666. Alongside the creation of a centralized, computerized database discussed above, HAVA requires states to implement "safeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(B).

Colorado, an exemplar in election management, implements programs that comply with the NVRA and HAVA. Among many continuous list maintenance activities, the Secretary conducts regular searches of the National Change of Address database to identify voters who may have moved jurisdictions, consistent with Colorado law implementing the NVRA. C.R.S.

3

§ 1-2-302.5(1); 8 CCR 1505-1, Rule 2.11. Similarly, the state registrar of vital statistics sends a monthly report to the Secretary of all persons eighteen or older who died the prior month, and the Secretary and/or county clerks cancel voter registrations of deceased voters. C.R.S. § 1-2-602. In accordance with HAVA, the Secretary maintains a centralized, digital master list of registered electors, known as SCORE. C.R.S. § 1-2-301.

SCORE is a real-time database, constantly changing, and updated constantly. Rudy Decl. (Docket No. 37-10) ¶ 3. Under state law, Colorado allows the public to purchase reports that are created from information in the SCORE database. *Id*. ¶ 11. Public data sets include state-wide voter registration lists with voter name, HAVA voter ID number, address, birth year, precinct, and voting history. *Id*. Other sensitive data maintained in SCORE is protected from disclosure by Colorado law. C.R.S. § 1-2-302(8); § 24-72-204(8). That protected data includes social security numbers, driver's license numbers, and full birth dates, none of which are disclosed. *Id*. Similarly, the publicly available reports entirely exclude certain "confidential" voters who are protected under state law if being included on the public voter registration list will expose them or their immediate family to criminal harassment or bodily harm (*e.g.*, judges, law enforcement, people with protection orders). C.R.S. § 24-72-204(3.5)(b); Rudy Decl. ¶ 12.

II.   **The Civil Rights Act of 1960 protects against race-based voter suppression.**

The Civil Rights Act was enacted at a time when persistent voter suppression prevented Black Americans from voting. *See, e.g.*, *Report of the United States Commission on Civil Rights* (Sept. 9, 1959).[1] States employed a variety of voter suppression tactics, including literacy tests, arbitrary registration practices, voter roll purges, and poll taxes, to suppress minority

---

[1] Available at https://tinyurl.com/553yzrhd.

voting. *See, e.g.*, *id*. at 34, 36-38, 130, 137-138, 144. Additionally, some state and local election officials destroyed or withheld records to stimy the federal government's investigation of illegal racial discrimination in voting. *Id.* at pp. 137-138.

To facilitate the investigation of race-based voter suppression, the CRA requires election officials to retain and preserve "all records and papers which come into [their] possession relating to "any application, registration, payment of poll tax, or other act requisite to voting" for 22 months after an election. 52 U.S.C. § 20701. By law, Colorado not only meets, but surpasses the CRA's requirements. *See* C.R.S. § 1-7-802 (requiring designated election officials to preserve all election records for 25 months). The CRA also facilitates "preliminary investigations of registration practices . . . in order to determine whether or not such practices conform to constitutional principles." *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Atty. Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *also* 52 U.S.C. § 20703. To that end, upon a sufficient showing of purpose and basis, Section 20703 permits DOJ to inspect certain voter registration records identified under Section 20701.

**III.   The DOJ requested Civil Rights Act records and, contrary to DOJ's allegations, the Secretary responded and produced publicly available data.**

On May 12, 2025, the Secretary received a letter from Harmeet Dhillon, a senior official at DOJ. Ex. A to Borochoff-Porte Decl. (Docket No. 37-2). According to DOJ, the impetus for the letter was "a complaint alleging noncompliance by [the Department of State] with the [NVRA]." *Id.* "To assist [its] efforts in evaluating the complaint," DOJ requested: (1) "All records, as outlined in 52 U.S.C. § 20701," and (2) "All statutes, regulations, written guidance, internal policies, or database user manuals that set out the procedures Colorado has put in place relating to implement the requirements of 52 U.S.C. § 20701." *Id.*

5

On May 23, 2025, the Secretary responded.[2] Ex. B to Borochoff-Porte Decl. (Docket No. 37-3) The response explained that Colorado's 64 county clerks are the custodians of most Section 20701 records—as permitted under that Section—but also indicated that:

> The Department does possess certain records responsive to your document request, predominantly in the form of information that is maintained in Colorado's statewide voter registration database, known as SCORE. The Department's production thus includes comprehensive reports generated from SCORE. Since your request was not timebound, the Department has provided SCORE records from the previous two years. SCORE is a dynamic, living database.

