**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB-TPO

THE UNITED STATES OF AMERICA,

     Plaintiff,

v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of Colorado,

     Defendant.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS (DOCKET NO. 40)**

---

The pretextual nature of the Department of Justice's request for Colorado's voter registration list—which Secretary Griswold has already provided—is laid bare by DOJ's Opposition ("DOJ Opp'n"). Docket No. 49. Despite claiming that an unredacted copy of Colorado's voter roll is necessary to investigate a complaint filed against Colorado, DOJ offers shifting descriptions of what the complaint is about. And even absent the shifting descriptions of this complaint, DOJ's argument that it is the reason for requesting this information from the Secretary is undermined by its admission that DOJ has sought the same information from every other state in the country. DOJ Opp'n at 33. Whatever DOJ's purpose is in collecting this information, it is plainly not to investigate a complaint specific to Colorado. This alone merits dismissal—because DOJ has not articulated its actual basis and purpose for its request, it has not satisfied the elements of the Civil Rights Act ("CRA"). 52 U.S.C. § 20703.

DOJ's Opposition also fails to address the Colorado-specific facts that preclude relief in this instance. Most importantly, Secretary Griswold has already provided DOJ with almost

exactly what it asks the Court to order her to produce. As a result, this action does not present an actionable controversy, and DOJ's opposition does not even address, let alone rebut, this fundamental fact. Indeed, DOJ only acknowledges that the Secretary provided it with terabytes of responsive data in a footnote of their Response.

Ultimately, that DOJ is resorting to pretext to obtain state voter registration lists is troubling. But the Court need not address those concerns. Instead, it can—and should—grant the Secretary's Motion to Dismiss on the narrow grounds that DOJ has not satisfied requisite statutory elements and has already received what it previously demanded.

## ARGUMENT

### I. The Civil Rights Act does not insulate DOJ's request from standard procedures.

Title III does not authorize summary proceedings. Shortly after the passage of the CRA, the Supreme Court held that whether a statute exempts courts from the default Rules of Civil Procedure is a question of statutory analysis. *See United States v. Powell*, 379 U.S. 48, 52–58 (1964) (analyzing whether the statutory phrase "by appropriate process" exempted such proceedings from the Federal Rules of Civil Procedure and concluding it did not). More recently, the Court explained that the "Federal Rules are the default rules in civil litigation," and although Congress can exempt a statutory proceeding from the Civil Rules, courts "do not lightly infer that Congress has done so; and silence on the subject is seldom enough." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007) and *Marek v. Chesny*, 473 U.S. 1, 11–12 (1985)). Title III is silent on the subject. *See* 52 U.S.C. § 20705 (giving federal courts "jurisdiction by appropriate process"). Thus, the Civil Rules apply, by default, in this case.

DOJ evades this straightforward conclusion with two unavailing arguments. *First*, DOJ attempts to distinguish *Powell* by arguing that the IRS statute at issue there is different from the CRA. DOJ Opp'n at 11–12. But any difference in the statutes is immaterial. The Court's analysis in *Powell* was simply that because the IRS statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Powell*, 379 U.S. at 58 n.18. The same is true here. Further, even if this Court decided that *Powell* is distinguishable, the Court should still apply the analysis more recently articulated by *Polanksy* and its predecessors, *Jones* and *Marek*. Namely, the text of Title III must justify a departure from the ordinary Civil Rules. Tellingly, DOJ fails to even muster an argument that it does so.

Instead, and *second*, DOJ relies on one out-of-Circuit case concluding that Title III permits summary proceedings, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). *See generally*, DOJ Opp'n at 9–14. *Lynd* is not binding. *See United States v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986). Nor is *Lynd* persuasive. *Lynd* offers no statutory analysis, and scant explanation beyond reference to prior decisions within the Fifth Circuit. *Lynd*, 306 F.2d at 225. Those cases offer little-to-no statutory analysis as to the Civil Rules and instead rely on a functionalist understanding of Title III and its historic purpose. *See United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (summarizing that prior cases "clearly laid down the rule that the government is entitled to have an order of the trial court authorizing it to inspect the voting records" "upon the simple assertion by the Attorney General of the United States that there are reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county."); *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd*

3

*sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d 430 (5th Cir. 1961) ("Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles.").[1] All of which is to say that *Lynd* and its predecessors stand less for the procedural proposition that the Civil Rules do not apply to CRA document demands and more for the substantive proposition that a proper request under the CRA arises where DOJ alleges "reasonable grounds for the belief that certain voters are being discriminatorily denied their voting rights in a given county." 301 F.2d at 822. This reasoning is no answer to *Powell*'s and *Polansky*'s instruction to determine the applicable procedure from the statutory text, and does not justify a departure from the Civil Rules.

