**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

      Defendant.

---

COLORADO ALLIANCE FOR RETIRED AMERICANS AND BRITTON DEFORD'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS, ECF No. 49

---

DOJ has filed dozens of lawsuits to compel the production of States' unredacted voter lists. Every court to reach a decision in these cases has dismissed them. *United States v. Weber*, No. 25-cv-9149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 25-cv-1666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026). Nothing in DOJ's opposition provides reason to conclude otherwise. Instead, new information from DOJ about the purported "basis" for its demand only proves that it does not and cannot comply with the plain text of the Civil Rights Act of 1960 ("CRA"). 52 U.S.C. § 20703.

**ARGUMENT**

**I.      The motion to dismiss is appropriate under the Federal Rules.**

DOJ's contention that a motion to dismiss is procedurally improper in a Title III proceeding is foreclosed by Supreme Court precedent, as two federal courts recently concluded. *Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *8. DOJ relies

on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and other out-of-circuit cases from the 1960s, ECF No. 49 ("Opp.") at 9-10, 14, but as *Weber* and *Oregon* held, those cases are irreconcilable with *United States v. Powell*, 379 U.S. 48 (1964)*. See* ECF No. 38-2 at 5-6. The same is true of DOJ's assertion that "Congress has indicated that" the Federal Rules "are inapplicable" to the CRA, Opp. at 10, which cannot be reconciled with *Powell*'s holding that identical language to that in the CRA found in 26 U.S.C. § 7604(a), compelled the conclusion that the Federal Rules apply, 379 U.S. at 58 n.18. DOJ also points to *Benson*, but that court *granted* the intervenors' Rule 12(b)(6) motion and dismissed DOJ's complaint—so it cannot have held such motions improper. 2026 WL 362789, at *2, 11.

## II.     The Court must review the lawfulness of DOJ's demand.

The CRA is unequivocal: any demand by DOJ under the CRA "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. And courts routinely review the lawfulness of the government's demand for records. *See, e.g.*, *Powell*, 379 U.S. at 57 (holding government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose"); *United States v. Wilson*, 98 F.4th 1204, 1221 (10th Cir. 2024) (reviewing administrative subpoena to determine if it is "sufficiently limited in scope" and "relevant in purpose"); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458-60 (5th Cir. 2018) (evaluating purpose and basis of civil investigative demand).

Judicial review does not require "specific[]" statutory "authoriz[ation]." Opp. at 12. "It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Powell*, 379 U.S. at 58. This is not limited

2

to IRS demands. *See, e.g.*, *Wilson*, 98 F.4th at 1221 (administrative subpoena); *Source for Pub. Data, L.P.*, 903 F.3d at 458-60 (civil investigative demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (declining to enforce demand due to failure to comply with statutory requirements).

Even *Lynd* agreed that a court must decide "whether the written demand has been made" according to the CRA's requirements. 306 F.2d at 226. Courts have done so in all challenges to DOJ's parallel demands and found them lacking. *Weber*, 2026 WL 118807, at *8-10; *Oregon*, 2026 WL 318402, at *7-10. That includes *Benson*, where the court's "limited" role in reviewing CRA demands resulted in dismissal. 2026 WL 362789, at *9.

## III.    DOJ failed to state an adequate basis and purpose for its demand.

The CRA requires that any request made must state the "basis and the purpose for" the demand in the demand. 52 U.S.C. § 20703. And that demand must be "reasonabl[y] relevan[t]" to the government's investigation. *Wilson*, 98 F.4th at 1221. DOJ stated in its motion to compel that its demand's "purpose" "was to assess Colorado's compliance with the list maintenance requirements" of the NVRA and HAVA. ECF No. 5 at 2. But it now states its demand was based on a complaint regarding *document retention* procedures, not list maintenance. Opp. at 6, 19-20. The problem is, DOJ's demand has nothing to do with document retention procedures. Thus, the opposition provides further reason to find the demand fails the CRA.

