# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

      Defendant.

---

## MOTION TO DISMISS BY INTERVENORS COLORADO ALLIANCE FOR RETIRED AMERICANS AND BRITTON DEFORD

---

The U.S. Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning states the responsibility for maintaining voter registration lists. DOJ has demanded that dozens of states turn over their full, unredacted voter lists, including highly sensitive voter information. Colorado law prohibits the Secretary from disclosing, or otherwise releasing, voters' social security numbers and driver's license or state-issued identification numbers, as well as other sensitive information. Colo. Rev. Stat. § 1-2-302(8). After Secretary Griswold refused DOJ's demand for sensitive voter data, it came to this Court to ask that it compel Colorado to produce its full voter registration list.

DOJ's Complaint relies on a single cause of action under Title III of the Civil Rights Act of 1960, which was enacted to combat infringement of the right to vote. Neither this (nor any other law) entitles DOJ to the data it seeks. DOJ must provide the "basis and

purpose" for any Title III request, but, here, it fails to provide *any* basis and its purported purpose—to determine if Colorado is in compliance with the National Voter Registration Act's (NVRA) list maintenance procedures—is not a proper use for Title III. Even if it were, Title III does not require states to turn over highly confidential information, nor does it preempt state privacy laws. DOJ has also failed to comply with the Privacy Act, as it must to collect the private information it seeks, even if its demand was permissible.

DOJ has filed suit against 24 states and D.C. so far, in each seeking private voter data. Already, courts have dismissed DOJ's suits with prejudice, holding that its Title III claim was legally defective for many of the reasons stated here. *See United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-1666, 2026 WL 318402 (D. Or. Feb. 5, 2026). This Court should likewise dismiss this Complaint with prejudice.

## BACKGROUND

I.    **Federal law has long made voter list maintenance a state responsibility, consistent with constitutional principles of federalism.**

The Constitution gives the States "responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); U.S. Const. art. I, § 4, cl. 1. Thus, states determine voter eligibility and maintain lists of voters, unless Congress clearly acts to preempt those responsibilities. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

The federal laws that Congress has enacted relating to voter registration augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. First, the NVRA, which was enacted in 1993 to serve

2

"two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls," *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b), expressly charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists, *id.* § 20507(c)-(g). And, the Help America Vote Act (HAVA), which was enacted in the wake of the 2000 elections "to improve voting systems and voter access," *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024), requires *states* to create a "computerized statewide voter registration list," 52 U.S.C. § 21083(a)(1), and to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). It, too, is clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). It also expressly commands that the "specific choices on the methods of complying with" its provisions "shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. *The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome.* This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31-32 (emphasis added).

## II.     The Department of Justice seeks to amass state voter registration data.

In the spring of 2025, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including sensitive and personal information

about each registered voter. To date, DOJ has sent demands to more than forty states, with plans to make similar demands on all fifty.[1] The vast majority—including those led by Republican officials—have declined to turn over sensitive personal voter information.[2]

On May 12, 2025, DOJ sent a letter to Secretary Griswold, requesting information concerning Colorado's compliance with "the Voting Rights Act, 52 U.S.C. §20701." ECF No. 5-1, Ex. 1 ("May 12 Letter"); Compl. ¶ 20.[3] Section 20701 is not part of the Voting Rights Act.[4] It is part of the Civil Rights Act of 1960, and it obligates state election officials to "retain and preserve" for 22 months after a federal election, "all records and papers" that come into the official's possession "relating to any application, registration . . . or other act requisite to voting in such election." 52 U.S.C. § 20701. The letter asked the Secretary to turn over "[a]ll records" covered by § 20701—in other words, *every* record that had come into the possession of Colorado's chief election official for the last 22 months relating to voting applications or registrations. As its only justification for that sweeping demand, the letter stated that DOJ had "recently received a complaint alleging noncompliance by [the Secretary's] office" with the NVRA, and it sought these records to

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Feb. 6, 2026), https://perma.cc/SBW7-HDHR; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1.

[3] Documents cited in the complaint may be considered in deciding the motion to dismiss. *Broker's Choice of Am. v. NBC Univ., Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

[4] The letter contains other errors, including a reference to the "Commonwealth of Colorado," and a request for records from the federal election in *2000*.

"evaluat[e]" that complaint. No detail was provided about the alleged complaint. Nor did the letter specifically ask for (or even mention) Colorado's voter registration list.

