## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA,

     Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State of Colorado,

     Defendant.

---

COLORADO ALLIANCE FOR RETIRED AMERICANS AND BRITTON DEFORD'S
OPPOSITION TO MOTION FOR ORDER TO COMPEL RECORDS, ECF No. 2

---

## INTRODUCTION

The Federal Rules of Civil Procedure lay out the lifecycle of a civil action. After the filing of a civil complaint, a defendant may file a motion to dismiss under Rule 12(b). Then, if a plaintiff states a claim, the case proceeds to discovery, summary judgment, and trial if necessary. Over the course of that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

The U.S. Department of Justice ("DOJ") asks this Court to bypass that entire process by adjudicating a "motion for order to compel records" at the very start of the case. ECF No. 2. This may sound like an innocuous discovery motion, but it is no such thing—it would compel the final relief that DOJ seeks in this action. Nothing in the Federal

Rules or the statute underlying DOJ's claim authorizes this departure from the regular course of proceeding or permits DOJ to evade the Rules for its own convenience. The Civil Rights Act merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. The 1962 Fifth Circuit decision that DOJ relies on is irreconcilable with later Supreme Court precedent clarifying that in circumstances involving *identical* statutory language, "the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964).

As federal district courts in California and Oregon recently held in parallel litigation against those States, the very Civil Rights Act claim that DOJ replicates here is governed by the Federal Rules rather than some special procedure absent from the statute's text. *See United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026). This Court should similarly reject DOJ's effort to short-circuit the ordinary litigation process, deny DOJ's motion, and allow this action to unfold as prescribed by the Federal Rules. Finally, procedure aside, DOJ is not entitled to the relief it seeks for the reasons stated in Intervenors' contemporaneously filed motion to dismiss.

### BACKGROUND[1]

DOJ filed this suit on December 11, 2025, seeking to compel Defendant Jena Griswold, Colorado's Secretary of State, to turn over Colorado's full, unredacted

---

[1] Intervenors' Motion to Dismiss further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Colorado and throughout the country.

statewide voter registration list.[2] *See generally* Compl., ECF No. 1. DOJ brings only a single claim, alleging a violation of Title III of the Civil Rights Act of 1960. *See id.* ¶¶ 26-28. DOJ initiated the process of seeking Colorado election records by informing Secretary Griswold that it had received a "complaint" about her office's compliance with a provision of the NVRA, and stating it was requesting records to "evaluate" that complaint. *See* ECF No. 5-1, Ex. 1. DOJ did not provide any information regarding the complaint that purportedly spurred the request. *Id.*

As Intervenors explain in their motion to dismiss, Title III cannot support DOJ's sweeping and novel demand. *See generally* Mot. to Dismiss. DOJ states no lawful basis and purpose for its demand. It says it is investigating compliance with the NVRA and HAVA, but it articulates no "basis" for believing Colorado—much less all 40-plus States of which DOJ is making this same demand—is violating those statutes, nor is investigating compliance with those statutes a lawful purpose for an investigation under Title III, because it falls outside its focus on constitutional voting rights. *See id.* Argument §§ I-II. Title III also does not preempt Colorado privacy protections, and DOJ also has

---

[2] In its first communication with Secretary Griswold, DOJ asked for "[a]ll records" covered by 52 U.S.C. § 20701, that is, *every* record Colorado's chief election official had come into possession of over the preceding 22 months "relating to any application, registration . . . or other act requisite to voting." In its present motion, DOJ technically asks the Court to enforce this plainly overbroad request (and to produce all such records in five days). Mot. to Compel Records, ECF No. 2 at 2. But DOJ's papers make clear that this request is an afterthought, and that its true target is Colorado's unredacted voter registration list. For example, DOJ's complaint asks for an order to produce the voter registration list only. Compl. at 6, ¶ B. The concluding paragraph of DOJ's memorandum in support of its motion to compel records likewise asks only for an order to produce the voter registration list and does not mention any other records. ECF No. 5 at 10.

failed to comply with the federal privacy laws that it must in order to collect the private information it demands, even if it were otherwise entitled to it. *See id.* Argument §§ III-IV.

