IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENA GRISWOLD, *et al*.,

Defendants.

Case No. 1:25-cv-03967-PAB-TPO

UNITED STATES OF AMERICA'S RESPONSE TO MOTION TO DISMISS OF
INTERVENOR-DEFENDANTS COMMON CAUSE, KYLE GIDDINGS, AND ANNE
KEKE (ECF 85)

INTRODUCTION

Plaintiff the United States of America respectfully submits this memorandum of law in response to Intervenor-Defendants Common Cause, Kyle Giddings and Anne Keke's ("Common Cause") Motion to Dismiss (ECF 85).

The United States Department of Justice (DOJ) brought this action against Colorado Secretary of State Jena Griswold, alleging that she violated Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. § 20701 *et seq.*, which entitles the federal government to demand certain records pertaining to elections for federal office. Specifically, the DOJ alleged that Secretary Griswold violated the CRA by refusing the Attorney General's demand for all records required to be retained under Section 301 of that act, 52 U.S.C. § 20701, including an electronic, unredacted copy of Colorado's Statewide Voter Registration List (SVRL), to determine whether Colorado is complying with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20501 *et seq.*

1

**BACKGROUND**

Congress passed the CRA to strengthen the 1957 Civil Rights Act. *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in CRA lawsuits and "authorized courts to register voters in areas of systematic discrimination." *Id.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Id.*; *see* 52 U.S.C. § 20701 *et seq.*

Title III requires state election officials to retain records requisite to voting in elections and allows the Attorney General to demand those records. 52 U.S.C. § 20701 *et seq.* Although Congress enacted the CRA with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *Katzenbach*, 383 U.S. at 313, Congress has since enacted additional laws that affect what "records and papers . . . come into [an election officers'] possession," 52 U.S.C. § 20701. However, in doing so, Congress did not alter or limit the broad record-retention and record-disclosure requirements of Title III.

Relevant here are the NVRA and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901 *et seq.*, which provide the federal government with statutory authority to ensure that States are overseeing federal elections in a fair and honest manner to "protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The NVRA requires each State to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . change in the residence of the registrant . . . ." 52 U.S.C. § 20507(a)(4).

Of highest importance to this litigation, HAVA requires states to create and maintain a "computerized" SVRL that "shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. 21083(a)(1)(A)(viii); *see also* Colo. Rev. Stat.

§ 1-2-201(1). Federal elections cannot occur in Colorado without the SVRL. It is the single most important document the state chief election official maintains requisite to a federal election. Because of this, HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. § 21083(a)(1)(A) and (a)(2)(A). HAVA also mandates that States may not "accept[] or process[]" an application for voter registration "unless the application includes" particular identifiers, namely, an applicant's "driver's license number" if he or she has a valid one, "the last 4 digits of the applicant's social security number ('SSN4')" if the applicant has no driver's license, or, if the applicant has neither a driver's license nor an SSN4, a state-assigned "unique identifying number." 52 U.S.C. § 21083(a)(5)(A)(i)–(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements . . . in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii).

On May 12, 2025, acting pursuant to the United States' authority to enforce these federal election statutes, the DOJ sent Secretary Griswold, Colorado's chief elections officer, a letter ("May 12 Letter") demanding a copy of all federal election records as outlined in Sections 301 and 303 of the CRA, 52 U.S.C. §§ 20701, 20703. *See* May 12 Letter, ECF 5-1, Ex. 1. As the May 12 Letter states, the DOJ sought the specified election records based on a complaint alleging Colorado was not complying with the NVRA's voter registration requirements. The May 12 Letter's stated purpose was "[t]o assist [the DOJ's] efforts in evaluating the complaint." *Id*. Secretary Griswold refused to produce all the records the United States demanded, including the SVRL.[1]

---

[1] Secretary Griswold did respond to DOJ on May 27, 2025, providing the public portion of Colorado's SVRL. However, DOJ needs the non-public portions of the SVRL, such as a voter's driver's license number or SSN4, *see* 52 U.S.C. § 21083(a)(5), to ensure that a voter is not, for instance, deceased.

