**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03967-PAB

UNITED STATES OF AMERICA,
                    Plaintiff
v.

JENA GRISWOLD, in her Official Capacity as Secretary of State for the State of
Colorado,
                    Defendant,

---

**REPLY IN SUPPORT OF MOTION TO DISMISS OF COMMON CAUSE,
KYLE GIDDINGS, AND ANNE KEKE [DKT. NO. 85]**

---

**INTRODUCTION**

Courts across the country have rejected the United States' attempts to compel

production of statewide voter registration lists, along with all the sensitive information they

contain. These courts have seen through the attempts to contort civil rights law, including

Title III of the Civil Rights Act ("Title III" or "CRA"), the National Voter Registration Act

("NVRA"), and the Help America Vote Act ("HAVA"), to do so. In its opposition, the United

States fails to contend with the mountain of case law (available to it prior to its opposition

filing) that demonstrates this suit should be dismissed.

Illustrating the multiple, independent flaws in the United States' requests, these

courts have relied on different grounds in dismissing its complaints, which were materially

identical to the Complaint here. Some have found that it seeks records outside the scope

of Title III, because state voter files are not records that "come into . . . [the] possession"

1

of elections officials.[1] Others have found that the Department of Justice (DOJ) has not provided a sufficient statement of the basis for its request, as required by the CRA.[2] Still others have held that the DOJ has not provided a sufficient statement of the purpose of its request, also required by the CRA.[3]

## ARGUMENT

### I.   THE UNITED STATES' COMPLAINT IS GOVERNED BY THE FEDERAL RULES OF CIVIL PROCEDURE.

The United States uses its opposition to the motion to dismiss to rehash many of the same arguments from its motion to compel, asserting, based primarily on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and other non-binding cases from more than half a

---

[1] *See United States v. Benson*, 179 F.4th 470, 478-79 (6th Cir. 2026); *United States v. Adams*, No. 26-cv-0019, 2026 WL 2123871, at *4-5 (E.D. Ky. July 23, 2026); *United States v. Thomas*, No. 26-cv-21, 2026 WL 2070437, at *3 (D. Conn. July 17, 2026); *United States v. Oliver*, No. 25-cv-01193, 2026 WL 2031479, at *8 (D.N.M. July 14, 2026); *United States v. Koski*, No. 26-cv-42, 2026 WL 2032532, at *7-11 (E.D. Va. July 14, 2026); *United States v. Bd. of Elections of the State of N.Y.*, No. 25-cv-1338, 2026 WL 1999921, at *8-11 (N.D.N.Y. July 10, 2026); *United States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054, at *4-6 (D.N.H. June 29, 2026); *United States v. Schmidt*, No. 2:25-cv-01481, 2026 WL 1850016, at *2 (W.D. Pa. June 27, 2026); *United States v. DeMarinis*, No. 25-cv-3934, 2026 WL 1780586, at *4-5 (D. Md. June 18, 2026); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036, 2026 WL 1430354, at *4-5 (W.D. Wis. May 21, 2026) ("WEC"); *United States v. Bellows*, No. 25-cv-468, 2026 WL 1430481, at *6 (D. Me. May 21, 2026); *United States v. Fontes*, No. 26-cv-66, 2026 WL 1177244, at *5 (D. Ariz. Apr. 28, 2026).
[2] *See Benson*, 179 F.4th at 483; *Adams*, 2026 WL 2123871, at *5-6; *Oliver*, 2026 WL 2031479, at *9-10; *United States v. Warner*, No. 26-cv-156, 2026 WL 2018877, at *4-5 (D.W.V. July 13, 2026); *Scanlan*, 2026 WL 1864054, at *6-8; *Schmidt*, 2026 WL 1850016, at *2-3; *United States v. Amore*, No. 25-cv-639, 2026 WL 1040637, at *5 (D.R.I. Apr. 17, 2026); *United States v. Galvin*, No. 25-cv-13816, 2026 WL 972129, at *4 (D. Mass. Apr. 9, 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092, 1103-04 (D. Or. 2026); *United States v. Weber*, 816 F. Supp. 3d 1168, 1184-85 (C.D. Cal. 2026).
[3] *See Warner*, 2026 WL 2018877, at *5-7; *Schmidt*, 2026 WL 1850016, at *2; *Amore*, 2026 WL 1040637, at *5; *Bellows*, 2026 WL 1430481, at *7; *Oregon*, 828 F. Supp. 3d at 1104-05; *Weber*, 816 F. Supp. 3d at 1184-85.

century ago in a radically different context, that it is entitled to summary disposition without meaningful judicial review. *See* Dkt. No. 98 (Opp'n) at 4-7. This argument is contradicted by the text and structure of the CRA, binding caselaw, and the Federal Rules themselves.