In response to the second part of DOJ's request, the Secretary included an addendum identifying responsive statutes and regulations. *Id*. The Secretary concluded by stating the "Department has made best efforts to respond to your [May 12, 2025] request." *Id*.

As part of this response, the Secretary also produced two different public versions of the statewide voter registration list out of SCORE. Rudy Decl. ¶ 14. These copies of Colorado's voter registration list included each voter's name, address, birth year, and HAVA unique identifier, excluding confidential voters. *Id.* The DOJ confirmed receipt of those files in an email from the Civil Rights Division's Acting Chief of the Voting Section, stating "Received. Thank you[.]" Ex. C to Borochoff-Porte Decl. (Docket No. 37-4) The DOJ downloaded Colorado's voter registration list on June 12, 2025. Ex. E to Borochoff-Porte Decl. (Docket No. 37-6)

---

[2] The Complaint avers that "Secretary Griswold did not respond to the May 12 Letter." That is incorrect and contradicted by the undisputedly authentic copy of the Secretary's May 27, 2025, letter attached here as Ex. B to the Borochoff-Porte Decl. (Docket No. 37-3). Because the response "is referred to in the complaint and is central to the plaintiff's claim, [the] defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

After months of noncommunication, and after public reports that DOJ was seeking to build a nationwide voter registration database,[3] on December 1, 2025, Eric Neff sent a "follow up" to the May communications requesting a copy of Colorado's "nonpublic, unredacted voter registration list." Ex. F to Borochoff-Porte Decl. (Docket No. 37-7) In the email, Neff asked the Secretary to sign a Memorandum of Understanding. *Id.* That MOU, if executed, would have allowed DOJ to dictate Colorado's voter list maintenance activities, usurping the constitutional role of the State to oversee elections. Ex. G to Borochoff-Porte Decl. (Docket No. 37-8) at 5. The Secretary did not sign the MOU or provide additional information beyond what was produced in May. Compl. (Docket No. 1) ¶ 25.

## IV.  Procedural history

On December 11, 2025, DOJ initiated this action. In total, DOJ has brought similar suits against 24 states and the District of Columbia.[4] The three cases that have proceeded to an order at the Motion to Dismiss stage have all been dismissed. *United States v. Weber*, -- F. Supp. 3d --, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, -- F. Supp. 3d --, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, -- F. Supp. 3d --, 2026 WL 362789, (W.D. Mich. Feb. 10, 2026).

In its Complaint, DOJ invokes the CRA, alleging that its May 2025 letter requested records outlined under that law and included a "statement of the basis and the purpose therefore." Compl. ¶¶ 26-27 (quoting 52 U.S.C. § 20703). The Complaint also inaccurately alleges that the

---

[3] Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, The New York Times, (Sep. 9, 2025), https://tinyurl.com/c9tujz9f.

[4] *See Justice Department Sues Virginia for Failure to Produce Voter Rolls*, Department of Justice Office of Public Affairs (Jan. 16, 2026), *available at* https://tinyurl.com/3znn6da2.

7

Secretary did not respond to DOJ's May 2025 letter, and asks the Court to order the Secretary to provide it with "the current electronic copy of Colorado's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, the last four digits of their social security number, or HAVA unique identifier[.]" Compl. at 6-7.

Contemporaneous with the Complaint, DOJ filed a Motion to Compel, demanding the same voter roll production as the Complaint. Mot. to Compel (Docket No. 2) at 2-3. The Secretary opposes that Motion in a contemporaneously filed brief.

### RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Plausibility, in the context of a motion to dismiss, means the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court may consider certain documents outside the pleadings, consistent with Tenth Circuit precedent.[5]

---

[5] The Court may consider three types of documents relevant to the Motion to Dismiss without converting it to a motion for summary judgment. First, a court can take judicial notice of "documents and docket materials filed in other courts." *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014). Second, a court may consider documents that are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, if a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may

# ARGUMENT

**I.  Because DOJ is not entitled to Colorado's nonpublic voter registration list under the Civil Rights Act, the Complaint fails to allege a plausible claim to relief.**

To state a claim under the CRA, DOJ must allege that (1) it demanded in writing, (2) with a statement of the basis *and* the purpose of the demand, (3) of the person having custody, possession, or control of the records, (4) to inspect, reproduce or copy at the custodian's office (5) records or papers required to be preserved under Section 20701. 52 U.S.C. § 20703. DOJ's claim fails for several reasons. First, a CRA claim must involve a request for specific "records" required to be preserved under Section 20701 of the CRA. Because the nonpublic statewide voter roll is not a CRA record, DOJ has not adequately alleged this element. Second, DOJ fails to allege two other statutory elements of a CRA claim: sufficient basis and valid purpose. Third, the CRA permits only in-person inspection of covered records. A request for an electronic copy of unredacted confidential data exceeds the remedy available under the CRA.

**A.  The Voter Registration list is not a record subject to retention and inspection under the Civil Rights Act.**

The Complaint fails to state a claim to relief under the CRA for the most foundational reason: Colorado's voter registration list is not covered by the statutory text of the CRA. Congress enacted Section 20701 of the CRA as a preservation requirement to facilitate investigations of voter registration denials. The CRA requires election officials to preserve "records," which "come into [their] possession" of an individual voter's "application," a voter's "registration," a voter's "payment of poll tax," and a voter's "other act requisite to voting." *Id.*

---

submit an indisputably authentic copy to the court to be considered on a motion to dismiss."
*GFF Corp.*, 130 F.3d at 1384.

Statewide voter registration "lists" are not a "record" requisite to voting under Section 20701. *See Benson*, 2026 WL 362789, at *9-11 (holding Michigan voter registration list is not a CRA record). In fact, DOJ's Complaint does not even allege Colorado's voter registration list is a CRA record. Rather, the voter registration list is a real-time database of information updated nearly daily; it is a resource comprised of accumulated data about all registered voters in the possession of the Secretary. The list is not a static record of any individual act of registration which would have "come into" and stayed "in the possession" of county clerks. *Compare* LIST, Black's Law Dictionary (12th ed. 2024) ("A roll or register, as of names, usu. written one below the other so that it can be more easily consulted or remembered."); *and* DATABASE, Black's Law Dictionary (12th ed. 2024) ("A compilation of information arranged in a systematic way and offering a means of finding specific elements it contains, often today by electronic means."); *to* RECORD, Black's Law Dictionary (12th ed. 2024) ("A documentary account of past events, usu. designed to memorialize those events.").

Absurdly, if the voter rolls *were* a "record" under the CRA, states would violate the CRA's preservation requirement each time they update the voter list rather than maintaining it statically for 22 months. But HAVA explicitly requires such updates. 52 U.S.C. § 21083(a)(2)(A). Further, state-wide voter registration lists did not exist at the time of the CRA and were not contemplated by it; in fact, state-wide electronic voter lists were only authorized and mandated by HAVA in 2002. *Id.* § 21083(a)(1)(A). "[T]he existence of a statewide computerized voter list was not foreseeable to the Congress of 1960, and . . . a court is not a telepathic time-traveler, and thus it cannot rewrite Congressional legislation to cover a situation that Congress may not have foreseen." *Benson*, 2026 WL 362789, at *10 (citing Antonin Scalia

10

& Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 350 (2012)). The requested materials are not CRA records under the plain text of the act.