DOJ's effort to avoid application of the Civil Rules masks a more extreme premise: that that the "sufficiency" of the Attorney General's stated basis and purpose "is not open to judicial review or ascertainment." DOJ Opp'n at 21 (quoting *Lynd*, 306 F.2d at 226). To the contrary, a textual analysis of Title III—demanded by *Powell* and *Polansky*—shows why judicial scrutiny of each of the CRA's required elements, applying traditional civil procedure, is necessary.

---

[1] The recent decision in *United States v. Benson*, which DOJ invokes, erroneously "construe[d] a request for records under the CRA as a form of administrative subpoena" without reference to *Powell* or *Polansky*. No. 25-cv-1148, 2026 WL 362789, at *7 (W.D. Mich. Feb. 10, 2026). In any event, even if this demand were an administrative subpoena, the Federal Rules of Civil Procedure still apply pursuant to Rule 81, and no statute, local rule, or court order has modified any rule. *See* Fed. R. Civ. P. 81(a)(5). Notably, the *Benson* court went on to "apply the Rule 12(b)(6) standard to evaluate the United States' CRA claim" in part because DOJ there, as here, filed "a traditional civil complaint, not a petition for summary enforcement." *Id*. The court in *Benson* also emphasized that even under an administrative procedure process, the court must be assured that DOJ has shown "that its investigation has a legitimate purpose, that its inquiry may be relevant to that purpose, that it does not already have the requested information and that it otherwise has followed any statutory requirements." *Id*. (text only).

4

Title III establishes the elements for a records claim, one of which is that DOJ must identify the "basis and purpose" for its demand. 52 U.S.C. § 20703; Docket No. 40 at 9. That element imposes a limit on DOJ's authority to inspect voter registration records. If a court could not interrogate DOJ's stated basis and purpose, the statute's limiting principle would be made hollow. *Cf. Navajo Nation v. Dalley*, 896 F.3d 1196, 1215 (10th Cir. 2018) ("The canon against surplusage indicates that we generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning." (citation omitted)).

That limiting principle should apply all the more forcefully where, as here, DOJ offers the novel theory that Title III in fact permits the Attorney General to inspect *any* voter-related databases (like electronic voter rolls) to assess compliance with *any* federal election law (like the NVRA) and without *any* procedure for ascertaining the basis and purpose of the demand. That theory is a far cry from even the Fifth Circuit's functionalist view that "reasonable grounds" for the belief that certain voters are being "discriminatorily denied their voting rights" justify an order to inspect voter registration records. *See Lynd*, 301 F.2d at 822. That theory also, by ridding itself of any judicial oversight, creates the potential for absurd applications.[2]

DOJ's demand makes even less sense considering the NVRA contains its own enforcement mechanism, which *is* subject to the Civil Rules. 52 U.S.C. § 20510(a) (authorizing DOJ to "bring a civil action in an appropriate district court for such declaratory or injunctive

---

[2] For example, if DOJ requested records for the purpose of identifying lawful voters it wished to target with spurious investigations for political reasons, the CRA would not condone such action. More benignly, but equally absurd, under its interpretation DOJ could satisfy the statutory elements by claiming its purpose was to identify the number of registered voters whose names begin with the letter "P." By not allowing judicial inquiry into the basis and purpose for its request, DOJ's interpretation would effectively eliminate that element from the statute.

relief as is necessary to carry out" the NVRA). DOJ should not be permitted to utilize an older and more general statue (the CRA) to sidestep Congress's intent in the later and more specific statute (the NVRA). *See, e.g.*, *United States v. Est. of Romani*, 523 U.S. 517, 530 (1998) ("[A] specific policy embodied in a later federal statute should control our construction of the priority statute."); *also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (A court must "interpret the statute 'as a symmetrical and coherent regulatory scheme,' and 'fit, if possible, all parts into [a] harmonious whole'" (citations omitted)). In short, the CRA does not exempt a record demand from the ordinary Civil Rules, and this Court must be able to scrutinize DOJ's pretextual basis and purpose for its demand.