### A.  DOJ's opposition brief reveals new, material information.

In its Complaint, DOJ asserted that its May 12 letter to the Secretary was its "written demand" under the CRA, and that it contained the "statement of the basis and

the purpose therefor." Compl. ¶¶ 26-27. That letter said that DOJ "received a complaint alleging noncompliance by [the Secretary's] office with the duties outlined in 52 U.S.C. §20507." ECF No. 37-2 at 1; *see* Compl. ¶¶ 19-20. But § 20507 is a sprawling provision, with ten subsections, imposing obligations related separately to list maintenance, 52 U.S.C. § 20507(a)(4), (b)-(g), and document retention, *id.* § 20507(i).

In its motion to compel filed with its complaint in December, DOJ asserted that the May 12 letter was sent "regarding Colorado's compliance with federal list maintenance requirements," ECF No. 5 at 4.[1] But now, in its opposition, DOJ states that the complaint it received "alleg[ed] noncompliance by Secretary Griswold regarding *retention of election records*." Opp. at 6 (emphasis added); *see id.* at 19-20 (similar). This makes more sense given that the May 12 letter is almost singularly focused on document retention issues, *not* anything related to list maintenance. *See* ECF No. 37-2.

**B. DOJ failed to state a valid "basis and . . . purpose" of its demand.**

The voter list is a snapshot of Colorado's currently eligible voters. *See* ECF No. 37-10. Obtaining an unredacted copy will not show whether the Secretary appropriately *retained* records. Further, Colorado has provided DOJ with the public version, so all that DOJ claims to be missing are social security numbers, driver's license numbers, and full dates of birth. *See* ECF No. 37 at 3, 8. Providing DOJ with these sensitive personal

---

[1] DOJ claims the letter "explained that the purpose of the demand was to assess Colorado's compliance with . . . list maintenance requirements." *Id.* at 2. This is not true, ECF No. 37-2, nor is it the only material mistake DOJ made regarding its correspondence. In its Complaint and in a sworn declaration, DOJ stated the Secretary never responded to the letter. ECF No. 5-2, ¶ 5; Compl. ¶ 23. But the Secretary did respond by letter and provided substantial information, including the redacted voter file. ECF No. 37 at 3-4.

identifiers cannot help it "evaluate" a "complaint" alleging that the Secretary failed to properly retain documents. Thus, DOJ's demand fails this Circuit's "reasonable relevance" standard, *Wilson*, 98 F.4th at 1221, and DOJ cannot rely on this "complaint" as the required "basis" for its CRA demand for Colorado's voter file.

DOJ claims that naming the CRA as the "statutory basis" is sufficient, Opp. at 20, but the CRA is the *authority* under which DOJ's request was purportedly made. It cannot also be the *basis* for the request, because that would make the requirement to provide the "basis" superfluous, as any CRA demand is necessarily issued under the CRA. *See Chevron Mining Inc. v. United States,* 863 F.3d 1261, 1282-83 n.15 (10th Cir. 2017); *Oregon*, 2026 WL 318402.

For similar reasons, DOJ did not adequately disclose its "purpose" in its demand. DOJ now claims that its "purpose" is to evaluate Colorado's list maintenance efforts, ECF No. 5 at 2, and it relies on its May 12 letter as the document that purportedly contained the statement of its "purpose," Compl. ¶¶ 26-27. But the only purpose evident in the May 12 letter dealt with whether the Secretary engaged in appropriate document retention policies, *not* anything related to list maintenance.[2]

## IV.    Evaluating list maintenance efforts is not a proper purpose under the CRA.

The Complaint should also be dismissed because auditing list maintenance efforts is not an allowable purpose under the CRA. DOJ's attempt to invoke the CRA to allow the

---

[2] DOJ briefly asserts that the Court should compel production "of all responsive federal election records," Opp. at 5, by which it apparently means *every* record covered by Title III. But its Complaint asks only for the voter list. *See* ECF No. 40 ("MTD"), at 8 n.5. Further, a request for *every* document covered by Title III would plainly fail the "reasonable relevance" standard, *Wilson*, 98 F.4th at 1221, a point to which DOJ offers no response.

federal government to superintend nationwide list maintenance efforts is unprecedented, and when "an agency claims to discover in a long-extant statute an unheralded power," courts "typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). That skepticism is amply warranted here.