DOJ dropped the matter for nearly seven months. Then, in December 2025, a DOJ trial attorney sent a short email to the Secretary's office, specifically requesting Colorado's "nonpublic, unredacted voter registration list." Compl. ¶ 24; ECF No. 5-1, Ex. 2 ("Dec. 1 Email"). The email did not mention any other records. The Secretary's office responded that it "will not be producing unredacted voter files." Compl. ¶ 25. DOJ then filed this lawsuit on December 11, 2025.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "a plaintiff must offer specific factual allegations to support [its] claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## ARGUMENT

I.     **DOJ's asserted "basis and purpose" are insufficient to support enforcement.**

A demand for records under Title III must state "the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ contends that, so long as its written demand contains *some* statement of its purported "basis and purpose"—no matter how threadbare—then it is entitled to compel the production of *any* record covered by Title III, unhindered by judicial scrutiny. Compl. ¶ 4. That is wrong. Title III's "basis-and-purpose" requirement is

"not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at *9; *see In re DOJ Admin. Subpoena*, No. 25-mc-63, 2026 WL 33398, at *9 (D. Colo. Jan. 5, 2026) (R&R) ("A district court is not a rubber stamp for agency demands for the production of information." (cleaned up)). In this Circuit, courts apply a "reasonable relevance" standard to a government document demand. *United States v. Wilson*, 98 F.4th 1204, 1221 (10th Cir. 2024). Under that standard, the government must show (among other things) that its demand is "sufficiently limited in scope" and "relevant in purpose," *i.e.*, that the demand is reasonably tailored to its investigation. *Id.* DOJ falls far short of that standard.

In fact, it is not even possible to *discern* DOJ's "basis and purpose" for its demand for Colorado's voter registration list. Compl. at 6, ¶ B. Although DOJ's May 12 Letter referenced a "complaint" and a desire to "evaluate" it, that letter never mentioned the voter list, instead it made a sweeping demand for *every* document in the Secretary's possession covered by Title III. DOJ did not ask for the voter list until six months later, and that December 1 email said *nothing* to link the voter list to the purported complaint.

But even if DOJ *had* clearly linked its request for the voter list to the complaint mentioned in the May 12 Letter, it still fails to offer a "basis and purpose" for its demand. The sum total of DOJ's relevant statements are that it "received a complaint" that "alleg[ed]" "noncompliance" with a portion of the NVRA, and DOJ requested documents to "evaluat[e]" the complaint. Compl. ¶¶ 19-21; May 12 Ltr. Those statements do not explain how an unredacted copy of the voter registration list, containing sensitive information about every voter in Colorado, is reasonably tailored (or is even *relevant*) to

6

an appropriately scoped investigation. It is difficult to imagine the complaint that could justify such a wide-ranging demand, but imagine Colorado (and everyone else) must, because DOJ provided no information at all about that complaint in its correspondence. Nor does DOJ (in its filings here or correspondence with the Secretary) assert any substantive reason to suspect—*or even express any concern about*—Colorado's list maintenance efforts. *But see Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (DOJ stating in Title III demand it had information "tending to show" racial discrimination in voting in the target jurisdiction).

All that the NVRA requires is that a State conduct a "general program" that makes "reasonable" efforts to remove the names of ineligible voters who die or change their residence. 52 U.S.C. § 20507(a)(4). An unredacted voter registration list would tell DOJ nothing about the choices Colorado made in conducting its list maintenance efforts, the data would be outdated almost immediately, and even if DOJ were able to use it to identify voters who have moved or died since that single snapshot in time, it would not mean that Colorado failed to conduct "reasonable" list maintenance efforts. Moreover, given that DOJ has made near carbon copy demands for the unredacted voter files of at least 40 states based on nearly identical boilerplate claims and allegations, it is simply not plausible to conclude that DOJ's request for the unredacted voter file here is reasonably tailored to an investigation of Colorado specifically.

DOJ's failure to provide sufficient information to determine that its demand is reasonably tailored to its investigation requires dismissal of its Complaint. *See, e.g.*, *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 459 (5th Cir. 2018) (refusing

enforcement when court could not determine if demand was "reasonably relevant" to the investigation and not "unreasonably broad"); *CFPB v. Accrediting Council for Ind. Colls. & Schs.*, 854 F.3d 683, 690-91 (D.C. Cir. 2017) (similar); *In re DOJ Admin. Subpoena*, 2026 WL 33398, at *3 (refusing enforcement where DOJ "never deigns to explain [its] investigation, let alone how the Subpoena is right-sized for it").[5]

## II.    DOJ's demand is not supported by a proper purpose.

Although DOJ's Complaint and correspondence with the Secretary do not evince a discernible purpose for its demand for the voter file, *see supra* Arg. § 1, in its *motion to compel*, DOJ asserts that "the purpose . . . was to assess Colorado's compliance with the list maintenance requirements" of the NVRA and HAVA. ECF No. 5 at 2. Title III specifically requires the "basis and purpose" to be contained within the demand itself, 52 U.S.C. § 20703, making this post-hoc litigation explanation insufficient. But even if DOJ *had* stated this "purpose" in its demand, the Complaint still must be dismissed because evaluating list maintenance efforts is not a valid purpose under Title III.