In its motion to compel, DOJ asks the Court to ignore those issues—and others raised in the motions to dismiss—and skip straight to compelling production of the data that DOJ demands. Specifically, it asks the Court to "[o]rder Defendant to produce an electronic copy of the Colorado [S]tatewide Voter Registration List," including all the sensitive fields DOJ demands. Mot. for Order to Compel at 2, ECF No. 2.

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action, like any other. Nothing in Title III's text supports DOJ's contention that Title III "displaces" the Federal Rules or authorizes a "special statutory proceeding." Mem. in Support of Mot. for Order to Compel at 8, ECF No. 5. DOJ is also wrong to minimize the Court's role in reviewing the lawfulness of the relief it seeks. The Court should deny its motion and allow this litigation to unfold under the normal course—starting with the motions to dismiss.

### I.  The Federal Rules govern DOJ's claim under the Civil Rights Act

The Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none involve Title III. *See* Fed. R. Civ. P. 81(a). Just the opposite. Rule 81(a)(5) expressly provides that "proceedings to compel testimony or the production of documents

4

through a subpoena issued by a United States officer or agency under a federal statute"
are subject to the Federal Rules, "except as otherwise provided by statute, by local rule,
or by court order in the proceedings." As a result, even if Title III document requests could
be characterized as a subpoena, they would still be subject to the Federal Rules, as none
of the sources listed in Rule 81(a)(5) provide an exception for document requests under
Title III. Congress knows how to prescribe streamlined proceedings for that circumstance,
*see, e.g.*, 29 U.S.C. § 161(2), and it did not do so in Title III.

As two federal courts have now agreed, "[n]othing in the text of Title III requires a
special statutory proceeding or any abbreviated procedures." *Weber*, 2026 WL 118807,
at *8; *see Oregon,* 2026 WL 318402, at *8 (consulting Title III's text). DOJ identifies not a
word in Title III that supports its demand for an immediate grant of the final relief it seeks
in this case. Nor could it. Title III says only that district courts "shall have jurisdiction *by
appropriate process* to compel the production" of the documents sought. 52 U.S.C.
§ 20705 (emphasis added). Nowhere does it suggest that the "appropriate process"
should be something other than that which federal courts ordinarily use to resolve
contested cases. *Weber*, 2026 WL 118807, at *8 (exercising "appropriate process" by
applying the Federal Rules of Civil Procedure). And as the Supreme Court has held,
where a statute of this type "contains no provision specifying the procedure to be followed
in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *Powell*,
379 U.S. at 58 n.18 (emphasis added). *Powell* is directly on point, because the relevant
text of the statute in *Powell* was *identical* to the relevant text of Section 20705: both state
that the federal courts "shall have jurisdiction by appropriate process to compel" the

production sought. 26 U.S.C. § 7604(a). "Accordingly," in a Title III case, "the Court applies the Federal Rules of Civil Procedure as in any other case." *Oregon*, 2026 WL 318402, at *8; *see also Weber*, 2026 WL 118807, at *8.

DOJ's contrary argument relies on a Fifth Circuit decision from 1962, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). But *Lynd* is irreconcilable with *Powell*, which the Supreme Court decided two years later. *Oregon*, 2026 WL 318402, at *8 ("The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*."); *see also Weber*, 2026 WL 118807, at *8 n.15. Where *Lynd* says that enforcement proceedings under Title III "do[] not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," 306 F.2d at 225-26, *Powell* rejects that conclusion—again, construing a statute with identical text to that found in Title III—to hold that "the Federal Rules of Civil Procedure apply," and that "proceedings are instituted by filing a complaint, followed by answer and hearing," 379 U.S. at 58 n.18. After *Powell*, *Lynd*—which was never binding on this Court—would not control even in the Fifth Circuit. *E.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzales v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010))). This Court should follow *Powell.*