## ARGUMENT

**I.      The DOJ's demand for an electronic, unredacted copy of Colorado's SVRL, which federal law requires Colorado to generate and maintain, satisfies Title III.**

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), to "retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. § 20701 (emphasis added).

Section 303 provides the Attorney General with a correspondingly comprehensive power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying," provided the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. If that written demand has been made, and the state or local election officer has rejected it, the Attorney General may seek an order from the federal court requiring production. 52 U.S.C. § 20705.

Common Cause's primary argument is that the United States' demand for an electronic, unredacted copy of Colorado's SVRL, along with other records, failed to state an adequate basis and purpose. ECF 85 at 5−11.

**A.      Courts play a limited role in assessing the Attorney General's demand under Title III.**

The Attorney General's filing of an application for an order under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd*, 306 F.2d at 225. Rather, a Title III proceeding is "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Id.* For this reason, such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Id.* at 225–26; *see also Gallion*,

187 F. Supp. at 854 (comparing applications to compel to actions by the SEC in which procedural rules "are made specifically inapplicable to investigations"). A Title III proceeding differs from other civil actions because its "chief purpose" is to facilitate *pre-suit* investigation of state and local election activities that otherwise would escape federal oversight. *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960). In stark contrast, "[t]he chief purpose of Fed. R. Civ. P. 34 . . . is to give a party litigant the right to have records produced *after* suit has been filed." *Id.* (emphasis added). Therefore, there is no discovery or trial related to the Attorney General's Title III demand. "There is no place for a motion for a bill of particulars or for a more definite statement . . . . There is no place for any other procedural device or maneuver . . . to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd*, 306 F.2d at 226. In other words, in the narrow context of elections law compliance, Title III invests the Attorney General with a power akin to a grand jury which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950); *see also United States v. Powell*, 379 U.S. 48, 57 (1964).

Common Cause asserts that the Federal Rules of Civil Procedure must govern these proceedings, comparing this proceeding to one seeking to enforce a subpoena. *See, e.g.*, ECF 85 at 8–9, 16. However, the United States has not issued a subpoena; it has made a "demand" under Title III. 52 U.S.C. § 20703. While a demand is similar in some ways to a subpoena, the word "demand" is a term of art with a specific meaning differing from the word "subpoena." A "demand" is "an imperative request preferred by one person to another, under a claim of right, requiring the latter to do or yield something or abstain from some act." *Black's Law Dictionary* 516 (4th ed. 1951). It "presupposes that there is no defense or doubt upon question of right." *Id.*

*Black's* uses as an example a "demand for extradition." *Id.* Federal interstate extradition requires the state executive authority to produce a fugitive whenever another state executive authority demands the fugitive by producing an indictment or an affidavit made before a magistrate charging the person demanded with a crime. *See* 18 U.S.C. § 3182. If extradition is challenged, court involvement is limited to determining, in a summary proceeding, if the statute has been facially followed. *See California v. Super. Ct. of Cal.,* 482 U.S. 400, 407–08 (1987) (holding "[t]he courts of asylum States may do no more than ascertain whether the requisites of the Extradition Act have been met.").

Likewise, in reviewing a Title III "demand," courts are restricted to only determining if the law has been followed on its face: (1) Did the Attorney General make a written demand for federal election records stating a basis and purpose?; (2) Was that demand made to one or more "officer[s] of election" who were custodians of records requisite to voting in federal elections?; (3) Did the "officer[s] of election" fail or refuse to make the demanded federal election records "available for inspection, reproduction, and copying"?; and (4) Did the Attorney General make "a simple statement" to the Court that he satisfied the foregoing requirements? *See Lynd*, 306 F.2d at 225– 26. If the United States has facially complied with the statute, Secretary Griswold must be ordered to produce the records demanded.