It tries to distinguish *United States v. Powell*, 379 U.S. 48 (1964), by insisting that the Internal Revenue Code specified a process that the CRA does not. Opp'n at 6-7. Not so. Rather, *Powell* held that the Federal Rules apply because the statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction." 379 U.S. at 58 n.18. And the relevant language invoking the district court's jurisdiction is materially identical between the law at issue in *Powell* (26 U.S.C. § 7604(a)) and the CRA's jurisdictional provisions (52 U.S.C. § 20705). The United States points to a different provision of the Internal Revenue Code that contains a provision protecting taxpayers from summonses "issued for an improper purpose." Opp'n at 7. Reliance on this language to escape the Federal Rules misreads *Powell*; that was not the relevant statutory text that compelled the conclusion that the Federal Rules apply, as is evident from the face of the decision. *Powell*, 379 U.S. at 58 n.18; *accord N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407 (1960) ("[Absent] express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law."). Moreover, the CRA does include limiting language, including the language limiting the scope of Title III to records that "come into [election officials'] possession" and the requirement for a written "statement of the basis and the purpose therefor." 52 U.S.C. §§ 20701, 20703. Nothing in Title III insulates the sufficiency of the requirement for a "statement of the basis and the purpose" from ordinary judicial review. *Id*. § 20703.

The government notes that *Donaldson v. United States* says that "*Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." Opp'n at 7 (quoting 400 U.S. 517, 529 (1971)). *Donaldson* also states, however, that "[t]he [Federal] Civil Rules, of course, do have an application to a summons proceeding," 400 U.S. at 528, which is contrary to what the United States argues, Opp'n at 7. *Donaldson* indicates—as with any case governed by the Federal Rules—district courts retain the ability to tailor and streamline a case's procedural path, including by limiting the scope of any necessary discovery, provided that core protections, such as scrutiny under Rule 12, are observed. *See* 400 U.S. at 528-29. Here, the United States demands summary disposition and the transfer of voters' sensitive data, without any substantive review; this fails to ensure the "rights of the party summoned" are "protected." *Id.* at 529.

The United States' attempt to liken a CRA request to a grand jury is not supported by any case law, including that which it cites. Opp'n at 5. And a grand jury, while an investigative tool of government lawyers, "operates under the auspices of the District Court," which includes the authority of the court to quash grand jury subpoenas. *See Fulton Cnty. Bd. of Registration & Elections v. United States*, No. 26-cv-02777, 2026 WL 1959461, at *2 (N.D. Ga. July 7, 2026) (also noting that this investigative authority "does not give the DOJ the right to use the Grand Jury to do whatever the DOJ wants"). As such, this ill-fitting analogy does nothing to allow the United States to evade judicial review.

Finally, the United States chose to initiate this action by availing itself of standard procedural pathways in filing the Complaint. As other courts hearing these cases have

noted, even if more summary procedures could otherwise apply, "Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation," thereby subjecting its complaint to ordinary scrutiny under Rule 12. *Oregon*, 828 F. Supp. 3d at 1102, n.1; *Amore*, 2026 WL 1040637, at *4 n.1.

## II.  THE UNITED STATES FAILED TO COMPLY WITH THE CRA'S STATUTORY REQUIREMENTS.

The United States would reduce the protections in Title III to a dead letter. In its telling, the Attorney General could make a demand for records entirely unmoored from the statutory scheme and from actual facts in the world, and a co-equal branch of the government could do nothing but rubber-stamp that request.