### B. DOJ has not articulated a sufficient basis and purpose for its request and thus fails to state a claim under the CRA.

The Attorney General does not have an absolute right to inspect records. Rather, a necessary element of a CRA claim is that the Attorney General provide a written statement of *both* the "basis *and* the purpose" of its demand to inspect records. 52 U.S.C. § 20703 (emphasis added); *cf. Crooks v. Harrelson,* 282 U.S. 55, 58 (1930) (holding "and" in its "ordinary sense" is a conjunctive word, requiring "not one or the other, but both"); *also Oregon*, 2026 WL 318402 at *8-10 (analyzing basis and purpose separately). Here, DOJ failed to provide either.

In its May 12, 2025, communication, DOJ alleged it had "received a complaint alleging noncompliance" with the Secretary's duties under the NVRA, 52 U.S.C. § 20507. Ex. A to Borochoff-Porte Decl. (Docket No. 37-2) It did not provide any details regarding the nature of the complaint or the specific duties under the NRVA allegedly at issue. The DOJ then requested "[a]ll records" "as outlined in 52 U.S.C. § 20701," *id.*, which refers to the CRA's preservation requirement. In its December 1, 2025, email DOJ clarified that its request was for specifically a "nonpublic, unredacted voter registration list." Ex. F to Borochoff-Porte Decl. (Docket No. 37-7) A bare allegation that DOJ received a complaint about Colorado's NVRA compliance, however, provides neither a sufficient factual basis nor a valid legal purpose to state a CRA claim.[6]

---

[6] DOJ argues that the court "does not adjudicate" the "factual foundation" or "sufficiency" of DOJ's statement of basis and purpose. Compl. ¶ 4 (citing *Lynd*, 306 F. 2d at 226). But, as the Oregon district court reasoned, *Lynd* is not binding, has not been applied in over 60 years, and is contrary to Supreme Court precedent construing similar statutes. *See Oregon*, 2026 WL 318402 at *7-8 (concluding "[t]here is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding

*First*, DOJ fails to state a legal purpose within the scope of the CRA. The Civil Rights Act of 1960 was intended to enforce the earlier Civil Rights Act of 1957, which is to say it was meant to vindicate voting rights in the face of State attempts to deny them, as seen in courts' construction of the CRA shortly after its passage. *E.g.*, *Kennedy v. Lynd*, 306 F.3d 222, 228 (5th Cir. 1962) (explaining that the Attorney General "is entitled to inspect and copy all of the voter papers and records as defined" "in fulfillment of the duties imposed upon him by the Civil Rights Act of 1957 and 1960"). Valid statements of basis and purpose from the time of enactment were "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race and color have been made with respect to registration and voting within your jurisdiction." *Id.* at 231 n.6. Repeatedly addressing the issue, the Fifth Circuit "laid down the rule that the government is entitled to have an order of the trial court authorizing it to inspect the voting records" based on DOJ's "reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county." *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).

DOJ alleges no valid civil rights purpose, not to mention no basis for a belief that *any* Coloradan's voting rights are being racially discriminated against. Read generously, the Complaint's stated purpose is to assess compliance with the NVRA.[7] Compl. ¶¶ 9, 19. But alleged noncompliance with the NVRA is not, and has never been, a valid justification for

---

Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place").

[7] DOJ also suggests a purpose of assessing compliance with HAVA. Compl, ¶ 9. But, as with the NVRA, HAVA compliance is not a valid civil rights purpose under the CRA. And DOJ alleges *no* factual basis related to HAVA compliance—it states only that it received an NVRA-related complaint. Finally, HAVA was never raised in any prior written communication from DOJ.

12

invoking the CRA. The NVRA passed 33 years after the CRA and was thus not contemplated by the CRA. By its own terms, the CRA only permits a demand for records relating to applications, registrations, payments of a poll tax, or other acts requisite to voting. 52 U.S.C. § 20701. By contrast, the NVRA, quite distinctly, requires a program to remove ineligible voters from the rolls. 52 U.S.C. § 20507(a)(4). A state's NVRA voter removal procedures have nothing to do with CRA voter registration records, and removing voters from the rolls has nothing to do with the CRA's purpose of protecting the right to register to vote. An allegation of noncompliance with voter removal requirements cannot form the basis for a CRA document demand.