**II.    The Secretary is entitled to dismissal because DOJ's pleadings prove that it has not disclosed its actual purpose for requesting a copy of Colorado's voter registration list.**

Any demand for records under the CRA must include "a statement of the basis and purpose therefore." 52 U.S.C. § 20703. Implicit in this requirement is truthfulness. DOJ must disclose the actual reason for its request. Here, DOJ's own pleadings show that the May 2025 request upon which this action rests did not truthfully disclose the purpose of the demand. Because DOJ has not satisfied the statute, dismissal is appropriate.

According to DOJ, its May 2025 letter articulated: (1) a legal basis for the demand, "Title III of the CRA," (2) a factual basis for the demand, "a complaint received by the [DOJ] alleging noncompliance by Secretary Griswold," and (3) the purpose for the demand, "to assist the DOJ's efforts in evaluating the complaint." DOJ Opp'n at 6 (quotations omitted). Thus, according to DOJ, both the basis and purpose for its request rest on the alleged complaint DOJ received.

Despite its centrality to this action, DOJ cannot settle on the actual contents of this complaint. In the May 2025 letter, DOJ says that the complaint alleges "noncompliance by your

6

office with the duties outlined in 52 U.S.C. § 20507" (the NVRA). Docket No. 37-2 at 1. At times before this Court, DOJ echoes this description. *See, e.g.*, DOJ Opp'n at 6–7 (quoting Docket No. 5-1); *id.* at 32 ("The United States made its requests pursuant to the CRA to investigate a complaint it received that Colorado was violating Section 8 of the NVRA.").

But elsewhere, DOJ claims the complaint alleges that the Secretary "failed to retain all the necessary documents required under the *CRA*." DOJ Opp'n at 10 (emphasis added). DOJ repeats this formulation throughout its opposition brief. *See, e.g.*, *id.* at 6 (describing complaint as "alleging noncompliance by Secretary Griswold regarding retention of election records as required by Title III [of the CRA]"); *id.* at 19–20 (describing a "complaint about Secretary Griswold not preserving factual records as required by Title III").

Thanks to DOJ's shifting explanations, neither the Secretary, nor the Court, can know what DOJ's stated purpose is. Is it to investigate allegations concerning the Secretary's list maintenance practices under the NVRA? Or allegations that the Secretary is not appropriately retaining records under the CRA? DOJ itself cannot consistently explain its purpose in requesting a copy of Colorado's voter registration list, and has declined the opportunity to clarify its purpose through the disclosure of meaningful detail about the complaint.

Failure to allege an ascertainable basis and purpose is sufficient reason for the Court to hold that DOJ has not pled a necessary element of the CRA. But dismissal is still appropriate even if the Court credits DOJ's own declarant, who describes the complaint as addressing the Secretary's records retention, not her compliance with federal list maintenance laws. 2d Decl. of Eric Neff (Docket No. 49-1) ¶ 2 ("[T]he United States seeks these documents under the CRA to evaluate a complaint alleging Colorado failed to retain documents necessary to evaluate

7

Colorado's list maintenance duties[.]"). Thus, the purpose stated in the May 2025 letter (to investigate a complaint relating to list maintenance obligations under the NVRA), is apparently not DOJ's actual purpose (to investigate a complaint relating to records retention obligations under the CRA). *Compare* Docket No. 37-2 at 1 *with* Docket No. 49-1 ¶ 2. Therefore, the May 2025 request did not contain "the" basis and purpose for DOJ's request.[3]