DOJ relies on isolated provisions of the CRA to justify its efforts to use it for list-maintenance supervision. But courts "construe statutes, not isolated provisions," and read them "in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 486 (2015) (citations omitted). When an agency claims sweeping statutory authority, courts do not assume Congress means "to confer the power the agency has asserted" simply because an isolated phrase can bear that reading. *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). Instead, courts examine the entire statute and reject expansive constructions that have a "colorable textual basis" but unduly strain the statute's structure and design. *See id.* at 721-23.

Here, the statutory framework confirms that the CRA creates an enforcement tool for DOJ to investigate violations of voting rights—not a general review power over state elections. Congress codified this provision in the chapter titled "Elective Franchise," alongside substantive voting protections it had enacted in the Civil Rights Act of 1957. *See* 42 U.S.C. §§ 1971-1974 (1958 & Supp. IV) (later recodified in Title 52). That structure indicates Congress intended Title III to be an enforcement mechanism to protect federal voting rights, not a mandate to supervise state election regulation. *Smith v. Doe*, 538 U.S. 84, 85 (2003) (statutory codification is "probative of the legislature's intent").

The text confirms this. The CRA directs states to preserve records "relating to any application, registration, payment of poll tax, or other act requisite to voting," 52 U.S.C. § 20701, categories that are keyed to the substantive guarantees codified alongside it, which prohibit deprivations of "the opportunity to register to vote," 42 U.S.C. § 1971(a)(e) (1958 & Supp. IV). Likewise, requiring DOJ to state the "basis" and "purpose" of its demand is consistent with a rights-enforcement tool designed for discrete investigations but makes little sense if it confers freestanding access to state election data for any purpose or no purpose at all, as DOJ contends. Contemporary sources also recognize that Congress's objective was "to secure a more effective protection of the right to vote," *Alabama ex. rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960); *see also* H.R. Rep. No. 86-956, at 7 (1959), not to enforce the NVRA's or HAVA's administrative requirements that would not exist until decades later, *see Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 158 (1975) (a statute "should not be stretched to apply to new situations not fairly within [its] scope"). If Congress intended to create a general federal power to audit state elections, it would have said so. *West Virginia*, 597 U.S. at 721-23.[3]

## V. Title III does not prohibit the redaction of sensitive voter information.

Colorado is also entitled to redact sensitive information from the statewide voter list, including in response to a CRA demand. *See* MTD at 10-12. Colorado law protects such information. The question, then, is whether the CRA preempts these laws and requires the production of sensitive information. It does not. Even *Lynd* observes that the

---

[3] DOJ asserts that it "has pursued successful matters" to obtain unredacted voter lists under the CRA. Opp. at 27. But in neither instance that it cites was the applicability of the CRA contested or resolved by a court. *See* ECF Nos. 49-2, 49-7.

CRA is intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." 306 F.2d at 231. DOJ does not address or acknowledge this. Opp. at 28-31. Instead, DOJ argues that it must require the production of sensitive information because otherwise Section 304 of the CRA—which limits the instances in which DOJ may disclose records it receives pursuant to a Title III demand—would have no purpose. *Id*. at 29. That is wrong. Section 304 prevents *DOJ* from disclosing sensitive information; it does not indicate any congressional intent to preempt states from enacting *broader* protection from disclosure.