In interpreting Title III's "purpose" requirement, the Court must account for "'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air. Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). The context makes plain that Title III was enacted to address a specific problem: DOJ's ability to protect the "right of all qualified

---

[5] DOJ's Complaint asks for an order to produce only Colorado's voter registration list. Compl. at 6, ¶ B. To the extent DOJ's complaint could be read to seek enforcement of DOJ's initial request for "all records" covered by Title III, that maximalist request would plainly fail the "reasonable relevance" standard. *Wilson*, 98 F.4th at 1221.

citizens to vote without discrimination on account of race" in accordance with the Civil Rights Act was stymied by the refusal of election officials to provide it with voting records. H.R. Rep. No. 86-956, at 7 (1959). Congress enacted Title III to assist DOJ in those investigations. *See Lynd*, 306 F.2d at 228; *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960). It has nothing to do with investigating the administrative voter registration list requirements that the NVRA and HAVA imposed decades later.

Prior enforcement of Title III confirms that DOJ, too, long understood that it was meant to be used for investigating the denial of voting rights. Shortly after the law's enactment, courts upheld DOJ demands that stated they were "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting" in the subject jurisdictions. *In re Coleman*, 208 F. Supp. 199, 200 (S.D. Miss. 1962); *see also Lynd*, 306 F.2d at 229 n.6 (same).[6]

The Court should reject DOJ's efforts to justify its demands with a purpose disconnected from the statutory scheme. *Weber*, 2026 WL 118807, at *9 (holding that assessing NVRA compliance was an improper purpose for DOJ's Title III request); *Oregon*, 2026 WL 318402, at *10 (same); *see In re Subpoena No. 25-1431-014*, No. MC-25-39, 2025 WL 3252648, at *17 (E.D. Pa. Nov. 21, 2025) (rejecting subpoena seeking

---

[6] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226, those cases involved circumstances where Title III was unquestionably being used for its intended purpose: investigations into the denial of voting rights on account of race, and thus are fundamentally distinguishable.

9

private health information where DOJ "invoke[d] sweeping needs" for the information "far removed from those claimed purposes granted by Congress"); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236-39 (D. Mass. 2025) (similar).

**III.    Title III does not prohibit the redaction of sensitive voter information.**

Even if investigating compliance with the NVRA or HAVA were a proper basis for a Title III demand, nothing in that law prohibits a state from redacting private voter information, including that protected by state law. Indeed, even *Lynd*, the principal case DOJ cites and relies on in its complaint, made clear that Title III is intended to reach *only* "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. Moreover, Colorado law expressly prohibits the Secretary from disclosing sensitive information in voter files, including social security numbers and driver's license other identification numbers. Colo. Rev. Stat. § 1-2-302(8). Thus, for DOJ to be entitled to the *unredacted* voter registration list, it must show that Title III preempts these state-law privacy protections. It does not.

Courts presume that most federal laws do *not* impliedly preempt state law. *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1240-42 (10th Cir. 2011), *aff'd*, 569 U.S. 614 (2013). That presumption does not apply when Congress exercises its authority to "make or alter" state election regulations, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 51-52 (1st Cir. 2024), but because Title III addresses only the retention and disclosure of records—and does not target any state election regulations or practices—the presumption applies here. *See Tarrant Reg'l Water Dist.*, 656 F.3d at 1242.

10

Title III's text does not indicate an intent to preempt state privacy laws that protect highly sensitive information and courts have repeatedly found that the NVRA (which DOJ claims it is seeking to enforce), does not prohibit states from redacting private voter data when complying with the NVRA's disclosure provisions. Title III and the NVRA employ similar language relating to the disclosure of state voting records. *Compare* 52 U.S.C. § 20703 (Title III: covered voting records "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with* 52 U.S.C. § 20507(i) (NVRA: states "shall make [covered voting records] available for public inspection"). As such, they should be interpreted consistently. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality op.) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").[7]

Consistent with decisions of several of its sister circuits, the Tenth Circuit recently held that the NVRA does *not* prohibit States from redacting precisely the information that DOJ seeks. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before

---

[7] DOJ also recognizes that Title III and the NVRA should be interpreted consistently. *See* ECF. No. 5 at 8 n.3 (DOJ stating: "[a]lthough this Motion . . . is made under [Title III], the United States notes that the NVRA includes a similar requirement for production of Federal election records," and citing *Smith* for the proposition that courts should presume that two similar statutes "have the same meaning" (citation omitted)). Notably, however, although the first wave of cases that DOJ brought against states attempting to obtain private voter data alleged claims under the NVRA and Title III (and HAVA, as well), DOJ has abandoned its NVRA and HAVA claims in its later-filed actions, including this one. *See, e.g.*, *Weber*, 2026 WL 118807, at *12-17; *Oregon*, 2026 WL 318402, at *5-7.

providing the voter data, the NVRA does not prohibit that limitation.").[8] There is no basis for finding otherwise when it comes to Title III.