## II. The Court must conduct meaningful review of DOJ's demand.

DOJ is also wrong to minimize the Court's role in reviewing the legality of DOJ's demand. To invoke the powers of a federal court to enforce a document request, the government must show its investigation "will be conducted pursuant to a legitimate

purpose" and that "the inquiry may be relevant to the purpose." *Powell*, 379 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. And "an abuse would take place if the summons had been issued for an improper purpose." *Id.*

Unsurprisingly, then, courts—including the same circuit court that issued *Lynd*— regularly engage in meaningful judicial review of government document requests issued under a variety of statutory schemes. *E.g.*, *United States v. Edwards*, 172 F. App'x 844, 846 (10th Cir. 2006) (discussing *Powell* and observing that a summons recipient may rebut government's prima facie case); *Jewell v. United States,* 749 F.3d 1295, 1297 (10th Cir. 2014) (applying *Powell* to quash summonses); *United States v. Wilson*, 98 F.4th 1204, 1221 (10th Cir. 2024) (discussing "reasonable relevance" standard in evaluating administrative subpoena); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347-50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458-60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689-90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose for civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994)); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under relevant statutory scheme, rejecting notion that "the

7

Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). Nothing in Title III justifies any different treatment. *See Oregon*, 2026 WL 318402, at *8 ("There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place.").

In arguing otherwise, DOJ relies on *Lynd* and some other cases from the deep South in the early 1960s. But the context in which those cases were decided was vastly different. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6. That was undeniably a valid "purpose" under 52 U.S.C. § 20703, as eliminating racial discrimination in voting was the explicit purpose of Title III, *see State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). And there could be no serious question that DOJ had a valid "basis" to suspect racial discrimination in voting in localities where Black residents had overwhelmingly been excluded from the voter rolls. *See, e.g., United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white

8

person who had been rejected"). Moreover, *Lynd* emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers." 306 F.2d at 231. It further noted that, if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would need to adjudicate that issue. *Id.* at 226.

None of the factors that made *Lynd* such an easy case are present here. Here, DOJ seeks sensitive and private information that is regularly protected from disclosure and DOJ's avowed purpose for its request falls outside of Title III, because—even by DOJ's own telling—the demand relates not to the protection of constitutional voting rights, but merely administrative requirements imposed by other statutes with their own enforcement and investigatory mechanisms (specifically, the NVRA and HAVA). *See* Mot. to Dismiss Argument § II.[3] That leads to a "genuine dispute" whether the records are subject to production under Title III. *Lynd*, 306 F.3d at 226. Indeed, public reporting and statements by DOJ officials themselves strongly indicate that DOJ's real purpose is to *impede* voting rights, not protect them. *See infra* 13-14. And, even if DOJ could use Title

---

[3] Notably, although DOJ alleged claims under the NVRA and HAVA in its first set of otherwise identical cases against states seeking the same relief it seeks here, DOJ has abandoned those claims in later iterations of these cases, including this one against Colorado. *See* Intervenors' Mot. to Dismiss at 11 n.7. In doing so, DOJ has effectively conceded that those statutes do not entitle it to the relief it seeks, and concocted instead an ill-advised theory that Title III operates as a catch-all authorizing any demand by DOJ for any information related to voting for any purpose, without any place for judicial review. For the reasons discussed here (and in greater detail in Intervenors' motion to dismiss), this argument is not well founded.

III to investigate list maintenance issues governed by the NVRA and HAVA (and there is good reason to find that it cannot), DOJ has provided no reason to believe that it has a valid basis to suspect that there are NVRA and HAVA violations in Colorado, much less in all 40-plus States from which DOJ has demanded similar records. Finally, the records that DOJ seeks here involve confidential, not public, information. *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi. But it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary document demands targeting quintessential private information about all registered voters in the entire State of Colorado, and nearly every other State, too.