Common Cause's reliance on *United States v. Powell* is misplaced. *See* ECF 85 at 16. Common Cause argues that because *Lynd* preceded *Powell*, and because *Powell* applied the rules of civil procedure, *Lynd* was wrongly decided on this point. *Id*. The *Powell* Court explained that because section 7604(b) of the Internal Revenue Code ("IRC") "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply . . . ." *United States v. Powell*, 379 U.S. at 58 n.18. But *Powell's* quoted language

refers to a process expressly provided in the IRC that is absent from the CRA. Section 7605(b) of the IRC prohibits the Government from subjecting a taxpayer "to unnecessary examination or investigations." 26 U.S.C. § 7605(b). *Powell* explained that where a court is asked to enforce an administrative summons under the IRC, judicial inquiry is appropriate to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. That inquiry, however, is only permitted because section 7605(b) specifically authorizes it. *Powell,* 379 U.S. at 52 (quoting 26 U.S.C. § 7605(b)). The Supreme Court later acknowledged that "post-*Powell* cases . . . are clearly and consistently to the effect that . . . *Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Donaldson v. United States*, 400 U.S. 517, 529 (1971), *superseded by statute as recognized in Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 443–44 (2023). The DOJ satisfied that standard: Secretary Griswold was notified of and has responded to the DOJ's Motion to Compel.

On a motion to dismiss, this Court must draw all reasonable inferences in favor of the United States. *Brown v. City of Tulsa*, 124 F.4th 1251, 1255 n.1 (10th Cir. 2025). Taking as true the allegations in the United States' Complaint, the United States has satisfied each of the four elements of its Title III action.

### B.    The DOJ provided a valid basis for its demand.

Nothing in Title III authorizes courts to second-guess or probe the sufficiency or sincerity of the Attorney General's stated basis. Indeed, Title III provides no meaningful standards that permit such judicial review. *Cf. Webster v. Doe*, 486 U.S. 592, 599–600 (1988); *Heckler v.*

*Chaney*, 470 U.S. 821, 830 (1985). Title III identifies only the scope of the "records and papers" the Attorney General may demand, 52 U.S.C. § 20701, and a requirement that the Attorney General communicate "the basis and the purpose" for the demand, 52 U.S.C. § 20703. There is simply not any standard against which to measure the stated basis and purpose. Instead, the Attorney General need only "identify in a general way the reasons for his demand," such as that it "was made for the purpose of investigating *possible* violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added); *see, e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) ("The purpose of this demand is to examine the aforesaid records to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."). As *Lynd* explained, "[t]here is no place for any . . . procedural device or maneuver . . . to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd*, 306 F.2d at 226. Accordingly, the only "matters open for [court] determination" when a recipient challenges the Attorney General's demand are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Additionally, if "a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within this broad statutory classification," that too may be addressed by the court. *Id.*

The DOJ's demand for an unredacted copy of Colorado's SVRL easily satisfied these requirements. In its May 12 Letter, the Department identified as its basis for seeking the election records that it had received "a complaint alleging noncompliance by [Secretary Griswold] with the duties outlined in 52 U.S.C. § 20507." ECF 5-1 at 2. Under any reasonable interpretation of this letter, the basis and the purpose for the DOJ's written demand was clear, and the Attorney

General's demand put Secretary Griswold on "reasonable notice of the pendency of the proceeding." *Lynd*, 306 F.2d at 226.

    **C.    The DOJ's stated purpose of ascertaining Colorado's compliance with the NVRA was sufficient.**

Interpreting Title III's coverage "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), including "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). "[A] court engaged in the task of statutory interpretation must examine the statute as a whole, giving due weight to design, structure, and purpose as well as to aggregate language." *Cablevision of Bos., Inc. v. Public Improvement Comm'n*, 184 F.3d 88, 101 (1st Cir. 1999) (citation omitted). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely . . . ." *Dean v. United States,* 556 U.S. 568, 573 (2009) (alteration in original; citation omitted).