### A. Title III Does Not Cover the Requested Records Because They Do Not Come Into the Secretary's Possession.

As a threshold matter, Colorado's statewide voter registration list (SVRL) falls outside the scope of Title III. Title III only obligates elections officials to preserve those "records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. It also grants the Attorney General the power only to demand "[a]ny record or paper required by [§ 20701] to be retained and preserved." *Id*. § 20703. This plain text forecloses the United States' request: Colorado's SVRL is not a record which "c[a]me into [the] possession" of elections officials, including the Secretary, because it is one they created. *See supra* n.1.[4]

---

[4] These cases were all decided after the Common Cause Intervenors filed their original motion to dismiss on December 19, 2025, but were all decided before the United States' filing of its opposition.

**B. The United States Offered Neither a Sufficient Basis nor Purpose.**

To begin, in its actual request for the SVRL, the DOJ offered no statement of the basis or purpose whatsoever. Dkt. No. 5-1 at Ex. 2. As such, it has failed to even begin to comply with the statutory requirements of the CRA. While the United States arguably invoked the CRA in its letter to Colorado in May 2025, that letter made no reference whatsoever to the SVRL. Dkt. No. 5-1 at Ex. 1. And the SVRL is not a record "outlined in 52 U.S.C. § 20701," *id.*, which is what was requested in that letter. *See supra* II.A; *e.g.*, *Benson*, 179 F.4th at 478-79. This conclusion is further bolstered by the May 2025 letter itself, which required a "certification that no record required for preservation has been deleted, destroyed, or altered from its original format." Dkt. No. 5-1 at Ex. 1. But the SVRL is a document that must be continually updated, and so the Secretary could not have certified that it had not been altered. *See, e.g.*, *Benson*, 179 F.4th at 479-80.

The CRA mandates that the Attorney General provide a written statement of "the basis and the purpose" underlying the records request. By twice using the definite article, the statute requires not just a basis or purpose among many, or a possible basis or purpose, but the actual basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165-66 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and indefinite article). The United States' argument that it has complied with the statutory requirements rests entirely on out-of-Circuit, non-binding caselaw from the 1960s. Applying *Lynd* in such a manner would utterly neuter judicial review and make the executive branch paramount over its co-equal branches of government. The CRA should

not be so interpreted.

The basis requirement requires an express statement of the actual factual circumstances prompting the DOJ's request. "To invoke all (or virtually all) investigatory tools and compulsory process, the law requires some showing," even if that showing is "typically less than the showing required to prevail on the related claim." *Galvin*, 2026 WL 972129, at *6. The United States would have it that any assertion of a supposed complaint supplies a sufficient basis to require a state to turn over its records to the federal government. But a solitary reference to an anonymous and seemingly uncorroborated complaint about NVRA compliance—without any further specific or factual details—is insufficient to constitute the "support," "foundation," or "[f]undamental principle" underlying the demand. *Id.* at *3 (quoting multiple dictionaries). While Title III does not require DOJ to prove a violation, it does require some statement of the specific factual basis underlying its demand, or else it would "essentially authorize[] factually groundless fishing expeditions." *Amore*, 2026 WL 1040637, at *5; *see also Bellows*, 2026 WL 1430481, at *9 ("[T]he United States has filed a HAVA action in search of a HAVA violation, which is not the preferred order of things in the course of civil litigation.").

Even if this vague, solitary reference to "a complaint" by some anonymous individual was somehow sufficient to constitute a basis, the May 2025 letter does not contain a demand for the SVRL under Title III. Dkt. No. 5-1 at Ex. 1. Only the December 1 email makes an express demand for Colorado's unredacted SVRL. *Id*. at Ex. 2. And this email contains no factual basis (or purported purpose) for the demand at all. As multiple courts have held, the plain text of Title III—requiring a "demand in writing" that "shall

7

contain a statement of the basis and the purpose therefor"—requires that a single "demand must contain both" the basis and the purpose. *Benson*, 179 F.4th at 483; *see also Oregon*, 828 F. Supp. 3d at 1104 (rejecting the DOJ's "post hoc effort to stitch together a legally sufficient 'statement of the basis'" by combining two letters).