Moreover, the NVRA permits DOJ to "bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out" the NVRA. 52 U.S.C.A. § 20510(a). Because DOJ may enforce the NVRA by bringing an authorized civil action, it cannot subvert that requirement by lodging a CRA demand. The NVRA, which specifically addresses the list maintenance activities DOJ purportedly wants to investigate, also includes a more recently enacted and more specific records retention and inspection provision. 52 U.S.C. § 20507(i)(1). By law, that statute controls DOJ's request. *See, e.g.*, *United States v. Estate of Romani*, 523 U.S. 517, 530 (1998) ("[A] specific policy embodied in a later federal statute should control our construction of the priority statute."). If DOJ is truly concerned about Colorado's NVRA compliance, DOJ's remedy lies with the enforcement provisions of the NVRA alone. DOJ fails to state a claim under the CRA.

*Second*, DOJ states no factual basis justifying its unredacted voter roll demand. It provided no evidence as to why it believed the NVRA was violated in its letter to the Secretary. Even if it had, DOJ provided no explanation as to why nonpublic, confidential voter information

(outside the already comprehensive public data set produced to DOJ) is necessary for or relevant to an NVRA-related investigation.

### C. The Civil Rights Act does not require the production of unredacted, electronic files.

Even if DOJ's written statement of the "basis and the purpose" for its demand satisfied the CRA's requirements, 52 U.S.C. § 20703, DOJ fails to allege it is entitled to confidential, nonpublic voter information in electronic form. To the contrary, DOJ is not legally entitled to unfettered access to an unredacted version of "all fields" of Colorado's voter registration list, including such sensitive data as each registrant's full "date of birth" and "either their state drivers' license number, the last four digits of their Social Security number, or HAVA unique identifier." Compl. at 6–7.

First, nothing in the text of the CRA requires that Colorado produce confidential voter information. In fact, the specific confidential data that DOJ is requesting was not required to be collected until the passage of HAVA in 2002, and so was not contemplated as a "record" under the CRA. *See* above at Section I.A; 52 U.S.C. § 21803(a)(5)(A)(i). And an early interpretation of the Act clarifies that Section 20703 does not allow unfettered access to "confidential, private papers and effects," but instead is designed to allow DOJ to review "public records which ought ordinarily to be open to legitimate reasonable inspection and which by nature relate directly to the most vital of all public functions—the franchise of the citizen." *Lynd*, 306 F.2d at 231. Because the Secretary has provided DOJ access to public records, and because the CRA does not require disclosure of confidential personal information, DOJ fails to state a claim.

Second, under the later-enacted NVRA, which directly addresses list maintenance activities, courts have consistently held that states may redact sensitive voter information and

14

that this information is not relevant to the removal of ineligible voters from the voting rolls. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 57 (1st Cir. 2024) (holding "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information.") *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact social security numbers before disclosure under NVRA).[8] Third, DOJ is not entitled to an "electronic copy" of Colorado's voter registration list. The CRA mandates only that covered records "be made available for inspection, reproduction, and copying at the principal office of" the custodian. 52 U.S.C. § 20703. Consistent with the statute, an electronic copy of the voter rolls is not required.

## CONCLUSION

The Secretary respectfully requests that the Court dismiss the Complaint in full.

Dated: February 10, 2026

PHILIP J. WEISER
Attorney General

/s Lane Towery

***Peter G. Baumann***, Senior Assistant Attorney General
***Lane Towery***, Assistant Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6000
Email: peter.baumann@coag.gov; lane.towery@coag.gov
Attorneys for Secretary Jena Griswold

---

[8] *See also Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1016 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022): *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344–45 (N.D. Ga. 2016); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) ; *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010).