Of course, given the shifting explanations and backdrop, there is no reason for the Court to accept DOJ's pleadings or declarations at face value. *See United States v. Oregon*, 25-cv-01666-MTK, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026) ("The presumption of regularity that has been previously extended to [DOJ] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds."). Even the new stated purpose for requesting Colorado's voter registration list is plainly pretextual. *See also United States v. Weber*, 25-cv-09149-DOC-ADS, 2026 WL 118807, at *12 (C.D. Cal. Jan. 15, 2026) (noting "DOJ's obfuscation of its true motives" in requesting voter registration lists); *Oregon*, 2026 WL 318402, at *11 (expressing "suspicion about the purposes for which [DOJ] seeks statewide unredacted voter registration lists"). The Court can, and should, hold that DOJ has not satisfied the textual elements of a CRA request where the record clearly shows that it has been anything but candid with the Secretary and the Court about the basis and purpose for its request.

---

[3] DOJ also fails to explain how Colorado's voter registration list is necessary or even useful in evaluating whether Colorado is retaining election records as required by federal law. The list is a snapshot of Colorado's registered voters. It includes nothing that would enable an investigation into whether Colorado is maintaining election records.

**III.    By not addressing the Secretary's contention that she has already produced what DOJ is asking the Court to order, DOJ has conceded that argument.**

On February 10, the Secretary filed two pleadings: (1) a Motion to Dismiss ("Mot. to Dismiss") (Docket No. 40), and (2) an Opposition to DOJ's Motion to Compel ("Opp'n to Mot. to Compel") (Docket No. 37). DOJ responded to the former, Docket No. 40, but did not file a Reply to the latter. The consolidated Opposition fails to address several arguments that were raised in the Secretary's Motion to Dismiss. And because DOJ has failed to file a Reply in Support of its Motion to Compel, it has waived any non-obvious response to the Secretary's arguments found in her opposition to that Motion, and the Court may "assume the state's . . . analysis is correct." *Eaton v. Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019) (discussing consequence of failing to file a reply brief); *see also In re Syngenta AG MIR 162 Corn Litig.*, 111 F.4th 1095, 1110 n.15 (10th Cir. 2024) (failing to file a reply waives "any non-obvious rejoinders to arguments raised in the response brief").

**A.  DOJ already received what it is asking this Court to order produced.**

The Secretary has already provided DOJ what it is seeking in this action. Mot. to Dismiss at 6; Opp'n to Mot. to Compel at 8. Specifically, the Secretary has provided a copy of Colorado's statewide voter registration list, which includes each registrant's name, address, year of birth, and Help America Vote Act ("HAVA") unique identifier. Ex. B to Opp'n to Mot. to Compel (Docket No. 37-10) ¶ 14. This is functionally identical to that which DOJ asks the Court to compel production. *See* Compl. (Docket No. 1) at 6–7 (requesting list with each registrant's

"name, date of birth, residential address, and either their state driver's license number, the last four digits of their Social Security number, or HAVA unique identifier").[4]

In initiating this action, DOJ was either unaware that a copy of Colorado's voter list had already been provided or failed to candidly acknowledge that fact to this Court. Neff Decl. (Docket No. 5-2) ¶ 5. The Secretary demonstrated that she had produced a copy of the voter roll, and DOJ confines its concession of its own inaccurate statements to a single sentence in a single footnote of its Opposition. DOJ Opp'n at 7 n.2. It did not withdraw or correct its sworn declaration, explain how the factual inaccuracy made its way into the sworn declaration, or (most importantly) meaningfully address the Secretary's response that she had provided substantially the same information DOJ now requests.

Instead, DOJ now claims that the Secretary's May 2025 response "did not . . . provide all the records requested, including the unredacted" voter registration list. *Id*. But that assertion is belied by both DOJ's May 2025 request, and its requested relief in this lawsuit.