As for DOJ's claim that it is entitled to sensitive information because Title III requires production of "all records" and "[a]ll means all," *id.*, it is at odds with Tenth Circuit precedent holding that redaction is permitted under the NVRA. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); MTD at 11-12 & n.8. Both statutes address closely related subjects and use markedly similar language. It would make little sense to conclude that the CRA demands that Colorado produce sensitive information to allow DOJ to assess NVRA and HAVA compliance when those statutes do not require producing the same information. *See Weber*, 2026 WL 118807, at *12-13 (noting DOJ conceded that States can redact sensitive voter information under the NVRA in briefs as recently as 2023); *Oregon*, 2026 WL 318402, at *12 (finding redaction "appropriate and permissible"). The NVRA, too, mandates public inspection of "*all* records," 52 U.S.C. § 20507(i)(1) (emphasis added). The Tenth Circuit held that text is consistent with redaction of sensitive information. *Voter Reference Found.*, 160 F.4th at 1083 n.14. DOJ simply ignores *Voter Reference Foundation*. DOJ's policy argument that

DOJ would not be able to "meaningfully investigate" a state's list maintenance efforts under HAVA and the NVRA without "access to the voter identification numbers," Opp. at 30, also fails because there is no indication that Congress ever meant for DOJ to be able to "investigate" a state's compliance with HAVA or the NVRA using Title III to begin with. Instead, Congress created a disclosure provision in the NVRA for this purpose and courts agree it does not prohibit states from redacting sensitive voter information. MTD at 10-12. DOJ again fails to coherently explain why such information would be necessary for such an investigation.[4]

**VI.    DOJ's collection of Colorado's voter list would violate the Privacy Act.**

Lastly, DOJ misunderstands how the Privacy Act operates. That Act does not "simply require" that protected information "be securely stored and not be subject to unauthorized dissemination or use." Opp. at 31. It requires more, including public notice and detailed disclosures upon the "establishment or revision" of a system of records. 5 U.S.C. § 552a(e)(4), (11). An agency must publish a Systems of Record Notice ("SORN") that discloses the name and location of the system, the categories of records maintained in it, and all "routine uses" to which the system can be put, among other things. *Id.* § 552a(e)(4). The agency must also "provide an opportunity for interested persons to submit written data, views, or arguments to the agency." *Id.* § 552a(e)(11).

DOJ does not contest that the Privacy Act applies here and that DOJ cannot collect

---

[4] DOJ's claim that "private parties have been granted access to even more detailed voter data," Opp. at 30-31, is false. In the case DOJ cites, the court *excluded* social security numbers and other confidential information and entered a strict protective order. *See* Protective Order & Sch. A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SETSM (D.N.H. June 18, 2025), ECF Nos. 87 & 87-1.

or maintain Colorado's voter list unless there is an applicable SORN. *Id.* § 552a(e)(4).

Although DOJ's proposed memorandum of understanding cited three Federal Register

notices containing SORNs in an attempt to show compliance, ECF No. 37-8 at 4, none of

the cited SORNs can be read to cover DOJ's unprecedented effort here, *see* MTD at 13-

14. DOJ's response does not rebut this; it merely gestures at "dozens" of SORNs that are

listed in a Federal Register notice advising the public that all DOJ SORNs are being

updated to include routine uses that are relevant in the event of a data breach. Opp. at

32; *see* Privacy Act of 1974; System of Records, 82 Fed. Reg. 24147-01 (May 25, 2017).

But this does not explain how any specific SORN could conceivably cover a State's voter

file. *See Weber*, 2026 WL 118807, at *18 ("[N]one of the SORN[s] identified give sufficient

notice to the American public as required under the Privacy Act."). Until DOJ complies

with the Privacy Act's requirements, that statute bars it from collecting and maintaining

Colorado's voter list. *Id*.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

Respectfully submitted,                                          Dated: March 18, 2026

**David D. Powell, Jr.**                                        /s/ Elisabeth C. Frost
**Lys Runnerstrom**                                             **Elisabeth C. Frost**
GARNETT POWELL MAXIMON                                          **Joshua C. Abbuhl**
  BARLOW & FARBES                                               **Kevin R. Kowalewski**
1125 17th St., Suite 2200                                       ELIAS LAW GROUP LLP
Denver, CO 80202                                                250 Massachusetts Ave NW, Suite 400
Telephone: (720) 252-7947                                       Washington, DC 20001
E-mail: david.powell@garnettlegalgroup.com                      Telephone: (202) 968-4490
                                                                E-mail: efrost@elias.law
                                                                Attorneys for Proposed Intervenors