Finally, if Congress believed that it was desirable for DOJ to be able to access a state's complete voter file to ensure that the state was complying with its list maintenance obligations, it would have done so in *the NVRA and HAVA themselves.* Congress did not do so. Instead, it created a *different* mechanism meant to ascertain states' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this inspection to allow for "critical scrutiny and public audits of voter data"—but still permitted the redaction of sensitive voter data. *Voter Reference Found.*, 160 F.4th at 1082 & 1083 n.14. As for HAVA, it contains no disclosure provision at all and instead confirms that voter registration lists must be "maintained" and "administered at the State level." 52 U.S.C. § 21083(a)(1)(A).

In short, it simply makes no sense to say that Congress intended Title III to preempt state privacy laws protecting highly sensitive information so that the federal government could assess compliance with voter list maintenance under the NVRA and HAVA, when the text of those statutes reflect a congressional judgment *not* to preempt such laws.

---

[8] *See also Bellows*, 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming order to redact social security numbers before disclosure under NVRA); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (holding the NVRA permits redactions to "protect sensitive information").

**IV.    DOJ failed to comply with the Privacy Act, which also requires dismissal.**

The Privacy Act independently prohibits DOJ from obtaining Colorado's voter registration list. It imposes obligations on any agency that "maintains" a "system of records." 5 U.S.C. § 552a(e). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). Colorado's voter registration list, which contains the names and identifiers of all registered voters in the state, is a "system of records." The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" that information, the obligations imposed by subsection (e) are triggered. *See id.* § 552a(e)(4).

Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters v. DHS*, No. 25-cv-3501, 2025 WL 3198970, at *2 (D.D.C. Nov. 17, 2025) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include the name and location of the system, the categories of individuals on whom records are maintained, the categories of records maintained, and all "routine uses" to which the system can be put. *Id.*

In its proposed memorandum of understanding, DOJ stated that the SORN identified as "JUSTICE/CRT-001," the "Central Civil Rights Division Index File and Associated Records," provides "[t]he full list of routine uses" for DOJ's "collection" of Colorado's voter list. *See* Compl. ¶ 24; Ex. A, at 4.[9] That SORN, however, cannot extend to a record such as a state voter list. *Weber*, 2026 WL 118807, at *18. It states the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. *Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). It is not plausible to construe that language to countenance the collection of personally identifying information of *every* registered voter in Colorado. Similarly, the SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* It would be a startling reading of those terms to allow them to extend to a State's complete voter list, which has never been maintained by the federal government.[10]

If DOJ wishes to take such a radical step and compile a federal database of the registered voters in the United States, the Privacy Act requires that DOJ give the public adequate notice about its intention to do so, by publishing a SORN that accurately

---

[9] DOJ cited the memorandum of understanding in the Complaint, Compl. ¶ 24, and it was attached to the December 1 email, *see* ECF No. 5-1, Ex. 2. DOJ did not attach it to its court filings, although it has since become publicly available, *see* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1, and Intervenors attach it here as Exhibit A.

[10] DOJ cites two other notices, but neither contains a routine use that is remotely applicable. 70 Fed. Reg. 43904 (July 20, 2005); 82 Fed. Reg. 24147 (May 25, 2017).

14

discloses the system of records it intends to create and the uses to which it will put that information. *Pippinger v. Rubin*, 129 F.3d 519, 527 (10th Cir. 1997) (noting the Privacy Act "requir[es] publication of the establishment and existence of a government-maintained 'system of records'" and that agencies "publish in the Federal Register notice of revisions in the *character* of existing systems of records" (citation omitted)); *see* 5 U.S.C. § 552a(e)(4); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

Respectfully submitted,                     Dated: July 10, 2026

/s/ Elisabeth C. Frost
**Elisabeth C. Frost**
**Joshua C. Abbuhl**
**Kevin R. Kowalewski**
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
E-mail: efrost@elias.law

**David D. Powell, Jr.**
**Lys Runnerstrom**
GARNETT POWELL MAXIMON BARLOW &
  FARBES
1125 17th St., Suite 2200
Denver, CO 80202
Telephone: (720) 252-7947
E-mail: david.powell@garnettlegalgroup.com
Attorneys for Intervenors