Federal courts have recognized as much by adjudicating DOJ's parallel cases seeking the same type of private voter data under the Federal Rules—and holding that DOJ's Title III claim cannot survive its mandatory encounter with Rule 12. After the California court provided for appropriate process—full briefing of motions to dismiss under Rule 12—the court dismissed DOJ's Title III claim with prejudice. *Weber*, 2026 WL 118807, at *20. So did the Oregon court. *Oregon*, 2026 WL 318402, at *13.[4] Many more courts have proceeded with entertaining Rule 12 motions: defendants' and intervenors' motions to dismiss are fully briefed in Maine, New York, Rhode Island, and Minnesota

---

[4] Both the California and Oregon courts also dismissed DOJ's NVRA and HAVA claims. *Weber*, 2026 WL 118807, at *14-16; *Oregon*, 2026 WL 318402, at *6-7. Curiously, DOJ did not file a motion to compel related to its Title III claim in Oregon. *See id.* at *8 n.1 ("Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation.").

10

with briefing ongoing in numerous additional states.[5] With briefing already underway before this Court, there is no reason to switch gears and deviate from the procedures provided by the Federal Rules.

DOJ has called attention to an order that instructed Connecticut's Secretary of State to show cause why the court should not order the release of the State's voter registration list, but it does nothing to help DOJ's position. ECF No. 29; *see* Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 8, 2026), ECF No. 10. For one, it stands alone among the 25 cases that DOJ has filed across the country, and was issued before the defendant in that case (the Secretary of State of Connecticut) had appeared, or for that matter, before she was served.[6] *See, e.g.*, Summonses Returned Executed, *Thomas*, No. 3:26-CV-00021-KAD (D. Conn. Jan. 12, 2026), ECF Nos. 20-21; Notices of Appearance, *Thomas*, No. 3:26-CV-00021-KAD (D. Conn. Jan. 13, 2026), ECF Nos. 25-26. As the Connecticut court soon clarified in a follow-up order, "the parties disagree as to the appropriate procedural posture of this case," and the court made clear it had not decided if it accepted DOJ's arguments, and "the dispute shall be fully briefed followed by a hearing at which oral argument shall be had." Order, *United States v. Thomas*, No.

---

[5] *See, e.g.*, *United States v. Bellows*, No. 1:25-CV-00468 (D. Me. Nov. 21, 2025), ECF No. 38; *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338-MAD-PJE (N.D.N.Y. Jan. 20, 2026), ECF No. 86; *United States v. Amore*, 1:25-cv-00639-MSM-PAS (D.R.I. Feb. 3, 2026), ECF No. 37; *United States v. Simon*, 0:25-cv-03761-KMM-EMB, ECF No. 114 (D. Minn. Feb. 6, 2026).

[6] Intervenor Colorado Alliance for Retired Americans is familiar with these proceedings: its sister organization, the Connecticut Alliance for Retired Americans, was granted intervention as a defendant in that case, Order, *Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 13, 2026), ECF No. 23.

3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026), ECF No. 30. In other words, as the California court correctly observed, the Connecticut order "amounts to nothing more than a scheduling order delineating a briefing schedule."[7] *Weber*, 2026 WL 118807, at *19 (addressing DOJ's parallel notice of supplemental authority in that case).

In sum, this Court should reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure," Mem. in Support of Mot. for Order to Compel Prod. at 8, and apply those Federal Rules as it does in nearly every other civil action. That starts with resolving the parties' motions to dismiss before proceeding to any necessary discovery period and summary judgment briefing.