Here, Common Cause attempts three sleights of hand to evade Title III's clear meaning and the Attorney General's clear statements in the May 12 Letter. First, Common Cause attempts to engraft the word "sufficient" into the statutory requirement of a statement of the basis and the purpose. ECF 85 at 6–10. As said, nothing in Title III provides any standard against which the court can weigh the Attorney General's statement of the basis and the purpose. Second, Common Cause makes the conclusory argument that Colorado's voter registration *procedures* establish that its SVRL complies with HAVA, and therefore examination of the SVRL is unnecessary. ECF 85 at 7–8. This argument is unmoored from Title III's text or logic. Only the Attorney General's comparison of a voter's numeric HAVA identifiers with other databases that use those identifiers can determine whether a voter is ineligible to vote because, for instance, the voter died five years

ago. Third, the argument is unmoored from the facts because, despite the Attorney General's demand, Secretary Griswold refused to produce the very written procedures Common Cause relies on for its argument.

Common Cause also asserts that the Attorney General's Title III demand for records must be related to protection of the right to vote, noting that the CRA was enacted at a time when the right to vote was denied on account of race. ECF 85 at 5, 14–15. However, language limiting Title III to race-related violations of individuals' voting rights does not appear anywhere in its text. *See* 52 U.S.C. §§ 20701–20706. By contrast, elsewhere in the CRA, Congress made clear that it intended a remedy to be limited to cases involving racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (applying Title VI of the CRA to violations of rights "on account of race or color") (codified at 52 U.S.C. § 10101). Indeed, the text of Title III provides no limitation on the permissible purpose of the Attorney General's demand. Rather, it is sufficient that the Attorney General is "investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868. In any event, by broadly authorizing the Attorney General to demand election records from States, "[t]he CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich. 2026), *aff'd*, 2026 WL 1815425 (6th Cir. June 24, 2026). The NVRA was passed based in part on Congress's finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3). HAVA, for its part, is a federal statute aimed at protecting voting rights. The statute "establish[es] minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666

(2002) (preamble). The Supreme Court has recognized that invalid votes—which NVRA and HAVA procedures seek to reduce if not eliminate—can "dilute the right of citizens to cast ballots that carry appropriate weight." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). In practical effect, in a two-party system, an invalid vote for one candidate cancels a valid vote for the opposing candidate, and thus it denies voting rights just as surely as the exclusion of a valid voter from the registration list would deny voting rights. Because both the NVRA and the HAVA are federal election laws that protect voting rights, "the DOJ may use the CRA to investigate possible violations of" either statute. *See Benson*, 819 F. Supp. 3d at 767.

### D. The United States is Entitled to Unredacted Records.

Common Cause asserts that if the United States is entitled to any records at all, Secretary Griswold must only produce what is publicly available since courts have read into the NVRA an ability for the states to redact information. ECF 85 at 11–18. This argument is again unmoored from Title III's text. *See United States v. Kirby*, 74 U.S. 482, 486 (1869) ("All laws should receive a sensible construction" "so . . . as not to lead to injustice, oppression, or an absurd consequence."). Title III contains a privacy provision, *see* 52 U.S.C. § 20704, that details how any information the Attorney General obtains must be protected, treated, and who that information may be shared with, and it prohibits public disclosure. *Id.* This privacy provision would be surplusage if the Attorney General were only entitled to demand publicly available data. Importantly, only the Attorney General may demand the production of election records. 52 U.S.C. § 20703. This power is not conferred on members of the general public. *Id.* Common Cause cites no case specifically holding that a state, much less anyone else, can produce redacted documents to the Attorney General, and the DOJ is unaware of any court sustaining the production of redacted government records from a state to the federal

11

government.

In contrast to Title III, the NVRA requires a covered state to "make available for *public* inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added). Because of the privacy concerns associated with this broad public right of inspection, courts have read into this provision an option for States to redact "uniquely or highly sensitive personal information." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases).