And beyond the failure to state both the basis and purpose in the same writing as the request for the voter file, the demand further fails because on its face, the purpose is inadequate, because "each individual state, and not the U.S. Department of Justice, is the master of its voter list, entrusted with its administration and maintenance." *Bellows*, 2026 WL 1430481, at *7. The NVRA, which was cited in the May 2025 letter, does not displace states' primary authority over their voter lists; it obligates them only to engage in a "reasonable effort" at list maintenance. *See* Dkt. No. 85 (MTD Br.) at 10. The DOJ attempts to go much further than Congress has authorized, by performing list maintenance itself in the guise of assessing compliance with federal law. In the Memorandum of Understanding it offered Colorado on December 1, *see* Compl. ¶ 24, the DOJ would be a "[c]ustodian" of the state's voter file and could identify purportedly ineligible voters for removal, *see* Dkt. No. 17-2 (MOU offered to Colorado). But federal list maintenance statutes "do not contemplate production of the unredacted computerized list to the Attorney General so that he might loom over the shoulder of the state election official to point out and demand the correction of inaccuracies in the list." *Bellows*, 2026 WL 1430481, at *8. Far from simply monitoring NVRA compliance, it is a hostile takeover of the state's responsibilities under that law. "[W]hatever investigatory purposes may support a Title III records demand, voter list maintenance is not among them." *Id*. at *7.

8

At the end of the day, discussion of investigating list maintenance is beside the point, because it is not the actual  purpose motivating the request. Title III requires that the DOJ provide a statement of "*the* basis and *the* purpose," rather than just some conceivable basis and purpose. 52 U.S.C. § 20703 (emphasis added). It is evident from the federal government's own activities that investigating a single anonymous complaint against Colorado is not the true purpose of its request. If it were, it would not be seeking the state voter files of all the states and suing 31 states so far to get them. Judicially-noticeable materials, including DOJ's own filings and public statements, shed light on its actual plans. *See* MTD Br. at 3-4, 15, 17; *see also Bellows*, 2026 WL 1430481, at *3 n.6 (noting that the United States' "efforts to assuage . . . concerns" about creation of a national voter database "were almost immediately undermined" by a recent executive order "directing the Department of Homeland Security to compile a 'State Citizenship List' in order to 'assist in verifying identity and Federal election voter eligibility'"). Indeed, in acknowledging the asserted purpose of establishing a national voter database, the United States never denied the facts underlying this assertion. *See* Opp'n at 12.

## III.   VOTERS' CONSTITUTIONAL RIGHTS REQUIRE REDACTION, SO THE REQUESTED RELIEF FAILS.

The United States misapprehends why, even if it had met all of the statutory requirements necessary for disclosure of certain records under the CRA—which it has not—it would still not be entitled to its requested relief. It is not the different statutory language of the NVRA that compels redaction, Opp'n at 12; it is the constitutional rights of voters, which cannot be overridden by statute. As the Tenth Circuit recently recognized, statutes providing for disclosure of voter registration records permit redaction of sensitive

voter information, even without express authorization. *See Voter Reference Found. v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *see also Bellows*, 2026 WL 1430481, at *5 & n.7 (noting the similarity between the NVRA and Title III and applying Circuit caselaw allowing "the redaction of uniquely or highly sensitive personal information in records subject to disclosure" (internal quotation marks omitted)). Redaction is necessary to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional right to vote. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). Because the United States insists on receiving an *unredacted* voter file, its requested relief would invade the constitutional rights of Colorado voters and is thus not relief this Court can offer.

## CONCLUSION

The Court should dismiss the United States' Complaint.

Dated:  July 31, 2026                                Respectfully submitted,

/s/ Theresa J. Lee

| | |
|---|---|
| Theresa J. Lee | Timothy R. Macdonald, Bar No. 29180 |
| Sophia Lin Lakin | Sara Neel, Bar No. 36904 |
| American Civil Liberties Union Foundation | American Civil Liberties Union of Colorado |
| 125 Broad Street, 18th Floor | 303 E. 17th Avenue, Suite 350 |
| New York, NY 10004 | Denver, CO 80203 |
| (212) 549-2500 | (303) 777-5482 |
| tlee@aclu.org | tmacdonald@aclu-co.org |
| slakin@aclu.org | sneel@aclu-co.org |

Patricia J. Yan
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2026, a true and correct copy of the foregoing

document was served via the Court's ECF system on all counsel of record.


<u>/s/ Theresa J. Lee</u>

11