As to the former, DOJ's May 2025 request asked for "all records" retained pursuant to the CRA. Docket No. 37-2 at 1. As the Secretary has explained, the voter registration list, which

---

[4] DOJ's ignorance of list maintenance practices is highlighted by its inaccurate suggestion that Colorado provides unredacted registration lists to the Electronic Registration Information Center ("ERIC"). DOJ Opp'n at 30. ERIC is a nonprofit that helps states coordinate their voter registration list maintenance across jurisdictions. Ex. A, 2d Rudy Decl. ¶ 2. For the same reasons the Secretary has not provided Colorado voters' sensitive personal information to DOJ, she does not provide that information to ERIC. Rather, ERIC requires each member state to apply a "cryptographic one-way hash" to all sensitive data (such as Social Security numbers, driver's license numbers, or dates of birth), which converts these sensitive datapoints to a "string of random characters. *Id.* ¶¶ 4, 5 (quoting ERIC Technology and Security Overview). ERIC never sees or receives an unredacted copy of Colorado's statewide voter registration list. *Id.* ¶¶ 3, 5.

is compiled by her and by Colorado's 64 County Clerks and Recorders, is not a record under the CRA. *See* Mot. to Dismiss (Docket No. 40) at 9–11.

But more importantly, what the Secretary *did* produce in response to DOJ's request is also what DOJ asks for in this action. DOJ wants a copy of Colorado's voter registration list that includes each voter's "name, date of birth, residential address, and *either* their state driver's license number, the last four digits of their Social Security number, *or* HAVA unique identifier." Compl. (Docket No. 1) at 6–7 (emphases added). The Secretary produced exactly that last May: a copy of the state voter registration list that included each registrant's name, birth year, residential address, and HAVA unique identifier. Docket No. 37-10 ¶ 14. DOJ's Opposition seems to focus on drivers' license numbers and SSNs, *see, e.g.*, DOJ Opp'n at 27, but ignores that its requested relief permits production of HAVA unique identifiers instead.[5]

This highlights the nationwide scope of DOJ's efforts and the pretextual nature of its Colorado-specific justifications. When it brought this suit, DOJ—at minimum—could not be bothered to check whether the Secretary had responded to its earlier requests for records. Once it was pointed out that she had responded, DOJ surprisingly ignored the substance of that response and the implications of her already providing it.

**B. DOJ's Opposition failed to address numerous other arguments raised by the Secretary, most importantly that state privacy law prohibits production of driver's license or Social Security numbers.**

DOJ's Opposition fails to address the Secretary's arguments relating to the E-Government Act, the Driver's Privacy Protection Act, and Colorado privacy law. *See* Opp'n to

---

[5] DOJ does not address the distinction, if any, between date of birth and birth year.

Mot. to Compel at 13–14. DOJ's failure to even discuss compliance with these critical federal
and state laws waives any non-obvious response to those arguments.

DOJ also chose not to address the Secretary's arguments against electronic production.
*See id*. at 15. In the event the Court concludes that DOJ is entitled to additional records, DOJ is
limited to receiving what the text of the CRA entitles it to: an opportunity to inspect, reproduce,
and copy the records it seeks in person at the Secretary's principal office. 52 U.S.C. § 20703.

**IV.    A voter registration list, updated regularly based on new information, is not a record
that must be "preserved" in static form under the CRA.**

An electronic, statewide, voter registration list—required by HAVA—is not a "record[]"
or "paper[]" which "come[s] into [an election official's] possession relating to any application,
registration, payment of poll tax, or other act requisite to voting[.]" 52 U.S.C. § 20701; *see also*
*Benson*, 2026 WL 362789, at *9. DOJ's arguments otherwise misstate prior decisions and ignore
both the Secretary's arguments and subsequent enactments of the United States Congress.

First, DOJ argues that "federal courts that have applied [the CRA] have concluded
that . . . [i]t does not categorically exclude production of" voter registration lists. DOJ Opp'n at
22 (citing *Gallion*, 187 F. Supp. at 855 and *Lynd*, 306 F.2d at 226). But neither *Gallion* nor *Lynd*
address whether a statewide voter registration list is subject to the CRA's preservation
requirement. In *Gallion*, DOJ requested all records covered by the CRA, 187 F. Supp. at 851,
and the court never addressed whether a voter registration list qualifies. In fact, it is unlikely a
statewide voter registration list even would have existed in Alabama in the 1960s, before voter
rolls were centralized at the state level by HAVA in the early-2000s. So too in *Lynd*. 306 F.2d at
226. In fact, even in the special statutory procedure *Lynd* describes, it notes that if a dispute

arises over "whether or not any specified particular paper or record" falls within the CRA, that question is subject to judicial inquiry and determination. *Id.*