### III.    The pending motions to dismiss are the proper vehicle for resolving this case.

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion for an order to compel production of records" that is not sanctioned by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: "to test the sufficiency of the plaintiff's complaint." *Sensoria, LLC v. Kaweske,* 548 F. Supp. 3d 1011, 1023 (D. Colo. 2021). The Federal Rules likewise set an early deadline for motions to dismiss because

---

[7] The Connecticut orders also reflect some important oversights. In addition to initially conflating the Voting Rights Act with the Civil Rights Act, the court did not address the Supreme Court's controlling decision in *Powell*, and it analogized Title III to 28 U.S.C. § 1782, a provision with very different text that does in fact specify a different procedure, unlike Title III and the statute at issue in *Powell*, both of which refer only to "appropriate process." Order, *Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026), ECF No. 30; Notice, *Thomas*, 3:26-cv-00021-KAD (Jan. 15, 2026), ECF No. 33 ("With apologies, ECF No. 30 is hereby amended to reflect the Court's understanding that Plaintiff has invoked the Civil Rights Act of 1960, not the Voting Rights Act as erroneously indicated.").

resolving "issues at this early stage potentially could spare the parties (including Plaintiff) unnecessary litigation burden." *Lehmann v. Zehner*, No. 22-CV-00204, 2022 WL 22962900, at *3 (D. Colo. July 25, 2022); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (observing that Rule 12 pleading requirements exist to "avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim") (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1077 (10th Cir. 2008)) (internal quotations omitted)). Accordingly, Rule 12(b)(6) motions are meant to "weed[] out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

As explained more fully in Intervenors' motion to dismiss, DOJ asserts novel authority to compel the production of an unredacted copy of Colorado's complete statewide voter registration list, without any valid statutory basis to do so. *See* Mot. to Dismiss Argument §§ I-IV. In light of the fatal legal deficiencies in DOJ's complaint, resolving its motion to compel first would flip the process backwards, depriving Intervenors and the Secretary of State of their right and opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. The motions to dismiss are thus the proper vehicle to resolve DOJ's claim. *See Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *8.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery into the basis and purpose for DOJ's demand. If DOJ can survive the motion to dismiss, it is apparent that there are potential disputes of material fact at the heart of this case. DOJ says the purpose of its demand is to investigate a

complaint against the Secretary. But contrast that representation with the alarming picture painted by reporting and the words of the administration's officials. DOJ reportedly seeks to create a national voter list, an unprecedented scheme not authorized by law.[8] Assistant Attorney General Dhillon says that DOJ intends to use the information it demands to compel removal of *hundreds of thousands* of voters from the rolls.[9] The President has said that he would like the federal government to insert itself deep into the States' election procedures and even "take over" that process.[10] That would be in direct conflict with the Constitution, every State constitution, the NVRA, HAVA, and other laws. This initiative is clearly a priority: Attorney General Bondi sent a letter to Minnesota indicating that ICE would stop operations there if Minnesota provided DOJ full "access" to its voter rolls (among other demands).[11]

These facts—which make it rather implausible that this is simply a case about DOJ monitoring Colorado's compliance with list maintenance procedures—go to the core of DOJ's claim. Granting DOJ the final relief it seeks before the Secretary and Intervenors

---

[8] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[9] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 AM ET), https://x.com/AAGDhillon/status/2001659823335616795 ("You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

[10] Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to Nationalize Elections*, N.Y. Times (Feb. 2, 2026), https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html.

[11] Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html.

have the opportunity to conduct discovery relevant to this and other factual disputes would

be premature and contrary to the well-established practices that govern civil litigation. *Cf.*

*Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) ("[S]ummary

judgment [should] be refused where the nonmoving party has not had the opportunity to

discover information that is essential to his opposition.") (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).

## CONCLUSION

The Court should deny the motion to compel.

Respectfully submitted,

Dated: July 10, 2026

/s/ Elisabeth C. Frost
**Elisabeth C. Frost**
**Joshua C. Abbuhl**
**Kevin R. Kowalewski**
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
efrost@elias.law

**David D. Powell, Jr.**
**Lys Runnerstrom**
GARNETT POWELL MAXIMON BARLOW
  & FARBES
1125 17th St., Suite 2200
Denver, CO 80202
Telephone: (720) 252-7947
E-mail: david.powell@garnettlegalgroup.com
Attorneys for Intervenors