Finally, Common Cause argues that the Attorney General's demand for Colorado's SVRL does not relate to list maintenance under the NVRA and HAVA but rather is a pretext for establishing a national voter database. *See* ECF 85 at 1, 15, 17. As already discussed, Title III leaves a court no room to second-guess the stated basis and purpose for the Attorney General's demand. And even if the demand were judicially reviewable, which it is not, this Court should reject Common Cause's speculative assertions.

**II.     The DOJ's demand for an electronic, unredacted copy of Colorado's SVRL does not violate federal or state privacy laws.**

**A.     The DOJ's demand complied with the Privacy Act.**

The Privacy Act was designed to "protect the privacy of individuals" through regulation of the "collection, maintenance, use, and dissemination of information" by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting the Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896). It prohibits a federal agency from "maintain[ing a] record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute . . . or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). Enforcing the NVRA's and HAVA's list-maintenance requirements

satisfies the law-enforcement exception to the Privacy Act. *See* 52 U.S.C. §§ 20510, 21111 (giving the Attorney General enforcement authority over the NVRA and HAVA). The full list of routine uses for the DOJ's collection of voter information can be found in the SORN titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904 (July 29, 2005); and 82 Fed. Reg. 24147 (May 25, 2017). The SORN states that "[t]he records in the system of records are kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51." 68 Fed. Reg. at 47,611. The cited regulations, in turn, make clear that the Civil Rights Division is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting." 28 C.F.R. 0.50(a). Accordingly, the SORN covers, as routine uses of voter information, enforcement of the NVRA, HAVA, and the CRA.[2]

### B.    Federal law preempts any contrary Colorado privacy law.

The crux of this litigation is whether a state can, through the passage of a state law or otherwise, impede a federal investigation into the election practices of that state. The answer is emphatically no. In the early 1960s, local election officials in Alabama, Mississippi, and other states would have been happy to avoid all accountability merely by citing state privacy law, but Congress explicitly enacted Title III to prevent state and local officials from obstructing federal investigations. Notwithstanding a State's broad constitutional authority over the conduct of federal elections, Congress has the power to override state choices. U.S. Const. Art. I, § 4, Cl. 1. The

---

[2] The SORN further identifies the "Civil Rights Division Web page" as a source for "[t]he delegated legal duties and responsibilities of each section" of the Division. 68 Fed. Reg. at 47,611. And the Voting Section's webpage identifies all three statutes prominently and by name. U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited July 23, 2026).

Supreme Court has explained that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Foster*, 522 U.S. at 69 (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879) (brackets in original)); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 7–9 & n.1 (2013) (discussing the breadth of the Elections Clause).

Title III of the CRA imposes a "sweeping" obligation on election officials to preserve and, on demand, to produce registration records pertaining to federal elections. *Lynd*, 306 F.2d at 226. Title III, moreover, imposes its own privacy protections for records and papers demanded under Section 20703. *See* 52 U.S.C. § 20704. Only the United States, through the Attorney General, is authorized to compel records under Title III. *See* 52 U.S.C. §§ 20703, 20705. To the extent that state law prohibits Colorado from complying with the DOJ's demands, that state law must yield. *See* U.S. Const. Art. VI, Cl. 1; *see also Inter Tribal Council*, 570 U.S. at 15 ("States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'") (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).

## CONCLUSION

Wherefore, this honorable Court should deny Defendants' Motions to Dismiss and grant the United States' Motion to Compel and such other relief as the Court deems proper.

[Signatures next page]

14

Dated: July 24, 2026

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General

ERIC V. NEFF
Acting Chief, Voting Section

/s/ *Jonathon P. Hauenschild*
Jonathon P. Hauenschild
Trial Attorney
Civil Rights Division
U.S. Department of Justice
150 M Street NE, 8th Floor
Washington, D.C. 20002
(202) 215-2110
jonathon.hauenschild@usdoj.gov

15