Second, DOJ does not address the Secretary's argument that defining a voter registration list as a record subject to preservation under the CRA would be incompatible with Congress's intent for such lists as reflected in the later-enacted and more specific statute, HAVA. Mot. to Dismiss at 10–11. Under HAVA, voter rolls must be updated each time a voter moves, dies, or updates their registration. 52 U.S.C. § 21083(a)(2)(A). Necessarily, then, election officials cannot "preserve" those lists in static form as required for records covered by the CRA. 52 U.S.C. § 20701. The only way to read these two statutes in harmony is to apply the plain language of the CRA, as the *Benson* court did, and conclude that a registration list is not a "record[] or paper[]" under the CRA. 2026 WL 362789, at *9. And to the extent the two irreconcilably conflict, the statute which deals specifically with voter registration lists— HAVA—must prevail over the more general record-keeping requirement in the CRA. *See United States v. Wesley*, 60 F.4th 1277, 1284 (10th Cir. 2023) (observing the "canon of statutory construction that specific controls over general").

Finally, DOJ argues that the Secretary's interpretation would render the CRA meaningless because most of Colorado's records exist only in electronic form. DOJ Opp'n at 23 & n.7. It is true that many voter registration applications now arrive in electronic form. *See* Ex. A, 2d Rudy Decl. ¶ 7. And electronic copies are scanned into Colorado's electronic voter registration database by Colorado's county clerks. *Id.*. But this is irrelevant to the point that both the Secretary and the *Benson* court made. Neither *Benson* nor the Secretary argue that the CRA does not apply to electronic records. Rather, the CRA applies only to "documents that people

13

submit to the State as part of the voter registration process." *Benson*, 2026 WL 362789, at *9. It does not apply to databases, like registration lists, that are "created by state officials." *Id*.

DOJ's argument does, however, highlight how more recent laws have left it trying to fit a square peg into a round hole. Even after the CRA was enacted, its "enforcement . . . encountered serious obstacles in various regions of the country." H.R. Rep. No. 89-439, 1965 U.S.C.C.A.N. 2437, 2441. Thus, in 1965, Congress enacted the Voting Rights Act ("VRA") of 1965, "to adopt more effective measures than exist[ed]" prior to its passage. *Id.* at 2442. As a result, the CRA fell mostly into desuetude until DOJ's present efforts to revive it for an ulterior purpose. *See also* DOJ Opp'n at 4 n.1 (observing that "caselaw addressing the CRA in any depth" is limited to cases "in the early years following the CRA's enactment").

In the meantime, Congress repeatedly passed more specific legislation to address voter list retention and maintenance. In the NVRA, Congress included specific provisions regarding retention and production of voter lists. 52 U.S.C. § 20507(i).[6] And in HAVA, Congress required those lists to be maintained electronically and periodically updated. 52 U.S.C. §§ 21083(a)(1)(A), (a)(2)(A). To the extent the plain language interpretation of the CRA creates results that are "pedantic," *Benson*, 2026 WL 362789, at *10, or "absurd," DOJ Opp'n at 26, it is because the records retention and production provisions of the CRA are outdated and have been surpassed by both technology and subsequent enactments.

---

[6] The reason DOJ seeks to resuscitate the CRA, instead of using the NVRA, is that federal courts are nearly unanimous in holding that the NVRA permits states to redact voters' sensitive personal information from voter registration lists produced under the act. *See Benson*, 2026 WL 362789, at *3 (collecting cases).

**CONCLUSION**

The Court should grant the Secretary's Motion to Dismiss.


Dated: March 17, 2026                    PHILIP J. WEISER
                                         Attorney General

                                         /s Lane Towery

                                         *Peter G. Baumann*, Senior Assistant Attorney General
                                         *Lane Towery*, Assistant Attorney General
                                         1300 Broadway, Denver, CO 80203
                                         Telephone: (720) 508-6000
                                         Email: peter.baumann@coag.gov; lane.towery@coag.gov
                                         Attorneys for Secretary Jena Griswold

15